ROB BONTA
Attorney General of California
PAULA L. BLIZZARD (SBN 207920)
Senior Assistant Attorney General
NATALIE S. MANZO (SBN 155655)
BRENT K. NAKAMURA (SBN 283572)
Supervising Deputy Attorneys General
DANIEL D. AMBAR (SBN 278853)
WINSTON H. CHEN (SBN 166959)
MATTHEW E. DELGADO (SBN 306999)
NICOLE S. GORDON (SBN 224138)
JENNIFER K. HANE (SBN 275729)
ASHLEY KAPLAN (SBN 293443)
CASEY KOVARIK (SBN 348032)
DIVYA B. RAO (SBN 292853)
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013-1230
 Telephone: (213) 269-6153
 Fax: (916) 731-3637
 Email: Daniel.Ambar@doj.ca.gov

*Attorneys for Plaintiff State of California*
Additional counsel identified on signature page

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE STATE OF CALIFORNIA, *et al.*,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>PARAMOUNT SKYDANCE CORP., *et al.*,<br><br>  *Defendants*. | Case No.: 4:26-cv-07116-AMO<br>Case No.: 4:26-cv-07212-AMO<br><br>**JOINT STATEMENT REGARDING TRIAL SCHEDULING** |
| WRITERS GUILD OF AMERICA, WEST, INC., *et al.*,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>PARAMOUNT SKYDANCE CORP., *et al.*,<br><br>  *Defendants*. | |

The parties to the above-captioned cases respectfully submit this Joint Statement Regarding Trial Scheduling pursuant to this Court's Order Not to Close, Dkt. No. 170.  Plaintiff States[1] propose sequential trials beginning April 5, 2027.  Plaintiffs Writers Guild of America, West, Inc., and Writers Guild of America East, Inc. (collectively, the "WGA Plaintiffs") also propose sequential trials beginning April 5, 2027.  Defendants propose a trial beginning November 4, 2026.

The parties have discussed the trial schedule, but they have not reached agreement. Therefore, Plaintiff States, the WGA Plaintiffs, and Defendants set out their respective proposals below.

### PLAINTIFF STATES' STATEMENT

Plaintiff States propose a fast-paced but realistic schedule that moves this case rapidly to trial while ensuring sufficient time for discovery and pretrial preparation.  Under Plaintiff States' proposal, trial would begin on April 5, 2027, and last at least 12–15 days, with Plaintiff States and the WGA Plaintiffs presenting their *prima facie* cases sequentially, to the extent they do not overlap. This trial date permits a decision on the merits by June 2027, the period until which Defendants have already stipulated to hold their merger open.  A shorter timeline would be artificially compressed and risks depriving this Court of a full record on which to decide this $110 billion case. Once the trial date is set, Plaintiff States respectfully request time to negotiate an appropriate schedule for discovery and trial preparation.

### I.    SIGNIFICANT DISCOVERY IS NEEDED

This is an "industry-transforming" merger.  Defs.' Opp'n to Pls.' Mot. for TRO at 1, Dkt. No. 114.  After the merger, one company would control twenty-seven percent of all wide-release theatrical films in the United States, including more than thirty percent of all anticipated top-grossing theatrical films.  The same company would control more than a quarter of basic cable programming.  This merger implicates "important public interests."  Order Granting Mot. for TRO at 9, Dkt. No. 141.  The case deserves a thorough record on which this Court can base its decision.

Significant discovery will be needed to prepare this case for trial.  Among the subjects of

---

[1] The Plaintiff States are California, Arizona, Colorado, Connecticut, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, and Washington.

discovery are the definition of the relevant product and geographic markets, the nature and scope of harm in those markets, whether expansion by other firms will prevent harm in those markets, and whether the merger will produce verifiable, merger-specific efficiencies sufficient to outweigh harm in those markets.  Defendants concede that crucial factual disputes exist as to these issues. *See* Defs.' Emergency Admin. Mot. for an Evidentiary Hr'g at 1, Dkt. No. 161 (acknowledging "critical factual issues involving market definition, real-world competitive dynamics, barriers to expansion, and incentives"); *see also* Order Granting Mot. for TRO at 6, Dkt. No. 141 ("At best, Defendants' proof regarding these robust, dynamic markets creates disputes regarding the facts and legality of the Transaction's market effects.").  Plaintiff States require sufficient time to develop the evidentiary record on these subjects, including through the collection of evidence from Defendants, customers, and competitors.

For example:

- Defendants dispute the contours of each relevant market and assert that Plaintiffs have ignored relevant competitors.  Plaintiff States require discovery from Defendants on this subject, discovery from those competitors Defendants assert should be included in the markets, and discovery from customers whom Defendants assert treat the purported competitors as reasonable alternatives.

- Defendants assert that new entry and expansion by existing competitors will be timely, likely, and sufficient to prevent any anticompetitive effects from the merger.  Plaintiff States are entitled to discovery on this subject, including discovery from Defendants regarding barriers to entry and expansion, discovery from competitors whom Defendants assert would expand to replace lost competition, and discovery from customers whom Defendants claim would turn to these purported alternatives.

- Defendants assert that the merger will generate billions in synergies, a claim that Plaintiff States are entitled to test in discovery, including discovery of Defendants' integration plans for their merged company.  *See, e.g.*, Gordon Decl. ¶ 7, Dkt. No. 114-6 ("Paramount and its outside management consultants have continued to evaluate and refine integration plans.").  Plaintiff States need discovery of Defendants' purported

synergies, a subject of ongoing work, to determine whether any are verifiable, merger-specific, and substantial.

