# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA



STATE OF CALIFORNIA, *et al.*,

     *Plaintiffs,*

  v.

PARAMOUNT SKYDANCE CORP., and
WARNER BROS. DISCOVERY, INC.,

     *Defendants.*

Case No.: 4:26-cv-07116-AMO

**JOINT CASE MANAGEMENT
STATEMENT AND [PROPOSED] CASE
MANAGEMENT ORDER**

WRITERS GUILD OF AMERICA, WEST,
INC., *et al.*,

     *Plaintiffs,*

  v.

PARAMOUNT SKYDANCE CORP., and
WARNER BROS. DISCOVERY, INC.,

     *Defendants.*

Case No.: 4:26-cv-07212-AMO

In accordance with Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, and the Standing Order for Civil Cases Before Judge Araceli Martínez-Olguín, Plaintiff States, Plaintiffs Writers Guild of America, West, Inc. and the Writers Guild of America East, Inc. (collectively, "WGA Plaintiffs"), and Defendants Paramount Skydance Corporation ("Paramount") and Warner Brothers Discovery ("Warner Bros.") (Paramount and Warner Bros. collectively, "Defendants") have met and conferred on August 10, 2026, and hereby respectfully submit this Joint Case Management Statement to the Court. Pursuant to the Standing Order for All Judges of the Northern District of California, the Parties have assumed familiarity with the facts, legal issues, motions-to-date, related cases, and requested relief.

## DEFINITIONS

For purposes of this Case Management Order, the following definitions shall apply:

1.     Each of the above-captioned cases is an "Action." Together, the above-captioned cases are the "Actions."

2.     "Plaintiff States" shall mean Plaintiffs the State of California, the State of Arizona, the State of Colorado, the State of Connecticut, the Commonwealth of Massachusetts, the State of Minnesota, the State of Nevada, the State of New Jersey, the State of New Mexico, the State of New York, the State of Oregon, and the State of Washington.

3.     "WGA" shall mean Plaintiffs Writers Guild of America, West, Inc., and Writers Guild of America East, Inc.

4.     "Plaintiffs" shall mean "Plaintiff States" and "WGA" as defined herein.

5.     "Defendants" shall mean Paramount Skydance Corp. and Warner Bros. Discovery, Inc.

6.     Each of the Plaintiff States, WGA, and Defendants is a "Party." Collectively, Plaintiff States, WGA, and Defendants are the "Parties."

## I.     SCHEDULE

The Parties have reached agreement on the following deadlines for the Actions. The Parties have competing positions on a small number of events and deadlines and set forth their respective positions after the table of agreed-upon proposed deadlines and after each section subject to dispute.

### A. Agreed Proposed Deadlines

| Event | Date |
|---|---|
| Fact discovery begins | August 17, 2026 |
| Defendants file answers to complaints | September 11, 2026 |
| Exchange of preliminary witness lists | October 16, 2026 |
| Substantial completion of party document productions | October 30, 2026 |
| Complete production of privilege logs for documents produced by substantial completion | November 13, 2026 |

| Event | Date |
| --- | --- |
| Production of privilege logs for any remaining documents | January 8, 2027 |
| Close of fact discovery [1] | January 8, 2027 |
| Plaintiffs' expert reports | January 12, 2027 |
| Defendants' expert reports | February 2, 2027 |
| Plaintiffs' reply reports | February 12, 2027 |
| Exchange of proposed stipulations and uncontested facts, exhibit lists, deposition designations, and final witness lists | February 12, 2027 |
| Each Party informs each non-party of all documents produced by that non-party that are on that Party's exhibit lists and all depositions of that non-party that have been designated by that Party | February 12, 2027 |
| Non-parties provide notice whether they object to the potential public disclosure at trial of any non-party documents and depositions, explain the basis for any such objections, and propose redactions where possible | February 17, 2027 |
| Exchange of counter-designations and objections to deposition designations | February 17, 2027 |
| Exchange of counter-counter-designations and objections to counter-designations | February 19, 2027 |
| Objections to counter-counter-designations | February 22, 2027 |
| Parties file proposed pretrial order (to include any disputes regarding the admissibility of deposition designations and confidentiality of Party documents or deposition designations) <br><br> Non-parties and Parties file motions to seal any documents and depositions | February 22, 2027 |

---

[1] The Parties will make best efforts to schedule all fact witness depositions before the close of fact discovery, but may agree to schedule non-party depositions following the close of fact discovery, if necessary.

| Event | Date |
|---|---|
| Parties file pretrial briefs | February 22, 2027 |
| Close of expert discovery, including expert depositions | February 23, 2027 |
| Final pretrial conference | February 24, 2027, 10:00am |
| Trial | March 2, 2027, to March 19, 2027 (no trial on March 8, 2027, and March 15, 2027) |
| Proposed findings of fact & conclusions of law | April 5, 2027, 12:00pm |

The Parties may amend by agreement any deadline in this Schedule, except deadlines for filing or submitting materials with the Court, the deadline for the final pretrial conference, and the trial dates.

### B.  Disputed Schedule Issues

#### 1.  Production of Pre-Complaint Materials

**Plaintiff States' Position:**  Plaintiff States have offered to produce third-party productions and related correspondence—the bulk of the documents that could reasonably be characterized as Plaintiff States' investigative files—to Defendants within 10 days of the entry of a protective order. That amount of time is required to give third parties sufficient time to seek additional protections in this Court before their documents are produced to Defendants.  Defendants' citation to *United States v. U.S. Sugar*, *see infra* n.2, is inapposite because that case involved production of pre-complaint discovery from only the U.S. Department of Justice, not twelve separate states. Defendants are incorrect that all Plaintiff States intend to withhold non-privileged third-party materials on the grounds that Plaintiff States "received but did not solicit" such materials. *Infra*. Nor do Plaintiff States intend to withhold all "of their communications with third parties." *Infra*. In any event, Plaintiffs' proposal moots Defendants' concerns about receiving third-party materials.

