ROB BONTA
Attorney General of California
PAULA L. BLIZZARD (SBN 207920)
Senior Assistant Attorney General
NATALIE S. MANZO (SBN 155655)
BRENT K. NAKAMURA (SBN 283572)
Supervising Deputy Attorneys General
WINSTON H. CHEN (SBN 166959)
MATTHEW E. DELGADO (SBN 306999)
NICOLE S. GORDON (SBN 224138)
JENNIFER K. HANE (SBN 275729)
ASHLEY KAPLAN (SBN 293443)
CASEY KOVARIK (SBN 348032)
DIVYA B. RAO (SBN 292853)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6000
Fax: (916) 731-3637
E-mail: Ashley.Kaplan@doj.ca.gov

*Attorneys for Plaintiff State of California*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

STATE OF CALIFORNIA, *et al.*,

*Plaintiffs,*

v.

PARAMOUNT SKYDANCE CORP., and WARNER BROS. DISCOVERY, INC.,

*Defendants.*

WRITERS GUILD OF AMERICA, WEST, INC., *et al.*,

*Plaintiffs,*

v.

PARAMOUNT SKYDANCE CORP., and WARNER BROS. DISCOVERY, INC.,

*Defendants.*

Case No.: 4:26-cv-07116-AMO
Case No.: 4:26-cv-07212-AMO

**PLAINTIFFS' OPPOSITION TO PARAMOUNT'S MOTION TO MODIFY THE STIPULATION AND ORDER NOT TO CLOSE TO REQUIRE BOND**

Date: September 24, 2026
Time: 10:00am
Judge: Honorable Araceli Martínez-Olguín

**TABLE OF CONTENTS**

BACKGROUND .......... 2
ARGUMENT .......... 4
I. Paramount Has Not Been “Wrongfully Enjoined or Restrained” .......... 4
II. Paramount Fails to Demonstrate Any “Significant Change” Requiring Modification .......... 7
III. Only a Nominal Bond Is Appropriate At Most .......... 10
CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Fed'n of State Cnty. & Mun. Emps. v. U.S. Off. of Mgmt. & Budget*,
813 F. Supp. 3d 944 (N.D. Cal. 2025) ........ 11

*Apple, Inc. v. Samsung Elecs. Co.*,
877 F. Supp. 2d 838 (N.D. Cal. 2012) ........ 11

*Arevalo v. Trump*,
785 F. Supp. 3d 644 (C.D. Cal. 2025) ........ 12

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*,
481 F. Supp. 3d 370 (M.D. Pa. 2020) ........ 5, 7

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) ........ 10, 11

*Buddy Sys., Inc. v. Exer-Genie, Inc.*,
545 F.2d 1164 (9th Cir. 1976) ........ 12

*Cal. Hosp. Ass'n v. Maxwell-Jolly*,
776 F. Supp. 2d 1129 (E.D. Cal. 2011) ........ 11, 12

*California v. Am. Stores Co.*,
495 U.S. 271 (1990) ........ 12

*CBS, Inc. v. Merrick*,
716 F.2d 1292 (9th Cir. 1983) ........ 6

*City of S. Pasadena v. Slater*,
56 F. Supp. 2d 1106 (C.D. Cal. 1999) ........ 12

*Cont'l Oil Co. v. Frontier Refin. Co.*,
338 F.2d 780 (10th Cir. 1964) ........ 12

*Crowley v. Loc. No. 82, Furniture & Piano Moving*,
679 F.2d 978 (1st Cir. 1982) ........ 10

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) ........ 10

*Estate of Amaro v. City of Oakland*,
653 F.3d 808 (9th Cir. 2011) ........ 7

*Gates v. Shinn*,
98 F.3d 463 (9th Cir. 1996) ........ 6

*Gon v. First State Insurance Co.*,
871 F.2d 863 (9th Cir. 1989) ........ 6

*Helfand v. Gerson*,
105 F.3d 530 (9th Cir. 1997) ........ 7

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ........ 10

*Jorgenson v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) ........ 10

*Las Vegas Sun v. Adelson*,
147 F.4th 1103 (9th Cir. 2025) ........ 1, 6, 9, 10

*Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986) ........ 5

*Marietta Mem'l Hosp. v. W. Va. Health Care Auth.*,
2016 WL 7363052 (S.D. W. Va. Dec. 19, 2016) ........ 5

*Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*,
834 F. Supp. 2d 29 (D. Mass. 2011) ........ 11

*Move, Inc. v. Real Est. All., Ltd.*,
2016 WL 9080238 (C.D. Cal. Apr. 25, 2016) ........ 6

*Nat'l Urb. League v. Ross*,
484 F. Supp. 3d 802 (N.D. Cal. 2020) ........ 10

*New Educ. Dev. Sys., Inc. v. Boitano*,
573 F. Supp. 594 (N.D. Cal. 1983) ........ 5

*In re Nexstar-TEGNA Merger Litig.*,
2026 WL 1049295 (E.D. Cal. Apr. 17, 2026) ........ 11, 12

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005) ........ 11

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ........ 8

*Sanofi-Synthelabo v. Apotex, Inc.*,
470 F.3d 1368 (Fed. Cir. 2006) ........ 11

*Sharp v. Weston*,
233 F.3d 1166 (9th Cir. 2000) ........ 7

*Shropshire v. Fred Rappoport Co.*,
294 F. Supp. 2d 1085 (N.D. Cal. 2003) ........ 7

*TNT Mktg., Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986) .... 6

*Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160 (9th Cir. 2012) .... 6

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772 (9th Cir. 2009) .... 7

*United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601 (9th Cir. 1995) .... 6