- All parties intend to present expert economic testimony. Developing that testimony requires the exchange and analysis of data from Defendants, customers, and competitors.

## II. PLAINTIFF STATES' SCHEDULE IS REASONABLE

Plaintiff States' proposed trial, starting on April 5, 2027, would occur 266 days after the complaint and 402 days after Defendants signed their merger agreement. By any measure, this schedule is aggressive. Measured from complaint to trial, the proposed timeline (266 days post-complaint) aligns with those in other recent merger cases, even ones involving much smaller mergers. *See, e.g.*, Order, *In re Nexstar-Tegna Merger Litig.*, No. 2:26-cv-00976-TLN-CKD (E.D. Cal. July 9, 2026), Dkt. No. 258 ($6.2 billion, 475 days post-complaint); Revised Scheduling Order, *FTC v. Intercontinental Exch., Inc.*, No. 3:23-cv-1710-AMO (N.D. Cal. July 20, 2023), Dkt. No. 278 ($11.7 billion, 341 days); Scheduling & Case Management Order, *United States v. Bertelsmann SE & Co. KGaA*, No. 1:21-cv-2886-FYP (D.D.C. Dec. 15, 2021), Dkt. No. 53 ($2.2 billion, 272 days); Electronic Scheduling Notice, *United States v. JetBlue Airways Corp.*, No. 1:23-cv-10511-WGY (D. Mass. Oct. 25, 2023), Dkt. No. 307 ($3.8 billion, 223 days).

Measured from the execution of the merger agreement on February 27, 2026 to trial, the proposed timeline (402 days post-signing) is even faster. It moves this case to trial more rapidly than virtually every merger case in recent history:[2]

---

[2] Plaintiff States used generative artificial intelligence for the formatting, but not the content, of this table. Pursuant to Paragraph H.4 of this Court's Standing Order for Civil Cases Before Judge Araceli Martínez-Olguín, Plaintiff States certify that lead trial counsel has personally verified the content's accuracy.



**Days from Merger Agreement to Evidentiary Hearing**

| | Days |
|---|---|
| Nexstar/Tegna | 687 |
| Kroger/Albertsons | 683 |
| Tempur Sealy / Mattress Firm | 553 |
| HPE/Juniper | 547 |
| Microsoft/Activision | 520 |
| AT&T/Time Warner | 513 |
| Edwards/JenaValve | 483 |
| ICE/Black Knight | 467 |
| GTCR / Surmodics | 450 |
| JetBlue / Spirit | 445 |
| Meta/Within | 412 |
| Paramount / WBD (Plaintiff States Position) | 402 |
| Tapestry / Capri | 396 |
| Paramount / WBD (Defendants Position) | 250 |

## III.    DEFENDANTS' SCHEDULE IS UNWORKABLE, UNFAIR, AND UNJUSTIFIED

Defendants' proposed schedule would deprive Plaintiff States and the Court of a thorough evidentiary record.  Their schedule sets trial for November 4, three months from now, leaving only 53 days for fact discovery and 28 days for expert discovery.  These deadlines are simply unworkable.

At the same time, Defendants' schedule is one-sided.  Their extraordinarily truncated schedule unfairly favors Defendants because they (1) have information Plaintiff States need to prove their case and (2) do not bear the burden of persuasion.

Defendants' schedule is unjustified.

*First*, a government's pre-complaint investigation is not a substitute for the post-complaint discovery to which it is entitled under the Federal Rules of Civil Procedure.  "[T]here is no authority which suggests that it is appropriate to limit [an enforcement agency's] right to take discovery based upon the extent of its previous investigation into the facts underlying its case." *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (quoting *SEC v. Saul*, 133 F.R.D. 115, 118 (N.D. Ill. 1990)).  "Whatever inquiries the agency posed in the course of its investigation . . . the contexts are sufficiently different to merit further discovery once the charges have been made and the parties are at issue." *Saul*, 133 F.R.D. at 118.  In antitrust cases, "[l]iberal discovery is particularly appropriate in a government antitrust suit because of the important public interest involved." *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC, 2024 WL 5238834, at *1 (W.D. Wash. Dec. 27, 2024) (citation omitted).  Indeed, many of the cases in the above table are government merger challenges that included pre-

complaint investigations, but also appropriately incorporated even longer post-complaint discovery than that proposed here.

Defendants' pre-complaint document productions do not obviate significant discovery now that a case is pending. The productions suffer from gaping holes. Defendants' productions largely cut off before the merger agreement was signed in February 2026. As a result, Plaintiff States have virtually no internal documents from the period around and after signing, including strategic documents relating to Defendants' post-closing plans. Many documents Defendants produced during the investigation relate to markets not in this case, such as streaming, premium cable, and television production. And Defendants' document custodians do not include even all the declarants on whom Defendants relied in their TRO Opposition. *See, e.g.*, Valera Decl., Dkt. No. 114-5. Defendants' pre-complaint productions also do nothing to address the need for discovery from third party customers and competitors. Importantly, no depositions of percipient fact witnesses from Defendants or third parties have occurred.