As for the rest of Plaintiff States' pre-complaint investigation materials, Defendants' make the unprecedented and unreasonable request that the Court order "Plaintiff States' full investigative

files be produced within 7 days of entry of a protective order, without limitation." *Infra*. Defendants have already served extraordinarily broad requests for production of Plaintiff States' pre-complaint investigation materials that require collection, review, and production of thousands of documents (including, for example, unsolicited emails from the public to different, separate agencies across state governments). Defendants are wrong that "Plaintiff States presumably have it already assembled in one place." *Infra*. There is no single "investigative file." The obligation of each state is to undertake a reasonable search for non-privileged responsive documents in its possession and produce them subject to any objections Plaintiff States assert and any subsequent negotiations with Defendants. Plaintiff States will do so here. The Court should deny Defendants' improper request for an end-run around the discovery process.

Finally, Defendants request that the Court order production of communications and materials exchanged between Plaintiff States and WGA. Again, Defendants cannot skip over Plaintiff States' rights to object to discovery and assert applicable privileges (for example, common-interest and work-product protections). Defendants must wait to bring disputes to the Court if and when they ripen.

**WGA's Position:** WGA proposes that within 10 days of entry of the protective order, Defendants produce to the WGA and Plaintiff States all materials and related privilege logs previously provided to the U.S. Department of Justice, any Plaintiff State, or any other governmental authority in connection with any antitrust investigation into Defendants' proposed transaction. Defendants' productions are highly probative and comprise the core pre-complaint evidentiary record that the WGA cannot otherwise access. Defendants are routinely required to produce such materials at the start of litigation. *See, e.g.*, *Rumble, Inc. v. Google LLC*, No. 21-cv-00229-HSG. 2023 U.S. Dist. LEXIS 95164, at *20-21 (N.D. Cal. May 31, 2023) (ordering defendant to produce materials to private plaintiff that it had previously produced to DOJ and State Attorneys General in antitrust investigations where there was significant factual and legal overlap); *In re Local TV Advert. Antitrust Litig.*, No. 18-cv-06785, ECF No. 1058 at 7-11 (N.D. Ill. Aug. 31, 2023) (compelling production of materials to private plaintiffs that defendants produced to the DOJ in connection with Sinclair-Tribune merger investigation); *United States v. AT&T Inc.*, No. 11-

01560 (ESH), ECF No. 33 at 3 (D.D.C. Sept. 16, 2011) (adopting case management order requiring defendants to produce their existing "Investigation Materials" concerning the proposed AT&T/T-Mobile merger). Prompt production of this existing set of materials imposes no burden on Defendants and is the most direct means of placing the parties on more equal footing at the outset of discovery.

**Defendants' Position:** Plaintiff States had over six months to conduct a pre-complaint investigation in this case. During that investigation, they communicated with and obtained information from third parties about the transaction (whether solicited or not)—including documents, presentations, and potentially declarations. This material is relevant, is not privileged, and is from the "fact witnesses, customers and the competitors" that the States' counsel has said are "going to matter most in this case." July 17, 2026 Hr'g Tr. at 51:13-14. For that reason, this type of material is commonly produced in merger cases promptly after a complaint is filed. [2]

Following that practice, Defendants asked Plaintiff States to produce this full set of investigative material shortly after the complaint was filed. Plaintiff States' position on this issue has continually shifted over the last few months. Until shortly before the submission of this document, their position appeared to be that they would produce *some* investigative materials ten days after entry of a protective order, but not (1) documents they received but did not solicit, and (2) any of their communications with third parties. It now appears they are willing to produce some of this latter set of materials, but subject to assertions of privilege that Defendants are unable to evaluate.

Defendants do not see any basis for refusing to produce any investigational file materials involving third parties. Materials received from third parties are relevant and non-privileged.

---

[2] *See, e.g.*, *United States v. United States Sugar Corp.*, No. 21-1644, ECF No. 38, Hr'g Tr. 16:8-13 (Dec. 15, 2021 D. Del.) ("THE COURT: . . . these types of document [in the investigative file] are always produced in these types of cases, right[]? [Government Counsel:] That's correct. And we do produce them on an expedited basis."); *id.* at 16:14-17 ("THE COURT: And you have known at least since the time you filed this case that they were going to have to be produced; right? [Government Counsel:] That is correct."); *id.* at 20:25-21:3 ("[THE COURT:] The government should tell the third parties things will be produced on an outside counsel basis and those documents should be produced on an outside counsel basis as soon as possible.")

Producing them promptly will aid discovery by placing the parties on equal footing regarding what third parties have said about the transaction. And there is no burden associated with promptly producing these materials to Defendants; the Plaintiff States presumably have it already assembled in one place. Defendants are aware of no instance where such information was shielded from discovery; this case should not be the first. Defendants' proposal is that Plaintiff States should produce this full information promptly; Defendants would prefer the material be produced in 7 days, but whether that production takes place in 7 or 10 days is not necessarily material. Defendants have also issued RFPs to the States for this same material and requested expedited treatment of those RFPs pursuant to Federal Rule of Civil Procedure 34(b)(2)(A). Thus far, the States have not responded. Ultimately, Defendants believe that any claims of privilege should be evaluated as promptly as possible given the importance of third-party materials in the States' possession.

As to the WGA, Defendants do not believe there is any dispute between the parties. Defendants propose the same timeline for the production of any materials provided by the WGA to the States, and any communications between WGA and the States, during the States' investigation of the transaction. Defendants are willing to produce to WGA the materials they have requested on the same timeframe ("[A]ll materials and related privilege logs previously provided to the U.S. Department of Justice, any Plaintiff State, or any other governmental authority in connection with any antitrust investigation into Defendants' proposed transaction.").