*United States v. Asarco Inc.*, 430 F.3d 972 (9th Cir. 2005) .... 8

*United States v. Baroid Corp.*, 130 F. Supp. 2d 101 (D.D.C. 2001) .... 8

*United States v. Cal-Almond, Inc.*, 102 F.3d 999 (9th Cir. 1996) .... 6

*United States v. Georgia-Pacific Co.*, 421 F.2d 92 (9th Cir 1970) .... 7

*Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998) .... 10

*Washington v. Texaco Refin. & Mktg., Inc.*, 1991 WL 47081 (W.D. Wash. Jan. 11, 1991) .... 12

*Washington v. U.S. Dep't of Educ.*, 807 F. Supp. 3d 1275 (W.D. Wash. 2025) .... 11

**Statutes**

15 U.S.C. § 26 .... 4, 12, 13

38 Stat. 738 (1914) .... 12

**Other Authorities**

Defs.' Opp'n to Pls.' Mots. for Prelim. Injunction, *In re Nexstar-TEGNA Merger Litig.*, No. 2:26-cv-00976 (E.D. Cal. Apr. 1, 2026), Dkt. No. 76 .... 11

Fed. R. Civ. P. 65 .... 4

Joe Flint, *Paramount Agrees to Pause Its Warner Bros. Merger*, Wall St. J. (July 24, 2026) .... 4

Paramount Skydance Corp., Annual Report (Form 10-K) (Feb. 25, 2026) .... 8

Paramount Skydance Corp., Current Report (Form 8-K) (Feb. 10, 2026)............................ 2, 8, 9

Paramount Skydance Corp., Proxy Statement (Schedule 14A) (Feb. 17, 2026) ........................ 2, 8

Paramount Skydance Corp., Quarterly Report (Form 10-Q) (May 4, 2026) ............................. 8, 9

Defendant Paramount Skydance seeks to extract $1.88 billion from the public and a non-profit labor union to underwrite the costs of two private contracts it entered willfully, with advice of counsel, and for its own benefit. The first is the merger agreement, in which Paramount chose to pay Warner Bros. Discovery shareholders a ticking fee as part of the consideration for Defendants' proposed merger. The second is the stipulation to voluntarily refrain from closing the merger, which Paramount itself proposed, negotiated, and then presented to this Court for signature.

Paramount now wishes to offload its responsibility for the first agreement by materially modifying the second. But whatever regret Paramount may feel for its commitments to Warner Bros., to Plaintiff States, to the WGA,[1] and to the Court, it cannot show that the Court acted "improvidently" in signing the joint stipulation. Nor can Paramount show why the public or a non-profit labor union should underwrite its acquisition of Warner Bros.

Rule 65(c)'s bond requirement protects a party that has been "wrongfully enjoined or restrained." This language contemplates a party compelled by judicial authority to act against its will. Paramount is no such party. Paramount proposed, agreed to, and submitted the stipulation to the Court. Paramount cannot now claim that same stipulation is "wrongful." Nor can Paramount now recast a stipulation as an "injunction." It is not and never was intended to be an injunction. In fact, Paramount itself insisted that the parties' submission to the Court was not an injunction.

Paramount's reliance on *Las Vegas Sun v. Adelson*, 147 F.4th 1103 (9th Cir. 2025), is misplaced. Nothing in that decision equates a voluntary agreement to maintain the status quo on the one hand with a preliminary injunction imposed by a court after adjudication of the merits on the other. Allowing Paramount to materially revise its agreement would unfairly penalize Plaintiff States and the WGA, who justifiably relied on terms negotiated less than a month ago.

Stipulation or "injunction" notwithstanding, Paramount cannot show any change in circumstances justifying a material modification in terms. From the outset, Paramount knew the economics of its merger agreement. It strategically negotiated a "ticking fee" to "enhance" its bid to acquire Warner Bros. and defeat a rival offer. It agreed to an outside date of June 4, 2027, the

[1] "The WGA" refers collectively to Plaintiffs Writers Guild of America, West, Inc. and Writers Guild of America East, Inc.

purpose of which plainly was to accommodate an extended antitrust review. Paramount also knew when it negotiated and entered the stipulation that Plaintiff States were seeking a trial date in April 2027. Paramount, with that knowledge, nevertheless proposed an agreement not to close the acquisition until the Court rendered a decision or June 1, 2027.

Paramount's request for a bond should be denied. But at most, the Court should impose a nominal bond only. Rule 65(c) and Section 16 of the Clayton Act accord courts wide discretion to impose bonds or to waive them, particularly where, as here, the litigation enforces public interests. Granting Paramount's request would incentivize merging parties to negotiate extraordinary fees to inoculate themselves from state and private antitrust enforcement.

## BACKGROUND

The $1.88 billion cost that Paramount asks the public and a non-profit union to bear is the predictable result of its own business decisions. In February 2026, as consideration for its proposed merger with Warner Bros., Paramount agreed to pay Warner Bros. shareholders a ticking fee if the merger did not close by September 30, 2026. Decl. of Andrew Brandon-Gordon in Supp. of Mot. to Modify (ECF No. 204-2)[2] ¶¶ 2–4; *see* Paramount Skydance Corp., Current Report (Form 8-K), Ex. 99.1 (Feb. 10, 2026).

Paramount offered the ticking fee to win a bidding war against Netflix to acquire Warner Bros. *See* Paramount Skydance Corp., Proxy Statement (Schedule 14A), at 37 (Feb. 17, 2026) (Paramount telling Warner Bros. board that the ticking fee "enhance[d]" Paramount's bid, making it "undoubtedly superior to the Netflix transaction"). Paramount anticipated that antitrust review could last until at least June 2027. *See* Merger Agreement (ECF No. 204-3) § 6.14. In fact, Paramount specifically provided for an automatic extension of the agreement from March 4, 2027, until June 4, 2027, if antitrust review remained an outstanding closing condition. *Id.* § 8.1(b)(i).