*Second*, Defendants' stipulation not to close the merger until June 2027 belies any argument that any of the deadlines or costs in their merger agreement justify their proposed schedule. Stipulation & Order Not to Close at 2, Dkt. No. 170. An April 2027 trial date permits time for a trial and a decision by Defendants' outside date of June 4, 2027. No basis exists for rushing this case to trial six months before Defendants' outside date.

### WGA PLAINTIFFS' STATEMENT

Plaintiffs the Writers Guild of America, West, Inc. ("WGAW") and the Writers Guild of America East, Inc. ("WGAE," and together with the WGAW, the "WGA") and Defendants in the above-referenced matter write jointly pursuant to the Court's Order, ECF 72. The Parties' respective positions are set forth below.

**The WGA's Position**. The WGA proposes an April 5, 2027 trial date, which would provide sufficient time to conduct orderly fact and expert discovery while allowing the Court to rule before Defendants' self-imposed final deadline for consummating the proposed transaction.

The WGA proposes three phases within an 8-month trial schedule: approximately six months for fact discovery, one month for expert discovery, and one month for pretrial briefing.

During fact discovery, the parties will negotiate a joint discovery plan and discovery-related stipulations, such as a deposition protocol, protective order, and ESI protocol. The Parties will also exchange materials already produced to government enforcers regarding the proposed transaction; issue party and nonparty discovery requests; and conduct fact depositions. This phase will also include deadlines related to the pleadings, including for amendments and Answers, as well as preliminary exchanges of trial fact witness lists and expert designations. Expert discovery follows for one month: the parties will serve initial, rebuttal, and reply expert reports and depose experts; exchange exhibits lists and deposition designations (including objections thereto); and finalize trial fact witness lists. During this period, the parties will also notify nonparties of confidential materials that may be used at trial, giving those nonparties the opportunity to seek relief. During the last phase, the parties will brief motions in limine (including *Daubert* motions); negotiate evidentiary objections of trial exhibits and deposition designations; address nonparty sealing motions; negotiate the joint pretrial statement; file pretrial briefs; and participate in the final pretrial conference.

## I.    THIS CASE REQUIRES SUBSTANTIAL DISCOVERY

Both the complexity and high stakes of this matter independently support the WGA's proposed 8-month schedule. The WGA challenges the proposed merger's anticompetitive effects in three distinct labor markets for film and television writers, each with different competitive dynamics, concentration histories, and compensation structures. *See* Compl. ¶¶ 107–36. Fact discovery will thus necessarily include market power and definition analyses for each relevant market, along with the likely nature and extent of competitive harm in each market; the prospects for new entry or expansion by existing competitors; and whether the merger will produce efficiencies in any relevant market that are likely to outweigh any competitive harms. To develop this record, fact discovery will require collecting and reviewing years of ESI from custodians at both Defendants, as well as obtaining nonparty discovery from studios, networks, and talent agencies whose practices and competitive responses bear directly on market definition and competitive effects. Given the substantial volume of documents, data, custodians, and nonparties involved in this challenge to two of the world's largest entertainment companies, Defendants' proposed 3-month schedule for fact discovery, expert discovery, and trial is incompatible with

fairness, and would force the Court to rule on an incomplete record.

## II.    THE WGA'S PROPOSED SCHEDULE IS REASONABLE AND APPROPRIATE

The WGA's proposed schedule provides for an orderly process to develop a record for trial. The proposed 8-months period between the start of fact discovery and the start of trial is consistent with schedules used in comparable merger cases. *See, e.g.*, *United States v. Bertelsmann SE & Co. KGaA, et al.*, ECF Nos. 53, 86, No. 1:21-cv-2886-FYP (D.D.C.) (8-month trial schedule); *United States v. JetBlue Airways Corp., et al.*, ECF No. 79, No. 1:23-cv-10511-WGY (D. Mass.) (7-month trial schedule); *United States v. UnitedHealth Grp., et al.*, ECF Nos. 72-1, 114, No. 1:24-cv-03267-JKB (D. Md.) (9-month trial schedule).

However, even compared to other merger cases, the WGA's proposal is fast-paced. Here, the WGA does not have the head start of a government enforcer with access to pre-complaint investigatory materials. Defendants have not produced a single document or datum to the WGA, and the WGA has not taken a single deposition.

## III.    THE WGA WOULD BE PREJUDICED BY THE DEFENDANTS' PROPOSED SCHEDULE

Defendants' proposed 3-month schedule is unrealistic and prejudicial to the WGA. The WGA bears the burden of persuasion and requires adequate time to obtain and analyze relevant discovery, whereas Defendants already possess nearly all relevant materials, including internal analyses of the transaction's market effects, historical writer-compensation data, bid and market-share data, and frank internal communications concerning the deal's likely competitive effects. Without this discovery, the WGA would be substantially prejudiced. For example, the WGA would have no way to test Defendants' one-sided, self-serving executive testimony that courts have repeatedly found unreliable in assessing a merger's likely competitive effects. *E.g.*, *FTC v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 478, 484 (S.D.N.Y. 2024) (discussing why courts should not "credit" such "self-interested statements," including the influence of boards' fiduciary duties, "financial or career" incentives for executives and employees, and the principle that the "relevant person's behavior . . . is the corporate person, not any particular executive." (citation and quotations omitted)); *see also FTC v. H.J. Heinz Co.*, 246 F.3d 708, 721 (D.C. Cir. 2001) (discrediting "mere

---

JOINT STATEMENT REGARDING
TRIAL SCHEDULING
Case No.: 4:26-cv-07116-AMO
Case No.: 4:26-cv-07212-AMO

speculation and promises about post-merger behavior"); *United States v. Bertelesmann SE & Co., KGaA*, 646 F. Supp. 3d 1, 50 (D.D.C. 2022) ("[T]he proposed policy would not be profit-maximizing and is thus unreliable evidence of future conduct.").