## 2. Deadline for Amendments

**WGA's Position:** Plaintiffs propose a deadline to amend the pleadings of December 1, 2026, five weeks before the close of fact discovery. Defendants' proposal would require Plaintiffs to finalize their pleadings before a single document has been produced. This sequence is backwards. Courts routinely permit plaintiffs in complex cases to amend their complaints at the close of fact discovery to conform to the developed record, recognizing such amendments as ordinary diligence rather than undue delay. Unlike routine government enforcement merger challenges, the WGA has received no pre-complaint discovery. Its complaint and PI motion have necessarily relied on public materials and the WGA's own records, and not on the most probative evidence in this case, which sits in Defendants' files and has not yet been produced. For example, the WGA's preliminary

injunction motion was limited to one market for reasons of judicial economy, reserving all rights to pursue all three markets after developing a full factual record. As one court explained, waiting to amend "until a strong evidentiary basis" exists is not only permissible but "preferable to prematurely asserting those claims on the basis of a limited record that may or may not support them." *In re Mosaic LLM Litig.*, 2026 U.S. Dist. LEXIS 10405, at *7–8 (N.D. Cal. Jan. 20, 2025) (quoting *Entangle Media LLC v. Dropbox Inc.*, 348 F.R.D. 649, 655 (N.D. Cal. 2025)). The same principle applies in antitrust merger litigation, where complaints are routinely amended to reflect the factual record developed in discovery. *See, e.g.*, Am. Compl., ECF 102-3, *FTC v. Meta Platforms, Inc., et al.*, No. 5:22-cv-04325-EJD (N.D. Cal. Oct. 7, 2022). Requiring Plaintiffs to lock in factual issues such as market definition before discovery starts in earnest would prejudice Plaintiffs, and prevent this Court from ruling on these factual issues without the benefit of a full record.

**Defendants' Position:** Defendants submit that any amendments to the complaints should be made by August 28, 2026—a position it appears only WGA contests. The merger at issue in this case has been public (and extensively covered) for months; the complaints in this case have been pending for weeks; and the Plaintiffs felt they had developed their claims sufficiently to seek a TRO and PI. The parties are not starting from scratch—far from it. Defendants have a right to know which parties and claims they will be defending the case against before discovery meaningfully progresses. The parties agree that fact discovery should close on January 8, 2026. Allowing Plaintiffs to amend their complaints to add new parties and claims just over a month before discovery closes would effectively preclude Defendants from taking meaningful discovery on those claims. It undermines the discovery schedule, and the orderly development of the record, to allow Plaintiffs attempt to inject new theories or parties at the relative eleventh hour.

### 3. Trial Time

**Plaintiffs' Position:** Plaintiff States respectfully submit that Plaintiffs should be allocated eight of the twelve trial days. Plaintiffs are coordinating discovery, but Plaintiff States and the WGA bear the burden of proving different cases with six different markets and different theories of harm. Plaintiffs also need extra time for potential rebuttal. *See, e.g.*, *Saint Alphonsus Med. Ctr.-*

*Nampa Inc. v. Saint Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015) ("[I]f the defendant successfully rebuts the prima facie case, the burden … shifts back to the Government"). On the other hand, Defendants have overlapping defenses applicable to both cases, including the alleged pro-competitive benefits of their merger.

The cases Defendants cite do not support an equal division of trial time between the sides in this case. In *In re Nexstar-Tegna Merger Litigation*, private plaintiff DIRECTV and the plaintiff states are alleging the same product and geographic markets; their cases are consolidated for all purposes. *See* No. 2:26-cv-00976-TLN-CKD, ECF No. 65, at 2-3 (E.D. Cal. Mar. 31, 2026) (noting that cases raise same challenges and are "based on the same facts and legal claims"); *see also Saint Alphonsus Med. Ctr.-Nampa, Inc. v. Saint Luke's Health Sys., Ltd.*, No. 1:12-cv-00560-BLW, ECF No. 97-1, at 1, 4 (D. Idaho Mar. 26, 2013) (plaintiffs requested consolidation; parties did not dispute at least one of the alleged product markets); ECF No. 92, at 1 (D. Idaho Mar. 19, 2013) (cases formally consolidated for all purposes). Defendants' other cited merger trials involved multiple government plaintiffs pursuing shared theories. *See United States v. JetBlue Airways Corp.*, No. 23-cv-10511, ECF No. 1, at 1, 27-31 (D. Mass. Mar. 7, 2023) (single case, same market allegations); *FTC v. Kroger Co.*, No. 24-cv-347, ECF No. 1, at 1, 16-22 (D. Or. Feb. 26, 2024) (same). Plaintiffs' cases involve different case theories and evidence, which they deserve adequate opportunity to present.

**Defendants' Position:** Trial time should be split equally between the two sides in this case, as is the custom in merger trials. Time is split equally in cases where there are multiple plaintiffs or groups of plaintiffs, including cases where government enforcers and private parties are jointly prosecuting a merger challenge. *See, e.g.*, *In re: Nexstar-Tegna Merger Litigation*, No. 2:26-cv-00975-TLN-CKD, ECF No. 244-1, at 3 (E.D. Cal. June 18, 2026) (equal time allocation between sides, where there were two plaintiffs—DirecTV and a group of states, including California); *St. Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:12-cv-00560-BLW, ECF No. 209 at 6–7 (D. Idaho Sept. 7, 2013) (equal time allocation between sides, where there were four plaintiffs, including the FTC, alleging one market; two private plaintiffs, alleging four different markets; and two defendants). It is also the case in other merger trials. *E.g.*, *United States v.*

*JetBlue Airways Corp.*, No. 23-cv-10511, ECF No. 67 at 17:2–10 (D. Mass. Mar. 23, 2023) (splitting trial time "50/50 between the parties"); *FTC v. Kroger Co.*, No. 24-cv-347, ECF No. 88 (D. Or. Apr. 12, 2024) (similar).

Plaintiffs notably cite no counterexample to this wealth of authority, and there is no reason to change course from precedent. There are two sets of Plaintiffs, but also two Defendants. And while Plaintiffs have different theories and may want to present different cases, Defendants have to defend themselves against both of those cases, including responding to the testimony, evidence, and argument presented at trial by all Plaintiffs. Plaintiffs claim that Defendants' evidence will "overlap[]," but they also mention that they will present "six different markets," all of which Defendants have a right to rebut. Had the cases not been related and consolidated for trial, the time would have been split evenly between the sides in each case. Consolidation for trial should not deprive Defendants of the opportunity to fully defend themselves.

## II.    DISCOVERY

The Parties' proposed discovery schedule is set forth in Section I above. The Parties shall complete discovery in accordance with the Court's Case Schedule.