On July 13, 2026, Plaintiff States filed suit to enjoin the merger as a violation of Section 7 of the Clayton Act. *See* Compl. (ECF No. 1) ¶¶ 14–15. Plaintiff States did so as *parens patriae* on behalf of and to protect their general economies and the health and welfare of their residents. *Id.*

[2] Unless otherwise noted, all docket entries refer to the docket in *California v. Paramount Skydance Corp.*, No. 4:26-cv-07116-AMO (N.D. Cal.).

¶ 15. Plaintiff States also sought a temporary restraining order to enjoin Defendants from closing the merger. *See* Mot. for TRO (ECF No. 27) at 2. The WGA filed suit on behalf of its thousands of members the following day, on July 14, 2026. *See* Compl. (ECF No. 1, Dkt. 4:26-cv-07212-AMO).

On July 20, 2026, following briefing and oral argument, the Court entered the temporary restraining order. Order Granting Mot. for TRO (ECF No. 141) ("TRO Order") at 9. The temporary restraining order enjoined the merger for fourteen days. *Id.* The Court declined to set a bond because "Plaintiffs have demonstrated that Plaintiff States bring suit to enforce important public interests." *Id.* The Court later extended that injunction to twenty-eight days. *See* Order re Scheduling (ECF No. 166) at 3. The Court also set a July 23, 2026, deadline for Plaintiff States to file a motion for a preliminary injunction. TRO Order at 9. The WGA moved for a preliminary injunction on July 22, 2026. *See* Mot. for Prelim. Inj. (ECF No. 58, Dkt. 4:26-cv-07212-AMO).

On the night Plaintiff States' preliminary injunction motion was due, Paramount's outside counsel called outside counsel for Plaintiff States. Decl. of Richard Parker in Supp. of Pls.' Opp'n to Mot. to Modify ¶ 1 ("Parker Decl."). Paramount's counsel proposed that Defendants would agree not to close their merger until the earlier of a decision on the merits or June 1, 2027. *Id.* ¶ 2. Paramount made this offer knowing that Plaintiff States were seeking a trial beginning in April 2027. *See, e.g.*, Joint Mot. for Status Conference re Pls.' Mot. for TRO & Prelim. Inj. (ECF No. 64) at 5 (Plaintiff States seeking an April 2027 trial date).

The next day, the parties negotiated a joint stipulation. During these discussions, Paramount's outside counsel adamantly denied that the stipulation was—in form or substance—an injunction. *See, e.g.*, Decl. of Julia May in Supp. of Pls.' Opp'n to Mot. to Modify ("May Decl.") Ex. 1, at 1 (Paramount counsel email of July 24, 2026, 11:57 a.m. ET: "[w]e do not believe a preliminary injunction should be entered as opposed to a stipulation not to close until the agreed upon dates"); May Decl. Ex. 2, at 1 (Paramount counsel email of July 24, 2026, 12:48 p.m. ET: "Defendants do not agree that the requirements for a PI have been met but as we are stipulating to not close until after a trial there is no longer any need to have a PI motion heard"); May Decl. Ex. 3, at 1 (Paramount counsel email of July 24, 2026, 2:18 p.m. ET: "we are saying Defendants agree

not to take any steps, rather than 'prohibited' because this is a stipulation").

The parties reached agreement on a stipulation not to close, which Paramount presented to the Court for signature. *See* Stipulation & [Proposed] Order Not to Close (ECF No. 169) at 2, 10. Paramount's counsel had raised the concept of a bond in the context of a temporary restraining order when Plaintiff States first filed suit, but at no point during negotiation of the stipulation did Paramount ever suggest that it was entitled to a bond. Parker Decl. ¶ 3. The Court signed the stipulation, as Defendants requested. *See* Stipulation & Order Not to Close (ECF No. 170) at 10. Paramount then publicly stated that its joint stipulation, which it now suggests was improvidently entered, was a "significant win." Joe Flint, *Paramount Agrees to Pause Its Warner Bros. Merger*, Wall St. J. (July 24, 2026), https://perma.cc/LMX5-52QG.

Twenty-four days later, Paramount performed an about-face. With no notice or effort to meet and confer, it filed the present motion for a bond. *See* Paramount's Mot. to Modify Stipulation & Order Not to Close to Require Bond (ECF No. 204) ("Mot. to Modify") at 1, 3. Contrary to its prior position, Paramount now claims the stipulation "qualifies as a preliminary injunction." *Id.* at 5. Paramount asks this Court to order the use of public and non-profit funds to protect Paramount from the ticking fee it offered to win its bidding war for Warner Bros. *See id.* at 16, 18–19. And despite presenting the stipulation to the Court for signature, Paramount advises the Court that it may have "improvidently granted" Defendants' stipulation not to close. *See id.* at 16, 19. The motion is meritless and should be denied.

## ARGUMENT

### I. Paramount Has Not Been "Wrongfully Enjoined or Restrained"

Nothing in law or fact entitles Paramount to a bond. Under Rule 65(c), a party is entitled to a bond only if it may have been "wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Similarly, the Clayton Act entitles a party to a bond only if an injunction may have been "improvidently granted." 15 U.S.C. § 26. Paramount cannot meet either requirement.