Further, the WGA begins without access to that information and faces corporate entities with substantial litigation resources. A compressed 3-month schedule would therefore prejudice the party with less information and fewer resources, whereas an 8-month period would impose no comparable burden on Defendants, who already control the documents and testimony central to this case. *See* Fed. R. Civ. P. 26(b)(1) (listing "the parties' relative access to relevant information" among the factors bearing on the scope of discovery).

Defendants' compressed schedule would rush this Court to judgment without a full record. A pretrial schedule must track the discovery this case actually requires, not Defendants' self-imposed deadline for closing the deal. That deadline is a contractual choice Defendants made in negotiating their merger agreement. It is not immovable, and should not dictate how much time the WGA has to develop and present its antitrust claims. By contrast, the WGA's proposed schedule reflects the discovery this case requires, while still allowing the Court to rule before Defendants' outside date. Completing trial before Defendants' self-imposed deadline should not be prioritized over the WGA's ability to build a factual record, or the Court's ability to rule with the benefit of that record.

| Event | [Proposed] Deadline |
|---|---|
| Start of Fact Discovery | August 5, 2026 |
| Close of Fact Discovery | January 29, 2027 |
| Close of Expert Discovery and Any Supplemental Discovery | February 26, 2027 |
| Close of Pre-Trial Briefing | March 29, 2027 |
| Start of Trial | April 5, 2027 |

### DEFENDANTS' STATEMENT

Defendants respectfully submit that a prompt trial on the merits serves everyone's interests. It provides the Court time after trial for its review and decision; it gives the parties sufficient time to conduct discovery, in light of the extensive materials that have been produced to the States thus far; and it avoids undue prejudice to Defendants, who have worked expeditiously to successfully

obtain clearance from dozens of regulators around the world.  It also avoids unnecessary harm to countless people outside the courtroom—the companies' many employees, who are excited about the opportunities presented by the merger but currently face uncertainty on which projects they can work on, with whom, and when; the creative industry more generally, which is in limbo while this transformational merger remains open; the many shareholders of both companies, who are directly affected by delays to the merger; and consumers who would benefit from the new offerings of the combined company.

Accordingly, Defendants propose a 12-day trial encompassing both the States' and the Writers' Guild of America (WGA)'s cases starting on November 4, 2026.  Defendants agreed to proceed directly to a merits trial to quickly bring closure and certainty to this merger.  To that end, Defendants have eliminated from the schedule all but what we believe is necessary to aid the Court's decision-making.  The schedule involves expedited discovery, in recognition of the substantial volume of evidence already in the States' possession (that can be quickly produced to the Writers' Guild).  And it eliminates unnecessary motions practice with the goal of bringing witnesses and evidence before the Court as soon as possible, and giving the Court adequate time after trial to consider that evidence in making its decision.

By contrast, Plaintiffs propose a protracted pretrial schedule that gives the Court much less time to decide.  That long pretrial schedule, and the claimed need for extensive new discovery, cannot be squared with the volume of evidence they already have and their apparent position that they already had enough evidence to block the merger (by virtue of seeking emergency relief).  Their schedule also cannot be squared with public statements by California's Attorney General that "he favors a January start date" for the trial.[3]  Given the stakes of this case, there is no basis and no time to delay for the sake of delay, particularly when delay significantly prejudices Defendants and the Hollywood ecosystem more broadly.

There is ample precedent for trying this case four months after the complaint was filed.  In

---

[3]  https://www.wsj.com/business/media/paramount-wanted-to-close-its-warner-deal-quickly-now-its-in-limbo-d57725e1 ("Paramount has pushed for a November trial, while California Attorney General Rob Bonta told the Wall Street Journal he favors a January start date.").

*United States v. AT&T Inc.*, the DOJ filed its complaint on November 20, 2017, and trial began four months later—on March 19, 2018. 310 F. Supp. 3d 161, 164, 187 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019). (Notably, that four-month period, unlike the one proposed here, included the end-of-the-year holidays.) During that four-month period, the parties engaged in extensive discovery, including the production of 7.5 million pages of documents, dozens of Rule 45 subpoenas and third-party productions, and more than 40 depositions of defendants' witnesses taken by the government alone. *Id.* at 185. Similarly, in *New York v. Deutsche Telekom AG*, multiple states (including six of those that are State Plaintiffs here) filed their complaint on June 11, 2019. 439 F. Supp. 3d 179, 198 (S.D.N.Y. Feb. 11, 2020). The court initially ordered trial to begin four months later, on October 7, 2019. *New York v. Deutsche Telekom AG*, 1:19-cv-05434, ECF No. 201, at 6 (S.D.N.Y. June 21, 2019).[4] And in *United States v. Anthem, Inc.*, the court conducted a multi-week trial four months after the complaint was filed, after allowing for "extensive discovery" that resulted in the presentation of "deposition excerpts from more than 100 individuals." 236 F. Supp. 3d 171, 186-87 (D.D.C. 2017), *aff'd*, 855 F.3d 345 (D.C. Cir. 2017). *See also*, *e.g.*, *United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 43 (D.D.C. 2011) (from complaint to trial in less than four months); *United States v. U.S. Sugar Corp.*, 2022 WL 4544025, at *1 (D. Del. Sept. 28, 2022) (from complaint to trial in about five months, including winter holidays); *United States v. Sabre Corp.*, 452 F. Supp. 3d 97, 103 (D. Del. 2020) (same), *vacated on other grounds*, 2020 WL 4915824 (3d Cir. July 20, 2020); *United States v. UnitedHealth Group Inc.*, 630 F. Supp. 3d 118, 128 (D.D.C. 2022) (from complaint to trial in just over five months), dismissed, 2023 WL 2717667 (D.C. Cir. Mar. 27, 2023).[5]