### A.  Limitations on Discovery

#### 1.  Depositions

**Number of Depositions:**  Each side may take no more than forty-five (45) depositions of fact witnesses, including non-party witnesses (*i.e.*, Plaintiff States and WGA may take up to 45 depositions combined, and Defendants may take up to 45 depositions combined). Additional depositions of fact witnesses shall be permitted only by agreement of the Parties or by leave of the Court for good cause shown. A side shall be deemed to take a deposition if it noticed or cross-noticed the deposition. Every 7 hours spent on a Rule 30(b)(6) deposition shall be counted as a single deposition, regardless of whether a Party or non-party designates multiple individuals to testify. Each side may take no more than one deposition of each of the other side's testifying experts, which shall not count against the deposition limits for fact witnesses.

**Coordination of Depositions:**  A Party issuing a deposition notice or Rule 45(a)(1)(B) subpoena (the "Noticing Party") shall provide notice to all Parties in both of the Actions; any Party

shall be entitled to cross-notice a deposition within two calendar days of receiving notice. The Noticing Party shall make best efforts to schedule any mutually noticed or cross-noticed deposition at a mutually agreeable time.

**On-the-Record Time for Fact Witness Depositions:** Absent agreement or an order of the Court, individual fact witness depositions shall be limited to:

| Witness Type | Noticed By | Noticing Side | Non-Noticing Side |
|---|---|---|---|
| Party | One opposing party | 7 hours | 1 hour |
| Party | Both opposing parties | 8 hours | 1 hour |
| Non-Party | One side | 6 hours | 1 hour |
| Non-Party | Both sides | 3.5 hours each side | N/A |

For purposes of party witnesses, a former employee of a party whom counsel for a party represents shall be treated as a party witness.

Time not used by one side shall not revert to the other side.

**Time for Expert Witness Depositions:** Absent agreement or an order of the Court, each testifying expert witness shall be deposed for no longer than 7 hours on the record by the noticing party with 1 hour on the record for rebuttal by the non-noticing side.

**Noticing and Mechanics:** The Parties may not serve a deposition notice with fewer than seven calendar days' notice, absent the Parties' agreement or leave of the Court.

The Parties shall consult with each other prior to confirming any deposition to coordinate the time and place of the deposition. The Parties shall use reasonable efforts to reduce the burden on witnesses noticed for depositions and to accommodate the witness's schedule.

The Parties shall negotiate a deposition protocol to govern deposition procedures.

**2. Requests for Production [DISPUTED ISSUE]**

Documents produced by a Party from that Party's files, or by a non-party from the non-party's files, shall be presumed to be authentic within the meaning of Federal Rule of Evidence 901. Notwithstanding the foregoing, the Parties reserve rights to object to the authenticity of any

specific document. This stipulation does not address the admissibility of any document regardless of whether or not it is presumed authentic.

Documents and data previously produced during pre-complaint investigations shall be produced in the form they were originally produced. Plaintiff States may apply Bates stamps and confidentiality markings to non-party documents that were previously produced.

The Parties agree to make good-faith efforts to produce documents responsive to Requests for Production on a rolling basis to the extent feasible. The Parties shall serve objections and responses to requests for production no later than seven (7) business days after the date of service or fourteen (14) calendar days after the issuance of a scheduling order by the Court, whichever is later. If a Party requests to meet and confer on such objections and responses, then the adverse Party shall agree to participate in a conference that occurs within three (3) business days of the request to meet and confer unless the Parties agree otherwise.

In response to any document requests, the Parties need not reproduce any documents previously produced to that party (*i.e.*, documents already produced during the investigation).

The Parties dispute whether exhibits may be admitted at trial without introduction of a sponsoring witness.

**Plaintiffs' Position:** Plaintiffs respectfully submit that requiring sponsoring witness testimony for all exhibits would waste limited trial time and could result in fewer live witnesses at trial and a less robust evidentiary record. The Federal Rules of Evidence do not require exhibits to be admitted through a sponsoring witness; instead, they permit admissibility through other means, including certifications. *See, e.g.*, Fed. R. Evid. 803(6)(D), 902(13); *see also* Fed. R. Evid. 902 advisory committee's notes on 2017 amendments ("[T]he Committee has found that the expense and inconvenience of producing a witness to authenticate an item of electronic evidence is often unnecessary."). Efficiency concerns are particularly acute here where the Parties dispute allocation of limited trial time. *See supra.* Courts routinely exercise their discretion to admit exhibits without sponsoring witness testimony, particularly where documents produced in discovery are kept in the regular course of business and do not pose hearsay concerns. *See, e.g.*, *United States v. Google*

*LLC*, No. 20-cv-03010-APM, ECF No. 696, at 86:7-16 (D.D.C. Sept. 1, 2023); *Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074, 1091-92 (S.D. Cal. 2023).

**Defendants' Position**:  The Court should enforce the well-established rule on requiring sponsoring witnesses. Without it, the parties would be able to move documents into evidence without a fact witness who can speak to a document's meaning and context. This would be improper.

The rule on sponsoring witnesses serves several functions beyond authenticating a document or laying the foundation for a hearsay exception such as the business records.  Requiring a sponsoring witness ensures the opportunity "to contextualize and explain the technical and lengthy documents at issue, which might otherwise be misunderstood or selectively cited in post-trial briefs." *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 186-87 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019).  The record in this case will likely be voluminous, and a sponsoring witness ensures that pivotal knowledge about the exhibits can be provided (*e.g.*, Are the drafts or final versions? Do they reflect broader views of an issue? Have circumstances changed? Are any statements misconstrued or taken out of context?).

Unsurprisingly, courts in this district have required sponsoring witnesses, including in complex antitrust trials with voluminous records. *See, e.g.*, Ex. List, Jan. 9, 2019, *FTC v. Qualcomm, Inc.*, No. 17-cv-00220-LHK (N.D. Cal), ECF No. 1208, (listing sponsoring witness for each exhibit); Ex. List, Nov. 18, 2022, *FTC v. Meta Platforms, Inc.*, No. 5:22-cv-04325 (N.D. Cal.), ECF No. 246 (same); Pretrial Conf. Tr. No. 4, 29:11-30:12, Apr. 22, 2021, *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal.), ECF No. 471 (instructing the parties to identify portions of a deposition that authenticate an exhibit); *see also In re Social Media Adolescent Addiction/Personal Injury Prod. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal), 7/17/2026 Hr'g Tr. at 61:24-62:3 ("You don't get to throw documents into evidence for which there is no evidentiary record as to its probative value."); *id.* at 60:13-16 (same); *Velasco v. Broadway Arctic Circle, LLC*, No. 4:11-CV-00102-BLW, 2012 WL 13024726, at *2 (D. Idaho Feb. 16, 2012) ("Defendants are right that there must be a proper foundation before the Court admits the document. Accordingly, the Court will only admit the document at trial if the proper foundation is laid."). The