"Defendants agreed to enter an agreement with Plaintiffs not to close the transaction." Mot. to Modify at 4; *see* Stipulation & [Proposed] Order Not to Close at 2; *see also* Mot. to Modify at 6 (Court's "order arose from the agreement of the parties"). Having stipulated not to close,

Paramount cannot now claim the Court's endorsement of that agreement means it may have been "wrongfully enjoined or restrained." Paramount fails to cite any case in which a court has ever accepted such an argument.

Instead, courts reject such tactics. In *Audi of America, Inc. v. Bronsberg & Hughes Pontiac, Inc.*, the court drafted and entered an order "memorializing" an agreement between the parties. 481 F. Supp. 3d 370, 373 (M.D. Pa. 2020), *aff'd*, 2021 WL 5320848 (3d Cir. Nov. 16, 2021). There, as here, one of those parties later claimed that the same order it had previously presented to a court as an agreement was now a preliminary injunction. *Id.* at 373–74. The court flatly rejected that argument. *Id.* at 374–75.

Courts treat stipulations differently than contested orders. "[W]hatever the limitations Congress placed . . . on the power of federal courts to impose obligations . . . , these simply do not apply when the obligations are created by" the parties' stipulated agreement. *Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522–23 (1986). Fundamentally, this is because "it is the parties' agreement that serves as the source of the court's authority to enter" an agreed-upon order. *Id.* at 522.

Entry by a court—even drafting by a court—does not convert a joint stipulation into an injunction. *Cf. Audi of Am.*, 481 F. Supp. 3d at 373–75 (rejecting the argument that an order written by the court was a "preliminary injunction" in part because it "was the result of a bargained-for exchange"); *New Educ. Dev. Sys., Inc. v. Boitano*, 573 F. Supp. 594, 596 (N.D. Cal. 1983) (even where the parties entered an agreement "with the Court's encouragement, it d[id] not constitute an order of the Court. Rather, it [wa]s a private stipulation of the parties, and must be interpreted and enforced by reference to the rules that govern such stipulations"); *see also Marietta Mem'l Hosp. v. W. Va. Health Care Auth.*, 2016 WL 7363052, at *10 & n.6 (S.D. W. Va. Dec. 19, 2016) (declining to require a bond where the preliminary injunction "extend[ed] the effect of" an existing stipulation "to which both parties agreed").

In discussions with Plaintiffs, Paramount's counsel categorically denied that the stipulation was an injunction, let alone an order requiring a bond. Paramount's counsel "d[id] not believe a preliminary injunction should be entered as opposed to a stipulation not to close until the agreed

upon dates." May Decl. Ex. 1, at 1. Paramount "d[id] not agree that the requirements for a PI have been met" and simply was "stipulating not to close until after a trial" so "there is no longer any need to have a PI motion heard." May Decl. Ex. 2, at 1. Paramount stated that "Defendants agree not to take any steps, rather than 'prohibited' because this is a stipulation." May Decl. Ex. 3, at 1. In sum, Paramount vehemently denied its stipulation was an injunction and never demanded a bond. *See* Parker Decl. ¶ 3.

Paramount now claims the stipulation is an injunction for purposes of Rule 65 and Section 16, so a bond is needed. But none of the cases Paramount cites support that view. *Turtle Island Restoration Network v. United States Department of Commerce*, 672 F.3d 1160 (9th Cir. 2012), *Gon v. First State Insurance Co.*, 871 F.2d 863 (9th Cir. 1989), *United States v. Cal-Almond, Inc.*, 102 F.3d 999 (9th Cir. 1996), and *Las Vegas Sun v. Adelson*, 147 F.4th 1103 (9th Cir. 2025) all addressed whether an order qualified as an injunction amenable to appellate jurisdiction under 28 U.S.C. § 1292(a)(1). *See Turtle Island*, 672 F.3d at 1164–65 (considering "the appealability of an interlocutory order under 28 U.S.C. § 1292(a)(1)"); *Gon*, 871 F.2d at 865–66 (same); *Cal-Almond*, 102 F.3d at 1002–03 (same); *L.V. Sun*, 147 F.4th at 1112–13 (same). The cases do not address whether a stipulated order may "wrongfully" or "improvidently" enjoin a party. None so much as mentions a bond.

Paramount also cites cases involving judicial enforcement of stipulations through contempt—again, a factor relevant to interlocutory appealability under § 1292(a)(1). Mot. to Modify at 5–6 (discussing *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996)). Neither case addresses whether a stipulation qualifies as an injunction for purposes of imposing a bond.

In any event, Paramount has waived its right to argue that the stipulation is a preliminary injunction entitling it to a bond. Waiver, "the intentional relinquishment of a known right," *CBS, Inc. v. Merrick*, 716 F.2d 1292, 1295 (9th Cir. 1983), is found where a party engages in "'clear, decisive and unequivocal' conduct" that shows its purpose was to waive, *Move, Inc. v. Real Est. All., Ltd.*, 2016 WL 9080238, at *2 (C.D. Cal. Apr. 25, 2016) (quoting *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602–03 (9th Cir. 1995)). Paramount repeatedly said that the stipulation

was not an injunction. *See* May Decl. Exs. 1–3 (Paramount's counsel maintaining that the stipulation was not a preliminary injunction).

Paramount also is estopped from arguing that the stipulation is a preliminary injunction entitling it to a bond. Judicial estoppel prevents a party from taking a position in litigation, convincing a court to accept that position, and then taking a "clearly inconsistent . . . position" to derive an "unfair advantage." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779 (9th Cir. 2009); *see Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997) ("The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal."). Paramount submitted to this Court a "Stipulation and [Proposed] Order," which the Court entered as a "Stipulation and Order." Paramount now argues the "Stipulation" was in fact a preliminary injunction, for which the Court was obliged to impose a bond. And it does so to gain unfair advantage against Plaintiffs. The Court should reject Paramount's new, clearly inconsistent position. *See United Nat'l Ins. Co.*, 555 F.3d at 779; *Audi of Am.*, 481 F. Supp. 3d at 373–75.