[4] The trial was later rescheduled to December 9, 2019 (a total of six months from complaint), but only by agreement of the parties to allow discovery into post-complaint remedies that the defendants had agreed upon with the DOJ and certain settling states. *Deutsche Telekom AG,* 1:19-cv-05434, ECF No. 167, at 5:1–25; 75:19-76:1-7 (S.D.N.Y. Aug. 6, 2019).

[5] There also are numerous examples of merger cases involving the Federal Trade Commission where courts have scheduled substantive preliminary injunction hearings in comparable or even less time. *See FTC v. Edwards Lifesciences Corporation*, 2026 WL 228723, at *1 (D.D.C. Jan. 28, 2026) (complaint to six-day evidentiary hearing in approximately three and a half months); *FTC v. Cmty. Health Sys., Inc.*, 736 F. Supp. 3d 335, 351 (W.D.N.C. 2024) (complaint to seven-day evidentiary hearing in approximately three months); *FTC v. IQVIA Holdings Inc.*, 710 F. Supp. 3d 329, 346 (S.D.N.Y. 2024) (complaint to an eight-day evidentiary hearing in approximately four months); *FTC v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 406 (S.D.N.Y. 2024) (complaint to a seven-

There is good reason to follow these examples.  State Plaintiffs had six-plus months before they filed their complaint to conduct unilateral discovery regarding the proposed transaction.  State Plaintiffs also had the benefit of waivers granted by Defendants to enable the U.S. Department of Justice (DOJ) to share with State Plaintiffs all information and materials that Defendants produced to the DOJ.  In sum, the discovery that State Plaintiffs received many months ago includes over *two million documents* from more than *80 of Defendants' employees*.  Beyond that, State Plaintiffs joined depositions during the DOJ antitrust review process and had the ability to ask questions of the Defendants' deponents.  They also were able to (and did) collect third-party documents and were able to submit third party declarations and an extensive report from their retained expert in support of their request for a TRO.  Although the WGA did not have access to the same information prior to filing their complaint, they likewise filed an extensive expert report in support of their motion for a preliminary injunction, and Defendants are prepared to produce all of the information the States received to the WGA immediately upon entry of a case schedule and a Protective Order.  For all these reasons, further discovery can proceed on an expedited timeline such that the case can be ready for trial promptly.

Delaying the trial as Plaintiffs suggest would cause substantial prejudice.  First, Plaintiffs' proposed schedule would compress the Court's timeline for reaching a decision.  As the Court knows, the merger has an "outside date" in June; conducting trial in April would leave the Court with only weeks to issue a decision (and even less time for any potential appellate process that might follow).

Second, delay would harm Defendants, even beyond the billions of dollars in "ticking fees" that Paramount is required to pay if trial occurs in April.[6]  The proposed merger is of course large and global, but its size and scope has prompted significant regulatory scrutiny—which it has, to

day hearing in approximately five months); *FTC v. Microsoft*, 681 F. Supp. 3d 1069, 1076 (N.D. Cal. 2023) (complaint to decision in four weeks).  While the unique FTC procedural process classifies these trials as preliminary injunction hearings, they are in fact substantive and "almost always" dispositive. *In the Matter of Tempur Sealy Int'l, Inc.*, 2024 WL 4544179, at *1 (FTC, Oct. 15, 2024) ("[F]ederal court preliminary injunction almost always obviates the need for further administrative proceedings.").

[6] Those fees begin accruing at approximately $7 million per day if closing does not occur by September 30, 2026.

date, universally cleared. Defendants recognize the need for the Court's scrutiny of the allegations raised by Plaintiffs against the merger at a merits trial, but delaying the trial to April would potentially upend regulatory work that has been done to date and unnecessarily prejudice Defendants. As just one example, if the transaction does not close within one year of when Paramount's HSR Act waiting period expires (by February 19, 2027), Paramount will need to refile its HSR materials. A trial after that date would require the parties to re-do regulatory work that has already been completed. This burden is not limited to the United States but will also be applicable in other jurisdictions where pre-closing regulatory review and clearance has been obtained. Re-doing work that has already been done to the satisfaction of government agencies around the world serves nobody's interests.

Third, and most importantly, delay prejudices the creative industry, the individuals who work within it, and the consumers who benefit from it. As the Court knows, Paramount has committed to releasing a minimum of 30 films theatrically every year, with every film receiving a minimum 45-day theatrical window. Each and every one of those productions could offer employment for hundreds, if not thousands, of creative workers—writers, producers, operators, sound mixers, makeup artists, and many more. The same is true for the many other new forms of content that will be made possible if the merger proceeds. But each and every day of delay creates uncertainty for all of those individuals, because none of that work can start until the merger closes. Deciding what projects to commit to, and when, is already difficult for creative professionals trying to find the right opportunities in a dynamic industry; doing so in an atmosphere of intense business uncertainty is even harder. This burden on both Defendants' employees is significant, and they feel it every single day. That is precisely why Defendants want to present the facts about this merger— and the competition and benefits it will create—as soon as possible.