same is true outside this District. *See, e.g.*, Pretrial Conf. Tr. 15:11-16, Jan. 17, 2020, *United States v. Sabre Corp.*, No. 1:19-cv-01548 (D. Del.), ECF No. 197 ("[Y]ou do need to show a witness an exhibit if you want it to be made part of the evidentiary record. I don't allow, you know, at the end of trial suddenly a whole universe of exhibits come into evidence that no one took the time to even show to a witness and therefore showed to me."); *see also* Pretrial Conf. Tr. 10:22-23, April 4, 2022, *U.S. Sugar Corp.*, No. 1:21-cv-01644 (D. Del.), ECF No. 175 ("Documents can only come into evidence if they are on an exhibit list and shown to a witness.").

### 3.  Non-Party Discovery

The notice requirements of Federal Rule of Civil Procedure 45(a)(4) shall apply.  No party issuing a non-party subpoena for the production of documents or electronically stored information shall request a return date sooner than seven (7) calendar days after service.  Every documentary subpoena to a non-party shall include a cover letter requesting that (1) the non-party Bates-stamp each document with a production number and any applicable confidentiality designation prior to producing it and (2) the non-party provide to the other parties copies of all productions at the same time as they are produced to the requesting party.  If a non-party fails to provide copies of productions to the other parties, the requesting party shall produce all materials received pursuant to the non-party subpoena, as well as all materials received voluntarily in lieu of a subpoena response, to all Parties within one business day of receipt.  Production shall be in the format in which the materials were received.  A Party that receives executed declarations or affidavits from a non-party shall provide a copy of such declarations or affidavits to all Parties within two business days of receipt.

### 4.  Interrogatories

Each Party may serve up to ten (10) interrogatories on each opposing Party in both actions (*i.e.*, Plaintiff States and WGA may each serve up to ten interrogatories on each Defendant, and each Defendant may serve up to ten interrogatories on Plaintiff States collectively and up to ten interrogatories on WGA collectively), only five (5) of which can be contention interrogatories, which the Parties agree can be served without regard to Local Rule 33.3.  An interrogatory that is

directed to multiple opposing Parties in one Action may be served jointly on those Parties and shall be counted as one interrogatory.

The Parties shall serve objections to interrogatories no later than seven business days after the date of service.  If a Party requests to meet and confer on such objections and responses, then the adverse Party shall agree to participate in a conference that occurs within three (3) business days of the request.  The Parties shall serve substantive responses no later than twenty-one (21) days after service of objections to the interrogatories.

### 5.  Requests for Admission

The Parties agree not to serve requests for admission, except as to the authenticity or admissibility of documents, data, or other evidence.

### 6.  Expert Disclosures

Expert disclosures, including each Party's expert report(s), shall comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), except as modified herein:

1. No Party must preserve or disclose, including in expert deposition testimony, on privilege logs, or through testimony at trial, the following documents or materials:

    a. facts, data, documents, or communications not relied upon by an expert in forming that expert's opinion;

    b. any form of communication or work product shared between or among any of the Parties' counsel and their expert(s), persons assisting the expert(s), or consultants, or between the expert(s) or consultants themselves;

    c. an expert's notes, unless they are expressly relied upon and/or cited in support of an opinion or fact in an expert report;

    d. drafts of expert reports, analyses, or other work product; or

    e. data formulations, data runs, data analyses, or any database-related operations not relied upon by any expert.

2. The Parties hereby expressly modify the disclosure requirements listed under Federal Rule of Civil Procedure 26(a)(2)(B).  On the day after service of an expert report, the

serving Party shall disclose to all other Parties the following materials associated with that expert report:

    a.   copies of any materials relied upon by the expert not previously produced that are not readily available publicly;

    b.   for any calculations appearing in the report, all data and programs underlying the calculations (including all programs and codes necessary to replicate the calculations from the initial ("raw") data files and the intermediate working-data files that are generated from the raw data files and used in performing the calculations appearing in the final report);

    c.   a list by Bates number or citation to a publicly available source, as applicable, of all documents relied upon by the testifying expert(s) in forming any opinions in his or her report(s);

    d.   a list of all publications authored by the expert in the previous 10 years and copies of all publications authored by the expert in the previous 10 years that are not readily available publicly; and

    e.   a list of all other cases in which, during the previous 4 years, the expert testified at trial or by deposition, including tribunal and case number.

**7. Witness Lists [DISPUTED ISSUE]**

The Parties shall prepare and exchange preliminary fact witness lists for both Actions on the date set forth in the Schedule. These lists shall reflect a good-faith effort to identify the individuals who will be called at trial, shall summarize the general topics of each witness's anticipated testimony, shall note whether the witness will be called live or by designation (if known), and shall include each witness's contact information and name of employer or the witness's counsel (if known).

The Parties shall prepare and exchange final witness lists for both Actions on the date set forth in the Schedule. Each Party may include no more than three fact witnesses on their final witness list who were not listed on a preliminary list, absent express permission by all Parties or order of the Court. To the extent any of these three newly identified fact witnesses were not

previously deposed, the disclosing party must make the fact witness available for a deposition within ten (10) days.

A Party may not call a witness at trial who is not listed on their final witness list, absent agreement among all Parties or a showing of good cause and an order of the Court. If a new witness is allowed to be added under this paragraph, the Party adding the witness must make the witness available for deposition no later than seven (7) days before trial. The Parties agree that witness lists will be prepared in good faith.

The Parties dispute whether or not there should be limits on the number of fact witnesses permitted on final witness lists.

**Plaintiffs' Position**: Plaintiffs propose that the final witness lists be limited to 15 live fact witnesses per side in each Action. Plaintiffs' position is that a reasonable limit is necessary to allow sufficient time to depose any newly disclosed witnesses during the eighteen days between service of final witness lists and beginning of trial.