Equitable estoppel—a similar doctrine, but "aimed at protecting litigants"—applies because of Paramount's inconsistent negotiations in its dealings with Plaintiff States. *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1097 (N.D. Cal. 2003). "Equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party." *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir 1970). A party may not, as here, take a position before its counterparty, intending and causing that counterparty to act, and later change its position. *See Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011); May Decl. Exs. 1–3; *see also Georgia-Pacific Co.*, 421 F.2d at 97 & n.6 (explaining that a "party's silence . . . will work an estoppel if, under the circumstances, he has a duty to speak").

## II. Paramount Fails to Demonstrate Any "Significant Change" Requiring Modification

Even assuming arguendo that the stipulation were an injunction, "[a] party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233

F.3d 1166, 1170 (9th Cir. 2000). Paramount fails to meet this burden. Paramount knew about the risks of the ticking fee and the possibility of a March 2027 trial when it agreed to the stipulation.

Where, as here, "it is clear that a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith . . . and should be relieved of" compliance. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 385 (1992). "A court should not ordinarily modify a decree . . . 'where a party relies upon events that actually were anticipated at the time it entered into a decree.'" *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (quoting *Rufo*, 502 U.S. at 385). The anticipated change need not be certain or even probable—merely possible. *See id.* at 980 (concluding defendants anticipated a change in circumstances where they knew the government "might take . . . action"); *United States v. Baroid Corp.*, 130 F. Supp. 2d 101, 105 (D.D.C. 2001) ("[A] party seeking a modification to an antitrust consent decree cannot rely on a change in circumstances that were anticipated, *or should have been anticipated*, at the time the consent decree was signed." (emphasis added)).

Paramount agreed to the ticking fee more than six months ago. *See* Paramount Skydance Corp., Current Report (Form 8-K), Ex. 99.1 (Feb. 10, 2026). Paramount knew it may have to pay the fee. It even warned its investors. *See* Paramount Skydance Corp., Quarterly Report (Form 10-Q), at 69 (May 4, 2026) ("If the WBD Merger is not completed by September 30, 2026, we have agreed in the WBD Merger Agreement to pay as merger consideration to WBD stockholders an additional amount in cash equal to $0.00277778 multiplied by the number of calendar days elapsed after September 30, 2026."). Paramount highlighted the ticking fee to Warner Bros. as an advantage of merging with Paramount rather than Netflix. *See* Paramount Skydance Corp., Proxy Statement (Schedule 14A), at 37 (Feb. 17, 2026) ("[O]ur Revised Offer compensates WBD shareholders for any unanticipated delay in closing through an incremental ticking fee.").

Paramount even chose to "accelerate" the effective date of the fee, so that it would accrue starting after September 30, rather after December 31, 2026. *Compare* Paramount Skydance Corp., Annual Report (Form 10-K), at I-1–2 (Feb. 25, 2026) ("On February 24, 2026, we submitted a revised proposal to the Warner Bros. Board that . . . accelerated the timing of the daily ticking

fee . . . to commence after September 30, 2026 . . . ."), *with* Paramount Skydance Corp., Current Report (Form 8-K), Ex. 99.1 (Feb. 10, 2026) (proposing an "enhanced . . . offer" including "a $0.25 per share 'ticking fee,' payable to WBD shareholders for each quarter its transaction has not closed beyond December 31, 2026").

Paramount also knew when it entered the stipulation that trial could be scheduled in March 2027. Nine days before the parties executed the stipulation, Plaintiff States told Paramount they were seeking a trial date *even later than* March 2027. *See* Joint Mot. for Status Conference re Pls.' Mot. for TRO & Prelim. Inj. at 5 ("Plaintiff States attempted to negotiate a trial date with Defendants" and "proposed that the trial of this action commence in April 2027."); *see also* Tr. of Proceedings, July 17, 2026 (ECF No. 138) 30:15-19 (repeating that Plaintiff States' "proposed date" in April fit "right in the middle" of relevant precedent). Under the parties' stipulation, it was clear that Defendants might not be able to consummate the merger before June 1, 2027. *See* Stipulation & [Proposed] Order Not to Close at 2. And Paramount's merger agreement includes an outside date that anticipates the need to extend closing until June 4, 2027, to permit antitrust review. Merger Agreement § 8.1(b)(i).

Paramount warned its investors that litigation could delay closing. *See* Paramount Skydance Corp., Quarterly Report (Form 10-Q), at 70 (May 4, 2026) ("[F]ederal, state, and/or foreign governmental authorities could initiate one or more enforcement actions challenging the WBD Merger. Any such actions could delay or prevent the Closing . . . ."); *id.* at 65 ("[L]itigation relating to the WBD Merger could prevent or delay the closing of the WBD Merger . . . ."); *id.* at 69 ("If the conditions to completion of the WBD Merger are not satisfied or waived, we may be unable to complete the WBD Merger in the timeframe . . . currently anticipated . . . .").

*Las Vegas Sun* does not help Paramount evade its burden to demonstrate a "significant change." In that case, the defendants sought to dissolve the stipulated injunction after completing "several years of discovery" and "reasonably wait[ing]" to file their motion. 147 F.4th at 1111–12, 1113 n.2. The defendants had "explicitly" and specifically reserved their right to seek "judicial termination" in the very same stipulation they sought to dissolve. *Id.* at 1113 n.2. "*Under th[o]se circumstances*," the Ninth Circuit held that no "*further* showing of a change" was "required."