Accordingly, Defendants respectfully request that this Court set the case for trial on November 4, 2026, or as soon thereafter as the Court's schedule permits. To the extent it would aid the Court's consideration of the competing proposals, Defendants welcome a status conference, at the Court's convenience, to discuss the schedule.

### DEFENDANTS' PROPOSED SCHEDULE

Unless otherwise specified, days will be computed according to Federal Rule of Civil Procedure 6(a), and all times are Pacific Time.

| Event | Date |
|---|---|
| Fact discovery begins | August 3, 2026 |
| Deadline to amend pleadings or join parties | August 3, 2026 |
| Parties produce investigation materials | August 5, 2026 |
| Answer(s) to Complaints due | August 10, 2026 |
| Parties exchange initial trial witness lists (other than experts) [7] | September 7, 2026 |
| Close of fact discovery [8] | September 25, 2026 |
| Plaintiffs to serve expert report(s) & produce backup materials | September 25, 2026 |
| Defendant(s) to serve expert report(s) & backup materials | October 9, 2026 |
| Plaintiffs to serve reply report(s) & produce backup materials | October 16, 2026 |
| Close of expert discovery and any supplemental discovery | October 23, 2026 |
| Parties exchange: Proposed stipulations and uncontested facts Exhibit lists Deposition designations Final trial witness lists (other than experts) | October 23, 2026 |

[7] To the extent a witness is identified on an initial witness list who was not previously identified or otherwise deposed, the party adding the witness to their list must make that witness available for a deposition.
[8] The parties will make best efforts to schedule all fact witness depositions before the close of fact discovery, but may agree to schedule non-party depositions following the close of fact discovery, if necessary.

JOINT STATEMENT REGARDING
TRIAL SCHEDULING

14

Case No.: 4:26-cv-07116-AMO
Case No.: 4:26-cv-07212-AMO

| Event | Date |
|---|---|
| Each side informs each non-party of all documents produced by that non-party that are on that side's exhibit list and all depositions of that non-party that have been designated by that side | October 23, 2026 |
| Parties to file pretrial briefs with the Court | October 26, 2026 |
| Parties to exchange: deposition designation objections and counter-designations | October 27, 2026 |
| Parties to exchange objections to counter-designations and counter-counter designations | October 29, 2026 |
| Non-parties provide notice whether they object to the potential public disclosure at trial of any non-party documents and depositions, explain the basis for any such objections, and propose redactions where possible | October 29, 2026 |
| Parties file proposed pretrial order (to include the parties' disputes regarding admissibility of trial exhibits and deposition designations and confidentiality of Party documents) Non-parties file motions to seal any non-party documents and depositions | October 30, 2026 |
| Final Pretrial Conference | November 3 |
| Trial Commences | November 4 |
| Post-trial briefs and proposed findings of fact and conclusions of law to be filed | Parties will confer in good faith and propose to the Court, in the proposed pretrial order, a recommendation for timing and length of post-trial briefing |

Dated:  July 31, 2026

Respectfully submitted,

FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

*/s/ Daniel D. Ambar*

PAULA L. BLIZZARD (SBN 207920)
Senior Assistant Attorney General
NATALIE S. MANZO (SBN 155655)
BRENT K. NAKAMURA (SBN 283572)
Supervising Deputy Attorneys General
DANIEL D. AMBAR (SBN 278853)
WINSTON H. CHEN (SBN 166959)
MATTHEW E. DELGADO (SBN 306999)
NICOLE S. GORDON (SBN 224138)
JENNIFER K. HANE (SBN 275729)
ASHLEY KAPLAN (SBN 293443)
CASEY KOVARIK (SBN 348032)
DIVYA B. RAO (SBN 292853)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6153
  Fax: (916) 731-3637
  Email: Daniel.Ambar@doj.ca.gov

RICHARD PARKER (SBN 62356)
JAMES WEINGARTEN (*pro hac vice*)
ADAM DI VINCENZO (*pro hac vice*)
GRANT BERMANN (*pro hac vice*)
ANASTASIA PASTAN (*pro hac vice*)
JULIA M. MAY (*pro hac vice*)
NATALIE NOGUEIRA (*pro hac vice*)
ALLISON CHESKY (*pro hac vice*)
MILBANK LLP
  1101 New York Ave. NW
  Washington, DC 20005
  Telephone: (202) 835-7525
  Email: jweingarten@milbank.com

KELLY D. GARCIA (*pro hac vice*)
EMME TYLER (SBN 341797)
MILBANK LLP
  55 Hudson Yards
  New York, NY 10001
  Telephone: (212) 530-5871
  Email: kgarcia@milbank.com

*Attorneys for Plaintiff State of California*

FOR PLAINTIFF STATE OF ARIZONA:

KRISTIN K. MAYES
Attorney General of Arizona

*/s/ Allison Weber*

ROBERT A. BERNHEIM (*pro hac vice*)
Unit Chief Counsel
SARAH PELTON (*pro hac vice*)
ALLISON WEBER (*pro hac vice*)
Assistant Attorneys General
  2005 N. Central Avenue
  Phoenix, AZ 85004
  Telephone: (602) 542-3725
  Fax: (602) 542-4377
  Email: consumer@azag.gov