**Defendants' Position**: Defendants do not believe there should be any artificial limits on the number of fact witnesses that the parties can present at trial; the parties should be allowed to use their trial time how they see fit. If one side wants to call multiple short witnesses, there should be no restriction on that. To the extent Plaintiffs have concerns about the need to depose additional witnesses, the parties have agreed that only three new fact witnesses can be added to the final witness list and that good cause would be needed to call a trial witness who is not on the final trial witness list.

### B. Privilege & Privilege Logs [DISPUTED ISSUE]

To the extent any Party withholds a document on the basis of a claim of attorney-client privilege, work product doctrine, or other similar privilege or doctrine, that Party shall identify the document on a privilege log that complies with Fed. R. Civ. P. 26(b)(5) and provides sufficient detail for other Parties to assess the claim of privilege or protection.

Documents that meet any one of the following criteria may be excluded from privilege logs:

JOINT CASE MANAGEMENT
STATEMENT AND [PROPOSED] CASE
MANAGEMENT ORDER

17

Case No.: 4:26-cv-07116-AMO
Case No.: 4:26-cv-07212-AMO

(i)     communications solely between or among counsel[3] for a Plaintiff State or Plaintiff States;

(ii)     communications solely between or among counsel for WGA;

(iii)     communications solely between or among counsel for Plaintiffs in the Actions;

(iv)     communications solely between or among counsel for Paramount Skydance Corp.;

(v)     communications solely between or among counsel for Warner Bros. Discovery, Inc.;

(vi)     communications solely between or among counsel for Defendants in the Actions after the Defendants executed their merger agreement on February 27, 2026;

(vii)     communications solely between or among outside counsel for Defendants and employees or agents of Defendants;

(viii)     communications solely between or among outside counsel for Plaintiffs and employees or agents of Plaintiffs;

(ix)     communications internal to a side sent or received after the filing of the complaint (July 13, 2026) with at least one counsel; and

(x)     documents that are not responsive to any discovery request, including any documents predicted as responsive by a technology assisted review ("TAR") algorithm but identified in good faith as non-responsive during privilege review.[4]

The Parties dispute whether or not the States should have to log communications solely among the Plaintiff States and States who participated in the pre-complaint investigation but are not Plaintiff States; and communications among the Plaintiff States and the Department of Justice before June 12, 2026.  **Plaintiffs' Position**: The common interest and other privileges protect communications among law enforcement agencies during the period when they were collaborating on the pre-complaint investigation of this matter. *See, e.g.*, *FTC v. AMG Servs., Inc.*, 291 F.R.D. 544, 559-60 (D. Nev. 2013) (protecting "emails between the FTC and other agencies"); *Gen. Elec. Co. v. EPA*, 18 F. Supp. 2d 138, 140-43 (D. Mass. 1998) (protecting documents "shared with any

---

[3] For purposes of Section 7.B, "counsel" refers to counsel and any persons employed by counsel or acting on their behalf.

[4] Nothing in this list shall be construed to limit the privilege claims that any Party may assert.

state agencies"). Requiring logging of thousands of communications is unduly burdensome and serves no purpose given the Parties' agreement for the categories above that common-interest protections can apply. **Defendants' Position**: **Defendants' Position**: Defendants' position is that such communications should be logged so Defendants can assess the claims of privilege, because it is not clear what privilege would attach to any such communications and claims of privilege would depend on the context and circumstances.  For example, the Plaintiff States have not identified whether they have a common interest agreement with any other governmental entities or when that interest attached; at minimum, they would need to log communications before such an agreement was in place.

If a portion of a document is subject to a claim of attorney-client privilege, work product doctrine, or other similar privilege or doctrine, then only that portion shall be redacted with conspicuous markings. The remainder of the document shall be produced without redactions.  The Parties agree that documents produced with redactions need not be logged provided that each Party shall provide additional information, upon reasonable request, regarding each document where the basis for a privilege redaction is unclear on the face of the redacted document itself.

The Parties shall disclose privilege logs on a rolling basis, but no later than the deadlines described in the Schedule. The Parties reserve the right to object to privilege determinations as though those materials and associated privilege logs had been originally produced in these Actions.

## III.   JURISDICTION, VENUE, AND SERVICE

The Parties agree there is federal question jurisdiction under 28 U.S.C. § 1331, and there are no issues regarding personal jurisdiction or venue.  All Parties have been served or otherwise accepted or waived service.

## IV.   AMENDMENT OF PLEADINGS

Amendments to the pleadings may be made pursuant to the Court's resolution of the dispute presented in Section I above.

## V.   EVIDENCE PRESERVATION

The Parties have discussed disclosures, discovery, and ESI, and confirmed that all Parties are complying with their obligations to reasonably preserve information that currently exists.  The

Parties are aware of their duties regarding the preservation of discoverable information, including ESI, and have taken reasonable measures to comply with those duties, as required by the Federal Rules of Civil Procedure.

**VI.   INITIAL DISCLOSURES**

The Parties agree to waive the exchange of disclosures under Fed. R. Civ. P. 26(a)(1).

**VII.   CLASS ACTIONS**

There is no proposed class at issue in this matter.

**VIII.   SETTLEMENT AND ADR**

The Parties are having constructive discussions regarding the identification of two alternative magistrate judges to preside over a settlement conference for the Actions and will provide a further update to the Court as soon as possible.

**IX.   PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated:  August 13, 2026

Respectfully submitted,

FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

*/s/ Daniel D. Ambar*

PAULA L. BLIZZARD (SBN 207920)
Senior Assistant Attorney General
NATALIE S. MANZO (SBN 155655)
BRENT K. NAKAMURA (SBN 283572)
Supervising Deputy Attorneys General
DANIEL D. AMBAR (SBN 278853)
WINSTON H. CHEN (SBN 166959)
MATTHEW E. DELGADO (SBN 306999)
NICOLE S. GORDON (SBN 224138)
JENNIFER K. HANE (SBN 275729)
ASHLEY KAPLAN (SBN 293443)
CASEY KOVARIK (SBN 348032)
DIVYA B. RAO (SBN 292853)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6153
  Fax: (916) 731-3637
  Email: Daniel.Ambar@doj.ca.gov