*Id.* (emphasis added). Finally, the court agreed that the basis for the dissolution motion was correct because the underlying contract was invalid. *See id.* at 1121–22.

None of those circumstances exists here. Paramount waited twenty-four days to ask this Court to rewrite the stipulation it had just signed. Paramount conducted no intervening discovery. Paramount seeks not to dissolve the stipulation, but to expand it to include new, onerous terms that were never agreed upon by Plaintiffs or ordered by the Court. And Paramount's general reservation of rights makes no specific mention of modifying the same agreement in which it appears. No court in this case has made a final merits determination on the lawfulness of Paramount's proposed merger. Paramount must demonstrate a significant change, and it cannot.

Permitting Paramount to enter the stipulation and then rewrite it almost immediately would allow it to unfairly renege on its commitments without the required showing. "Allowing parties easily to set aside or modify stipulations would . . . wast[e] judicial resources and undermin[e] future confidence in such agreements." *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998). Paramount has failed to show any change in circumstances that would justify its attempt now to rewrite the terms of the stipulation it submitted to the Court.

**III. Only a Nominal Bond Is Appropriate At Most**

"Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgenson v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (emphasis in original); *see, e.g.*, *Nat'l Urb. League v. Ross*, 484 F. Supp. 3d 802, 808 (N.D. Cal. 2020) (exercising discretion to conclude "no security [wa]s necessary").

This litigation implicates "important public interests." TRO Order at 9; *see id.* at 7 ("[A]ppropriate enforcement of the antitrust laws for the protection of competition is 'vital to the public interest.'" (quoting *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016))). No bond is required in these circumstances. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Crowley v. Loc. No. 82, Furniture & Piano Moving*, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984) ("[N]o bond is required in suits to enforce important federal rights or 'public interests,'" including those arising from "federal health and welfare

statutes."); *see, e.g.*, *Washington v. U.S. Dep't of Educ.*, 807 F. Supp. 3d 1275, 1293 (W.D. Wash. 2025) (waiving bond requirement where states sought to keep mental health professionals in schools); *Cal. Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 2d 1129, 1160 (E.D. Cal. 2011) (waiving bond requirement where Medicaid providers "br[ought] suit to enforce important federal and public interests").

Where courts do not waive bonds in litigation implicating public interests, only nominal bonds are imposed. *See, e.g.*, *In re Nexstar-TEGNA Merger Litig.*, 2026 WL 1049295, at *28 (E.D. Cal. Apr. 17, 2026) (setting nominal $10,000 bond in merger challenge brought by states under Section 7 of Clayton Act); *Am. Fed'n of State Cnty. & Mun. Emps. v. U.S. Off. of Mgmt. & Budget*, 813 F. Supp. 3d 944, 968 (N.D. Cal. 2025) (imposing "nominal bond of $10 total (not per plaintiff)" because of "the public interest at stake in this dispute" over federal employee layoffs).

Paramount's citations to bonds imposed in patent infringement cases between private pharmaceutical and technology companies are irrelevant. *See* Mot. to Modify at 19; *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1372, 1384-85 (Fed. Cir. 2006) (affirming imposition of injunction bond in private patent infringement case); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1368, 1372 (Fed. Cir. 2005) (same); *Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, 834 F. Supp. 2d 29, 30, 31 (D. Mass. 2011) (imposing injunction bond in private patent infringement case); *Apple, Inc. v. Samsung Elecs. Co.*, 877 F. Supp. 2d 838, 854 (N.D. Cal. 2012), *rev'd*, 695 F.3d 1370 (Fed. Cir.) (same). These are not cases where, as here, the plaintiffs advanced "important public interests." TRO Order at 9; *Boardman*, 822 F.3d at 1024.

Paramount also says the nominal bond in *Nexstar-TEGNA* is inapt because the defendants had already merged and did not "face extraordinary losses." Mot. to Modify at 20. That is incorrect. The defendants sought a $150 million bond. *See In re Nexstar-TEGNA*, 2026 WL 1049295, at *28. They claimed "significant operational, financial, and competitive harm." Defs.' Opp'n to Pls.' Mots. for Prelim. Injunction at 18, *In re Nexstar-TEGNA Merger Litig.*, No. 2:26-cv-00976 (E.D. Cal. Apr. 1, 2026), Dkt. No. 76. The court imposed a nominal bond because, as here, the case promoted the "public interests." *See In re Nexstar-TEGNA*, 2026 WL 1049295, at *28.

Nothing in Section 16 of the Clayton Act compels a different result than Rule 65(c). Section 16 "is not a mandate to require a bond in every anti-trust case in which an injunction is issued. It also leaves wide discretion with the trial judge." *Cont'l Oil Co. v. Frontier Refin. Co.*, 338 F.2d 780, 782–83 (10th Cir. 1964). Like Rule 65(c), Section 16 calls for a court to impose a "proper bond" to protect against "an injunction improvidently granted." 15 U.S.C. § 26. A court may conclude that a "proper" bond is no bond, or a nominal one. *See, e.g.*, *Washington v. Texaco Refin. & Mktg., Inc.*, 1991 WL 47081, at *1, *3 (W.D. Wash. Jan. 11, 1991) (imposing no bond where State sued as *parens patriae* under Section 16); *In re Nexstar-TEGNA*, 2026 WL 1049295, at *28 (collecting cases and explaining that "where plaintiffs 'bring suit to enforce important federal and public interests,' like Plaintiffs here, courts commonly waive the bond requirement" (quoting *Cal. Hosp. Ass'n*, 776 F. Supp. 2d at 1160)).