*Attorneys for Plaintiff State of Arizona*


FOR PLAINTIFF STATE OF COLORADO:

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Bryn A. Williams*

BRYN A. WILLIAMS (SBN 301699)
First Assistant Attorney General
AMY BOWLES (*pro hac vice*)
Assistant Attorney General
  1300 Broadway, 10th Floor
  Denver, CO 80203
  Telephone: (720) 508-6000
  Email: Bryn.Williams@coag.gov
       Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF CONNECTICUT:

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS (*pro hac vice* forthcoming)
Deputy Associate Attorney General

*/s/ Julián A. Quiñones Reyes*

JULIÁN A. QUIÑONES REYES (*pro hac vice*)
FRANKLIN KANIN (*pro hac vice* pending)
Assistant Attorneys General
  Office of the Connecticut Attorney General
  165 Capitol Avenue
  Hartford, CT 06106
  Telephone: (860) 808-5030
  Email: Franklin.Kanin@ct.gov

*Attorneys for Plaintiff State of Connecticut*


FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Anthony W. Mariano*

ANTHONY W. MARIANO (*pro hac vice*)
Chief, Antitrust Division
WILLIAM L. TWOMEY (*pro hac vice*)
Assistant Attorney General, Antitrust Division
  Office of the Massachusetts Attorney General
  One Ashburton Place, 18th Floor
  Boston, MA 02108
  Telephone: (781) 835-7990
  Email: Anthony.Mariano@mass.gov
          William.Twomey@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF MINNESOTA:

KEITH ELLISON
Attorney General of Minnesota

*/s/ Jon M. Woodruff*

JAMES W. CANADAY (SBN 368825)
Deputy Attorney General
ELIZABETH ODETTE (*pro hac vice*)
Antitrust Division Manager
Assistant Attorney General
JON M. WOODRUFF (*pro hac vice*)
Assistant Attorney General
  445 Minnesota Street, Suite 600
  Saint Paul, MN 55101-2130
  Telephone: (651) 300-7425
  Fax: (651) 296-9663
  Email: Jon.Woodruff@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*


FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General of Nevada

ERNEST D. FIGUEROA
Consumer Advocate

*/s/ Samantha B. Feeley*

SAMANTHA B. FEELEY (NV Bar No. 14034)
(*pro hac vice*)
Senior Deputy Attorney General
  Office of the Nevada Attorney General
  100 N. Carson St.
  Carson City, Nevada 89701
  Tel: (775) 684-1100
  Email: sfeeley@ag.nv.gov

*Attorney for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NEW JERSEY:

JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ Ana Atta-Alla*

ANA ATTA-ALLA (*pro hac vice*)
Deputy Attorney General
  State of New Jersey
  Office of the Attorney General
  Division of Law
  124 Halsey Street – 5th Floor
  Newark, NJ 07102
  Telephone: (973) 648-6835
  Email: Ana.Atta-Alla@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*


FOR PLAINTIFF STATE OF NEW MEXICO:

RAÚL TORREZ
Attorney General of New Mexico

*/s/ Amanda Butler*

AMANDA BUTLER (*pro hac vice*)
Senior Counsel
KALISTA M. WILSON (*pro hac vice*)
Assistant Attorney General
  408 Galisteo St.
  Santa Fe, NM 87501
  Telephone: (505) 490-4060
  Fax: (505) 318-1050
  Email: KWilson@nmdoj.gov

*Attorneys for Plaintiff State of New Mexico*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

*/s/ Elinor R. Hoffmann*

ELINOR R. HOFFMANN (*pro hac vice*)
Chief, Antitrust Bureau
AMY MCFARLANE (*pro hac vice*)
Deputy Chief, Antitrust Bureau
PRATIK AGARWAL (*pro hac vice*)
MORGAN FEDER (*pro hac vice*)
C. WILLIAM MARGRABE (*pro hac vice*)
Assistant Attorneys General
JAYA MANTOVANI (*pro hac vice*)
Attorney General Fellow
   New York State Office of the Attorney
   General
   28 Liberty Street
   New York, NY 10005
   Telephone: (212) 416-8269
   Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for Plaintiff State of New York*


FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

*/s/ Ian Van Loh*

TIMOTHY D. SMITH (*pro hac vice*)
Attorney-in-Charge
IAN VAN LOH (SBN 280254)
ALEX DELORENZO (*pro hac vice*)
Senior Assistant Attorneys General
Economic Justice Section
   Oregon Department of Justice
   100 SW Market St.
   Portland, OR 97201
   Telephone: (503) 798-3297
   Telephone: (971) 239-7457
   Telephone: (503) 428-9482
   Email: tim.smith@doj.oregon.gov
   Email: ian.vanloh@doj.oregon.gov
   Email: alex.delorenzo@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

JOINT STATEMENT REGARDING
TRIAL SCHEDULING

21

Case No.: 4:26-cv-07116-AMO
Case No.: 4:26-cv-07212-AMO

FOR PLAINTIFF STATE OF WASHINGTON:

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Christina M. Black*

JONATHAN A. MARK (*pro hac vice*)
Division Chief, Antitrust Division
CHRISTINA M. BLACK (SBN 300081)
BROOKE H. LOVROVICH (*pro hac vice*)
Assistant Attorneys General
  800 Fifth Avenue, Suite 200
  Seattle, WA 98104-3188
  Telephone: (206) 464-7744
  Fax: (206) 464-6451
  Email: Jonathan.Mark@atg.wa.gov
        Christina.Black@atg.wa.gov
        Brooke.Lovrovich@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

Dated: July 31, 2026

Respectfully submitted,

/s/ Kellie Lerner

KELLIE LERNER (*pro hac vice*)
ELLISON A. SNIDER (*pro hac vice*)
BENJAMIN B. ALLEN (*pro hac vice*)
**SHINDER CANTOR LERNER LLP**
14 Penn Plaza, Suite 1900
New York, NY 10122
Telephone: (646) 960-8601
kellie@scl-llp.com
esnider@scl-llp.com
ballen@scl-llp.com

J. WYATT FORE (*pro hac vice*)
**SHINDER CANTOR LERNER LLP**
600 14th Street, NW
Washington, D.C. 20005
Telephone: (646) 960-8632
wyatt@scl-llp.com

CHARLES J. LADUCA (*pro hac vice*)
N. SLADE BOND II (*pro hac vice*)
**CUNEO GILBERT
FLANNERY & LADUCA, LLP**
2445 M Street, NW Suite 740
Washington, D.C. 20037
Telephone: (202) 789-3960
sbond@cuneolaw.com

SARAH ROONEY (*pro hac vice*)
**CUNEO GILBERT
FLANNERY & LADUCA, LLP**
8705 Colesville Road
B. 133
Silver Spring, MD 20910
Telephone: (301) 518-7428
srooney@cuneolaw.com

MICHAEL J. FLANNERY (SBN: 196266)
**CUNEO GILBERT
FLANNERY & LADUCA, LLP**
Two CityPlace Drive
St. Louis, MO 63141
Telephone: (314) 226-1015
mflannery@cuneolaw.com

MATTHEW J. PLATKIN (*pro hac vice*)
AARON HAIER (*pro hac vice*)
**PLATKIN LLP**
413 Washington Avenue, Unit 174

Belleville, NJ 07109
Telephone: (973) 561-1951
mplatkin@platkinllp.com
ahaier@platkinllp.com

DAVID C. BROWNSTEIN (SBN: 141929)
DAVID M. GOLDSTEIN (SBN: 142334)
**FARMER BROWNSTEIN JAEGER GOLDSTEIN SIEGEL & SHEPARD LLP**
155 Montgomery Street, Suite 301
San Francisco, CA 94104
Telephone: (415) 962-2873
dbrownstein@fbjgss.com
dgoldstein@fbjgss.com

*Attorneys for Plaintiffs*
*the Writers Guild of America, West, Inc.,*
*and the Writers Guild of America East,*
*Inc.*

Date: July 31, 2026

Respectfully submitted,

By: */s/ Beth A. Wilkinson*

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Fl.
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com

Jeffrey L. Kessler (*pro hac vice*)
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jeffrey.kessler@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
Matthew R. DalSanto (SBN 282458)
**WINSTON TAYLOR LLP**
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone: (415) 591-1469
Facsimile: (415) 591-1400
jeanifer.parsigian@winstontaylor.com
matthew.dalsanto@winstontaylor.com

Conor A. Reidy (*pro hac vice*)
Kevin B. Goldstein (*pro hac vice*)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 558-7542
Facsimile: (312) 558-5700
conor.reidy@winstontaylor.com
kevin.goldstein@winstontaylor.com

Matthew R. Huppert (*pro hac vice*)
**WINSTON TAYLOR LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5004
Facsimile: (202) 282-5100
matt.huppert@winstontaylor.com

Marguerite M. Sullivan (*pro hac vice*)
Christopher J. Brown (*pro hac vice*)
Anna M. Rathbun (SBN 273787)
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
marguerite.sullivan@lw.com
christopher.brown@lw.com

Hanna Nunez Tse (SBN 346510)
**LATHAM & WATKINS LLP**
505 Montgomery St., Ste. 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
hanna.nuneztse@lw.com

*Attorneys for Defendants Paramount Skydance Corporation*

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli (SBN 97802)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

Peter C. Herrick (*pro hac vice*)
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, NY 10019-6022
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pherrick@omm.com

Julia A. Schiller (*pro hac vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006-4061
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
jschiller@omm.com

Derek Ludwin (*pro hac vice)*
Henry Liu (*pro hac vice)*
Ross A. Demain (*pro hac vice)*
**COVINGTON & BURLING LLP**
One CityCenter
850 10th Street NW
Washington, DC 20001
Telephone: (202) 662-6000
dludwin@cov.com
hliu@cov.com
rdemain@cov.com

Bernard A. Nigro Jr. (*pro hac vice*)
Kathleen S. O'Neill (*pro hac vice*)
**FRIED FRANK HARRIS SHRIVER &
JACOBSON LLP**
801 17th Street NW
Washington, DC 20006
Telephone: (202) 639-7000
Facsimile: (202) 639-7003
barry.nigro@friedfrank.com
kathy.oneill@friedfrank.com

*Attorneys for Defendant Warner Bros.
Discovery, Inc.*

**FILER'S ATTESTATION**

I, Daniel Amber, am the ECF User whose ID and password are being used to file this Joint Statement Regarding Trial Scheduling.  In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.


By:      */s/ Daniel Ambar*
         Daniel Ambar