RICHARD PARKER (SBN 62356)
JAMES WEINGARTEN (*pro hac vice*)
ADAM DI VINCENZO (*pro hac vice*)
GRANT BERMANN (*pro hac vice*)
ANASTASIA PASTAN (*pro hac vice*)
JULIA M. MAY (*pro hac vice*)
NATALIE NOGUEIRA (*pro hac vice*)
ALLISON CHESKY (*pro hac vice*)
MILBANK LLP
  1101 New York Ave. NW
  Washington, DC 20005
  Telephone: (202) 835-7525
  Email: jweingarten@milbank.com

KELLY D. GARCIA (*pro hac vice*)
EMME TYLER (SBN 341797)
MILBANK LLP
  55 Hudson Yards
  New York, NY 10001
  Telephone: (212) 530-5871
  Email: kgarcia@milbank.com

*Attorneys for Plaintiff State of California*

FOR PLAINTIFF STATE OF ARIZONA:

KRISTIN K. MAYES
Attorney General of Arizona

*/s/ Allison Weber*

ROBERT A. BERNHEIM (*pro hac vice*)
Unit Chief Counsel
SARAH PELTON (*pro hac vice*)
ALLISON WEBER (*pro hac vice*)
Assistant Attorneys General
  2005 N. Central Avenue
  Phoenix, AZ 85004
  Telephone: (602) 542-3725
  Fax: (602) 542-4377
  Email: consumer@azag.gov

*Attorneys for Plaintiff State of Arizona*


FOR PLAINTIFF STATE OF COLORADO:

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Bryn A. Williams*

BRYN A. WILLIAMS (SBN 301699)
First Assistant Attorney General
AMY BOWLES (*pro hac vice*)
Assistant Attorney General
  1300 Broadway, 10th Floor
  Denver, CO 80203
  Telephone: (720) 508-6000
  Email: Bryn.Williams@coag.gov
        Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF CONNECTICUT:
WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS (*pro hac vice* forthcoming)
Deputy Associate Attorney General

*/s/ Julián A. Quiñones Reyes*

JULIÁN A. QUIÑONES REYES (*pro hac vice*)
FRANKLIN KANIN (*pro hac vice*)
Assistant Attorneys General
  Office of the Connecticut Attorney General
  165 Capitol Avenue
  Hartford, CT 06106
  Telephone: (860) 808-5030
  Email: Franklin.Kanin@ct.gov

*Attorneys for Plaintiff State of Connecticut*

FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Anthony W. Mariano*

ANTHONY W. MARIANO (*pro hac vice*)
Chief, Antitrust Division
WILLIAM L. TWOMEY (*pro hac vice*)
Assistant Attorney General, Antitrust Division
  Office of the Massachusetts Attorney General
  One Ashburton Place, 18th Floor
  Boston, MA 02108
  Telephone: (781) 835-7990
  Email: Anthony.Mariano@mass.gov
         William.Twomey@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF MINNESOTA:

KEITH ELLISON
Attorney General of Minnesota

*/s/ Jon M. Woodruff*

JAMES W. CANADAY (SBN 368825)
Deputy Attorney General
ELIZABETH ODETTE (*pro hac vice*)
Antitrust Division Manager
Assistant Attorney General
JON M. WOODRUFF (*pro hac vice*)
Assistant Attorney General
  445 Minnesota Street, Suite 600
  Saint Paul, MN 55101-2130
  Telephone: (651) 300-7425
  Fax: (651) 296-9663
  Email: Jon.Woodruff@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*


FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General of Nevada

ERNEST D. FIGUEROA
Consumer Advocate

*/s/ Samantha B. Feeley*

SAMANTHA B. FEELEY (NV Bar No. 14034)
(*pro hac vice*)
Senior Deputy Attorney General
  Office of the Nevada Attorney General
  100 N. Carson St.
  Carson City, Nevada 89701
  Tel: (775) 684-1100
  Email: sfeeley@ag.nv.gov

*Attorney for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NEW JERSEY:

JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ Ana Atta-Alla*

ANA ATTA-ALLA (*pro hac vice*)
Deputy Attorney General
  State of New Jersey
  Office of the Attorney General
  Division of Law
  124 Halsey Street – 5th Floor
  Newark, NJ 07102
  Telephone: (973) 648-6835
  Email: Ana.Atta-Alla@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*


FOR PLAINTIFF STATE OF NEW
MEXICO:

RAÚL TORREZ
Attorney General of New Mexico

*/s/ Amanda Butler*

AMANDA BUTLER (*pro hac vice*)
Senior Counsel
KALISTA M. WILSON (*pro hac vice*)
Assistant Attorney General
  408 Galisteo St.
  Santa Fe, NM 87501
  Telephone: (505) 490-4060
  Fax: (505) 318-1050
  Email: KWilson@nmdoj.gov

*Attorneys for Plaintiff State of New Mexico*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

*/s/ Elinor R. Hoffmann*

ELINOR R. HOFFMANN (*pro hac vice*)
Chief, Antitrust Bureau
AMY MCFARLANE (*pro hac vice*)
Deputy Chief, Antitrust Bureau
PRATIK AGARWAL (*pro hac vice*)
MORGAN FEDER (*pro hac vice*)
C. WILLIAM MARGRABE (*pro hac vice*)
Assistant Attorneys General
JAYA MANTOVANI (*pro hac vice*)
Attorney General Fellow
  New York State Office of the Attorney
  General
  28 Liberty Street
  New York, NY 10005
  Telephone: (212) 416-8269
  Email: Elinor.Hoffman@ag.ny.gov

*Attorneys for Plaintiff State of New York*

FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

*/s/ Ian Van Loh*

TIMOTHY D. SMITH (*pro hac vice*)
Attorney-in-Charge
IAN VAN LOH (SBN 280254)
ALEX DELORENZO (*pro hac vice*)
Senior Assistant Attorneys General
Economic Justice Section
  Oregon Department of Justice
  100 SW Market St.
  Portland, OR 97201
  Telephone: (503) 798-3297
  Telephone: (971) 239-7457
  Telephone: (503) 428-9482
  Email: tim.smith@doj.oregon.gov
  Email: ian.vanloh@doj.oregon.gov
  Email: alex.delorenzo@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

JOINT CASE MANAGEMENT
STATEMENT AND [PROPOSED] CASE       26
MANAGEMENT ORDER

Case No.: 4:26-cv-07116-AMO
Case No.: 4:26-cv-07212-AMO

FOR PLAINTIFF STATE OF WASHINGTON:

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Christina M. Black*

JONATHAN A. MARK (*pro hac vice*)
Division Chief, Antitrust Division
CHRISTINA M. BLACK (SBN 300081)
BROOKE H. LOVROVICH (*pro hac vice*)
Assistant Attorneys General
  800 Fifth Avenue, Suite 200
  Seattle, WA 98104-3188
  Telephone: (206) 464-7744
  Fax: (206) 464-6451
  Email: Jonathan.Mark@atg.wa.gov
        Christina.Black@atg.wa.gov
        Brooke.Lovrovich@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

FOR PLAINTIFFS THE WRITERS GUILD OF AMERICA, WEST, INC., AND THE WRITERS GUILD OF AMERICA EAST, INC.