This interpretation comports with statutory history. The Ninth Circuit has explained that "Rule 65(c) borrows substantially the same language used in Section 382 of the Judicial Code of 1926, . . . which in turn employed the language of" what was then codified as "[S]ection 18 of the Clayton Act." *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1168 n.8 (9th Cir. 1976). That section, like the current Section 16, permitted injunctions upon issuance of "proper" bonds. *Id.* (quoting Section 18 of the Clayton Act, ch. 323, 38 Stat. 738 (1914)). Courts have interpreted "proper" the same way in Section 16 and Rule 65(c). *See Cont'l Oil Co.*, 338 F.2d at 782–83; *Texaco Refin.*, 1991 WL 47081, at *3; *In re Nexstar-TEGNA*, 2026 WL 1049295, at *28.

To require more than a nominal bond would incentivize merging parties to conveniently craft financial commitments designed to burden state or private antitrust enforcement. *See Arevalo v. Trump*, 785 F. Supp. 3d 644, 668 (C.D. Cal. 2025) ("[A] district court 'has discretion to dispense with the security requirement' altogether if 'requiring security would effectively deny access to judicial review,' and courts 'routinely impose either no bond or a minimal bond' in cases involving public interests." (quoting *City of S. Pasadena v. Slater*, 56 F. Supp. 2d 1106, 1148 (C.D. Cal. 1999))); *see California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990) (recognizing the independent right of state attorneys general and private plaintiffs "to serve as well the high purpose of enforcing the antitrust laws" by complementing federal enforcement). Such a holding would gut the same

statute Defendants invoke as the purported basis of their motion. *See* 15 U.S.C. § 26 (entitling "any person . . . to sue for and have injunctive relief" under the Clayton Act).

**CONCLUSION**

For the foregoing reasons, the Court should deny Paramount's motion and decline to modify the stipulation to require a bond. In the alternative, if the Court grants Paramount's motion, it should impose a nominal bond of $10,000.

Dated: August 31, 2026

Respectfully submitted,

FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

*/s/ Ashley Kaplan*

PAULA L. BLIZZARD (SBN 207920)
Senior Assistant Attorney General
NATALIE S. MANZO (SBN 155655)
BRENT K. NAKAMURA (SBN 283572)
Supervising Deputy Attorneys General
WINSTON H. CHEN (SBN 166959)
MATTHEW E. DELGADO (SBN 306999)
NICOLE S. GORDON (SBN 224138)
JENNIFER K. HANE (SBN 275729)
ASHLEY KAPLAN (SBN 293443)
CASEY KOVARIK (SBN 348032)
DIVYA B. RAO (SBN 292853)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6000
Fax: (916) 731-3637
Email: Ashley.Kaplan@doj.ca.gov

RICHARD PARKER (SBN 62356)
JAMES WEINGARTEN (*pro hac vice*)
ADAM DI VINCENZO (*pro hac vice*)
GRANT BERMANN (*pro hac vice*)
ANASTASIA PASTAN (*pro hac vice*)
ALEXIS BROWN-REILLY (*pro hac vice*)
JULIA M. MAY (*pro hac vice*)
NATALIE NOGUEIRA (*pro hac vice*)
ALLISON CHESKY (*pro hac vice*)
MILBANK LLP
1101 New York Ave. NW
Washington, DC 20005
Telephone: (202) 835-7525
Email: jweingarten@milbank.com

KELLY D. GARCIA (*pro hac vice*)
EMME TYLER (SBN 341797)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5871
Email: kgarcia@milbank.com

*Attorneys for Plaintiff State of California*

FOR PLAINTIFF STATE OF ARIZONA:

KRISTIN K. MAYES
Attorney General of Arizona

/s/ Allison Weber

ROBERT A. BERNHEIM (*pro hac vice*)
Unit Chief Counsel
SARAH PELTON (*pro hac vice*)
ALLISON WEBER (*pro hac vice*)
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: robert.bernheim@azag.gov
sarah.pelton@azag.gov
allison.weber@azag.gov

*Attorneys for Plaintiff State of Arizona*

FOR PLAINTIFF STATE OF COLORADO:

PHILIP J. WEISER
Attorney General of Colorado

/s/ Bryn A. Williams

BRYN A. WILLIAMS (SBN 301699)
First Assistant Attorney General
AMY BOWLES (*pro hac vice*)
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Bryn.Williams@coag.gov
Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF CONNECTICUT:

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS (*pro hac vice* forthcoming)
Deputy Associate Attorney General

*/s/ Julián A. Quiñones Reyes*

JULIÁN A. QUIÑONES REYES (*pro hac vice*)
FRANKLIN KANIN (*pro hac vice*)
Assistant Attorneys General
Office of the Connecticut Attorney General
165 Capitol Avenue
Hartford, CT 06106
Telephone: (860) 808-5030
Email: Julian.Quinones@ct.gov
Franklin.Kanin@ct.gov

*Attorneys for Plaintiff State of Connecticut*

FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

*/s/ Anthony W. Mariano*

ANTHONY W. MARIANO (*pro hac vice*)
Chief, Antitrust Division
WILLIAM L. TWOMEY (*pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (781) 835-7990
Email: Anthony.Mariano@mass.gov
William.Twomey@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF MINNESOTA:

KEITH ELLISON
Attorney General of Minnesota

*/s/ Jon M. Woodruff*

JAMES W. CANADAY (SBN 368825)
Deputy Attorney General
ELIZABETH ODETTE (*pro hac vice*)
Antitrust Division Manager
Assistant Attorney General
JON M. WOODRUFF (*pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101-2130
Telephone: (651) 300-7425
Fax: (651) 296-9663
Email: Jon.Woodruff@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General of Nevada