*/s/ Kellie Lerner*

KELLIE LERNER (pro hac vice)
ELLISON A. SNIDER (pro hac vice)
BENJAMIN B. ALLEN (pro hac vice)
**SHINDER CANTOR LERNER LLP**
14 Penn Plaza, Suite 1900
New York, NY 10122
Telephone: (646) 960-8601
kellie@scl-llp.com
esnider@scl-llp.com
ballen@scl-llp.com

J. WYATT FORE (pro hac vice)
**SHINDER CANTOR LERNER LLP**
600 14th Street, NW
Washington, D.C. 20005
Telephone: (646) 960-8632
wyatt@scl-llp.com

CHARLES J. LADUCA (pro hac vice)
N. SLADE BOND II (pro hac vice)

**CUNEO GILBERT FLANNERY & LADUCA, LLP**
2445 M Street, NW Suite 740
Washington, D.C. 20037
Telephone: (202) 789-3960
sbond@cuneolaw.com

SARAH ROONEY (pro hac vice)
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
8705 Colesville Road
B. 133
Silver Spring, MD 20910
Telephone: (301) 518-7428
srooney@cuneolaw.com

MICHAEL J. FLANNERY (SBN: 196266)
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
Two CityPlace Drive
St. Louis, MO 63141
Telephone: (314) 226-1015
mflannery@cuneolaw.com

MATTHEW J. PLATKIN (pro hac vice)
AARON HAIER (pro hac vice)
**PLATKIN LLP**
413 Washington Avenue, Unit 174
Telephone: (973) 561-1951
mplatkin@platkinllp.com
ahaier@platkinllp.com

DAVID C. BROWNSTEIN (SBN: 141929)
DAVID M. GOLDSTEIN (SBN: 142334)
**FARMER BROWNSTEIN JAEGER GOLDSTEIN SIEGEL & SHEPARD LLP**
155 Montgomery Street, Suite 301 San Francisco, CA 94104
Telephone: (415) 962-2873
dbrownstein@fbjgss.com
dgoldstein@fbjgss.com

*Attorneys for Plaintiffs*
*the Writers Guild of America, West, Inc., and the Writers Guild of America East, Inc.*

FOR DEFENDANT PARAMOUNT
SKYDANCE CORP.

*/s/ Beth A. Wilkinson*
Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Fl.
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com

Jeffrey L. Kessler (*pro hac vice*)
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jeffrey.kessler@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
Matthew R. DalSanto (SBN 282458)
**WINSTON TAYLOR LLP**
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone: (415) 591-1469
Facsimile: (415) 591-1400
jeanifer.parsigian@winstontaylor.com
matthew.dalsanto@winstontaylor.com

Conor A. Reidy (*pro hac vice*)
Kevin B. Goldstein (*pro hac vice*)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 558-7542
Facsimile: (312) 558-5700
conor.reidy@winstontaylor.com
kevin.goldstein@winstontaylor.com

Matthew R. Huppert (*pro hac vice*)
**WINSTON TAYLOR LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5004
Facsimile: (202) 282-5100
matt.huppert@winstontaylor.com

Marguerite M. Sullivan (*pro hac vice*)
Christopher J. Brown (*pro hac vice*)
Anna M. Rathbun (SBN 273787)
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Telephone: (202) 637-2200
Facsimile: (202) 637-2201
marguerite.sullivan@lw.com
christopher.brown@lw.com

Hanna Nunez Tse (SBN 346510)
**LATHAM & WATKINS LLP**
505 Montgomery St., Ste. 2000
San Francisco, CA 94111-2562
Telephone: (415) 391-0600
hanna.nuneztse@lw.com


*Attorneys for Defendants Paramount Skydance Corporation*

FOR DEFENDANT WARNER BROS. DISCOVERY, INC.

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli (SBN 97802)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

Peter C. Herrick (*pro hac vice*)
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, NY 10019-6022
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pherrick@omm.com

Julia A. Schiller (*pro hac vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006-4061
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
jschiller@omm.com

Derek Ludwin (*pro hac vice*)
Henry Liu (*pro hac vice*)
Ross A. Demain (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 10th Street NW
Washington, DC 20001
Telephone: (202) 662-6000
dludwin@cov.com
hliu@cov.com
rdemain@cov.com

JOINT CASE MANAGEMENT
STATEMENT AND [PROPOSED] CASE
MANAGEMENT ORDER

30

Case No.: 4:26-cv-07116-AMO
Case No.: 4:26-cv-07212-AMO

Bernard A. Nigro Jr. (*pro hac vice*)
Kathleen S. O'Neill (*pro hac vice*)
**FRIED FRANK HARRIS SHRIVER & JACOBSON LLP**
801 17th Street NW
Washington, DC 20006
Telephone: (202) 639-7000
Facsimile: (202) 639-7003
barry.nigro@friedfrank.com
kathy.oneill@friedfrank.com

*Attorneys for Defendant Warner Bros. Discovery, Inc.*

**FILER'S ATTESTATION**

I, Daniel D. Ambar, am the ECF User whose ID and password are being used to file this Joint Case Management Statement and [Proposed] Case Management Order.  In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.


By: */s/ Daniel D. Ambar*
Daniel Ambar

| JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] CASE MANAGEMENT ORDER | 1 | Case No.: 4:26-cv-07116-AMO<br>Case No.: 4:26-cv-07212-AMO |