ERNEST D. FIGUEROA
Consumer Advocate

*/s/ Samantha B. Feeley*

SAMANTHA B. FEELEY (NV Bar No. 14034) (*pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100
Email: sfeeley@ag.nv.gov

*Attorney for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NEW JERSEY:

JENNIFER DAVENPORT
Attorney General of New Jersey

/s/ Ana Atta-Alla

ANA ATTA-ALLA (*pro hac vice*)
Deputy Attorney General
State of New Jersey
Office of the Attorney General
Division of Law
124 Halsey Street – 5th Floor
Newark, NJ 07102
Telephone: (973) 648-6835
Email: Ana.Atta-Alla@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*

FOR PLAINTIFF STATE OF NEW MEXICO:

RAÚL TORREZ
Attorney General of New Mexico

/s/ Amanda Butler

AMANDA BUTLER (*pro hac vice*)
Senior Counsel
KALISTA M. WILSON (*pro hac vice*)
Assistant Attorney General
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4060
Fax: (505) 318-1050
Email: KWilson@nmdoj.gov

*Attorneys for Plaintiff State of New Mexico*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

/s/ Elinor R. Hoffmann

ELINOR R. HOFFMANN (*pro hac vice*)
Chief, Antitrust Bureau
AMY MCFARLANE (*pro hac vice*)
Deputy Chief, Antitrust Bureau
PRATIK AGARWAL (*pro hac vice*)
MORGAN FEDER (*pro hac vice*)
C. WILLIAM MARGRABE (*pro hac vice*)
Assistant Attorneys General
JAYA MANTOVANI (*pro hac vice*)
Attorney General Fellow
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for Plaintiff State of New York*

FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

/s/ Ian Van Loh

TIMOTHY D. SMITH (*pro hac vice*)
Attorney-in-Charge
IAN VAN LOH (SBN 280254)
ALEX DELORENZO (*pro hac vice*)
Senior Assistant Attorneys General
Economic Justice Section
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
Telephone: (503) 798-3297
Telephone: (971) 239-7457
Telephone: (503) 428-9482
Email: tim.smith@doj.oregon.gov
Email: ian.vanloh@doj.oregon.gov
Email: alex.delorenzo@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

FOR PLAINTIFF STATE OF WASHINGTON:

NICHOLAS W. BROWN
Attorney General of Washington

/s/ Christina M. Black

JONATHAN A. MARK (*pro hac vice*)
Division Chief, Antitrust Division
CHRISTINA M. BLACK (SBN 300081)
BROOKE H. LOVROVICH (*pro hac vice*)
Assistant Attorneys General
800 Fifth Avenue, Suite 200
Seattle, WA 98104-3188
Telephone: (206) 464-7744
Fax: (206) 464-6451
Email: Jonathan.Mark@atg.wa.gov
Christina.Black@atg.wa.gov
Brooke.Lovrovich@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

FOR PLAINTIFFS THE WRITERS GUILD OF AMERICA, WEST, INC., AND THE WRITERS GUILD OF AMERICA EAST, INC.:

/s/ *Kellie Lerner*

KELLIE LERNER (*pro hac vice*)
ELLISON A. SNIDER (*pro hac vice*)
BENJAMIN B. ALLEN (*pro hac vice*)
**SHINDER CANTOR LERNER LLP**
14 Penn Plaza, Suite 1900
New York, NY 10122
Telephone: (646) 960-8601
kellie@scl-llp.com
esnider@scl-llp.com
ballen@scl-llp.com

J. WYATT FORE (*pro hac vice*)
**SHINDER CANTOR LERNER LLP**
600 14th Street, NW
Washington, D.C. 20005
Telephone: (646) 960-8632
wyatt@scl-llp.com

CHARLES J. LADUCA (*pro hac vice*)
N. SLADE BOND II (*pro hac vice*)
**CUNEO GILBERT**
**FLANNERY & LADUCA, LLP**
2445 M Street, NW Suite 740
Washington, D.C. 20037
Telephone: (202) 789-3960
sbond@cuneolaw.com

SARAH ROONEY (*pro hac vice*)
**CUNEO GILBERT**
**FLANNERY & LADUCA, LLP**
8705 Colesville Road
B. 133
Silver Spring, MD 20910
Telephone: (301) 518-7428
srooney@cuneolaw.com

MICHAEL J. FLANNERY (SBN: 196266)
**CUNEO GILBERT**
**FLANNERY & LADUCA, LLP**
Two CityPlace Drive
St. Louis, MO 63141
Telephone: (314) 226-1015
mflannery@cuneolaw.com

MATTHEW J. PLATKIN (*pro hac vice*)
AARON HAIER (*pro hac vice*)
**PLATKIN LLP**
413 Washington Avenue, Unit 174
Telephone: (973) 561-1951
mplatkin@platkinllp.com
ahaier@platkinllp.com

DAVID C. BROWNSTEIN (SBN: 141929)
DAVID M. GOLDSTEIN (SBN: 142334)
**FARMER BROWNSTEIN JAEGER GOLDSTEIN SIEGEL & SHEPARD LLP**
155 Montgomery Street, Suite 301 San Francisco, CA 94104
Telephone: (415) 962-2873
dbrownstein@fbjgss.com
dgoldstein@fbjgss.com

*Attorneys for Plaintiffs the Writers Guild of America, West, Inc., and the Writers Guild of America East, Inc.*

**FILER'S ATTESTATION**

I, Ashley Kaplan, am the ECF User whose ID and password are being used to file this Opposition to Paramount's Motion to Modify the Stipulation and Order Not to Close to Require Bond. In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

By: *<u>/s/ Ashley Kaplan</u>*
Ashley Kaplan