Marguerite Sullivan (*pro hac vice*)
Anna Rathbun (SBN 273787)
Christopher J. Brown (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
marguerite.sullivan@lw.com
anna.rathbun@lw.com
christopher.brown@lw.com

Danielle R. Sassoon (*pro hac vice*)
Philip Hammersley (*pro hac vice*)
**CLEMENT & MURPHY, PLLC**
706 Duke Street
Alexandria, VA 22314
Telephone: (202) 742-8900
danielle.sassoon@clementmurphy.com
philip.hammersley@clementmurphy.com

[additional counsel on signature page]
*Attorneys for Defendant Paramount Skydance Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

THE STATE OF CALIFORNIA, et al.,

Plaintiffs,

v.

PARAMOUNT SKYDANCE CORPORATION, et al.,

Defendants.

---

WRITERS GUILD OF AMERICA, WEST, INC., et al.,

Plaintiffs,

v.

PARAMOUNT SKYDANCE CORPORATION, et al.,

Defendants.

Case No. 4:26-cv-07116-AMO
Case No. 4:26-cv-07212-AMO

**REPLY IN SUPPORT OF PARAMOUNT'S MOTION TO MODIFY THE STIPULATION AND ORDER NOT TO CLOSE TO REQUIRE BOND**

**TABLE OF CONTENTS**


TABLE OF CONTENTS ..... I

TABLE OF AUTHORITIES ..... II

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. This Court Has Authority To Require Plaintiffs To Post Bond ..... 2

A. The No-Close Order Is an Injunction ..... 2

B. The Court Has Authority to Modify the Injunction to Require A Bond ..... 9

II. Paramount Is Legally Entitled To A Bond ..... 11

A. The Clayton Act Makes Bond A Condition Precedent To An Injunction ..... 11

B. Rule 65(c) Independently Requires Security ..... 12

III. The Court Should Set Bond At $1.88 Billion ..... 13

A. Bond Exists to Provide a Make-Whole Remedy for an Erroneous Injunction ..... 13

B. The Make-Whole Remedy is, at Minimum, $1.88 Billion ..... 14

# TABLE OF AUTHORITIES

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002) .... 10

*Am. Dairy Queen Corp. v. UAM, LLC*,
2024 WL 4876151 (W.D. Tex. Nov. 22, 2024) .... 3

*Arizona v. Tohono O'odham Nation*,
818 F.3d 549 (9th Cir. 2016) .... 7

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*,
481 F.Supp.3d 370 (M.D. Pa. 2020) .... 3

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
910 F.2d 1049 (2d Cir. 1990) .... 6

*Buddy Sys. v. Exer-Genie*,
545 F.2d 1164 (9th Cir. 1976) .... 14

*Burlington Indus., Inc. v. Edelman*,
666 F.Supp. 799 (M.D.N.C. 1987) .... 15

*California v. Am. Stores Co.*,
492 U.S. 1301 (1989) .... 14

*City of Los Angeles v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) .... 10

*Conn. Gen. Life Ins. Co. v. New Images*,
321 F.3d 878 (9th Cir. 2003) .... 6

*Cont'l Oil Co. v. Frontier Refin. Co.*,
338 F.2d 780 (10th Cir. 1964) .... 11

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) .... 12

*Est. of Amaro v. City of Oakland*,
653 F.3d 808 (9th Cir. 2011) .... 8, 9

*FDA v. R.J. Reynolds Vapor Co.*,
606 U.S. 226 (2025) .... 4

*First W. Capital Mgmt. Co. v. Malamed*,
874 F.3d 1136 (10th Cir. 2017) .... 8

*Gates v. Shinn*,
98 F.3d 463 (9th Cir. 1996) .... 2, 3

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*,
415 U.S. 423 (1974) .... 14

*Grumman Corp. v. LTV Corp.*,
527 F.Supp. 86 (E.D.N.Y. 1981) .......... 15

*H.E. Fletcher Co. v. Rock of Ages Corp.*,
326 F.2d 13 (2d Cir. 1963) .......... 5, 12

*Hoxworth v. Blinder, Robinson & Co.*,
903 F.2d 186 (3d Cir. 1990) .......... 15

*In re Comm. Mortg. Co.*,
397 F.App'x 300 (9th Cir. 2010) .......... 11

*In re Crim. Contempt Proc. Against Gerald Crawford*,
329 F.3d 131 (2d Cir. 2003) .......... 4

*In re Microsoft Corp. Antitrust Litig.*,
240 F.Supp.2d 460 (D. Md. 2003) .......... 15

*In re Nexstar-TEGNA Merger Litig.*,
2026 WL 1049295 (E.D. Cal. Apr. 17, 2026) .......... 14

*In re Xerox Corp. Consol. S'holder Litig.*,
76 N.Y.S.3d 759 (N.Y. Sup. Ct. 2018) .......... 15

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*,
389 U.S. 64 (1967) .......... 3

*Las Vegas Sun, Inc. v. Adelson*,
147 F.4th 1103 (9th Cir. 2025) .......... 4, 9

*Life Flight Net., LLC v. Metro Aviation, Inc.*,
2017 WL 192706 (D. Or. Jan. 17, 2017) .......... 3

*Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986) .......... 4

*Marietta Memorial Hosp. v. W.V. Health Care Auth.*,
2016 WL 7363052 (S.D. W.Va. Dec. 19, 2016) .......... 4

*Masayesva v. Hale*,
118 F.3d 1371 (9th Cir. 1997) .......... 8

*Namisnak v. Uber Techs., Inc.*,
444 F.Supp.3d 1136 (N.D. Cal. 2020) .......... 12

*Nat'l Collegiate Athletics Ass'n v. Governor of N.J.*,
939 F.3d 597 (3d Cir. 2019) .......... 6

*New Educ. Dev. Sys., Inc. v. Boitano*,
573 F.Supp. 594 (N.D. Cal. 1983) .......... 4

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
16 F.3d 1032 (9th Cir. 1994) .......... 5

*Pargas, Inc. v. Empire Gas Corp.*,
423 F.Supp. 199 (D. Md. 1976) ........ 15

*Persistence Software, Inc. v. Object People, Inc.*,
200 F.R.D. 626 (N.D. Cal. 2001) ........ 10

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
204 F.3d 867 (9th Cir. 2000) ........ 10

*Randle v. Crawford*,
604 F.3d 1047 (9th Cir. 2010) ........ 8

*RLM Commc'ns, Inc. v. Tuschen*,
2014 WL 1921087 (E.D.N.C. May 14, 2014) ........ 5

*Robinson v. Benbow*,
298 F. 561 (4th Cir. 1924) ........ 11

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ........ 10

*Sharp v. Weston*,
233 F.3d 1166 (9th Cir. 2000) ........ 10

*Sionix Corp. v. Moorehead*,
299 F.Supp.2d 1082 (S.D. Cal. 2003) ........ 5

*Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc.*,
335 F.3d 235 (3d Cir. 2003) ........ 6

*Sullivan v. DB Invest., Inc.*,
667 F.3d 273 (3d Cir. 2011) ........ 3

*ThermoLife Int'l LLC v. BPI Sports LLC*,
2021 WL 661981 (D. Ariz. Feb. 19, 2021) ........ 8

*Turtle Island Restoration Network v. U.S. Dep't of Com.*,
672 F.3d 1160 (9th Cir. 2012) ........ 2

*United Nat'l Ins. v. Spectrum Worldwide*,
555 F.3d 772 (9th Cir. 2009) ........ 7

*United States v. Asarco Inc.*,
430 F.3d 972 (9th Cir. 2005) ........ 10

*United States v. Baroid Corp.*,
130 F.Supp.2d 101 (D.D.C. 2001) ........ 10

*United States v. Swift & Co.*,
286 U.S. 106 (1932) ........ 3

*W.R. Grace & Co. v. Loc. Union 759*,
461 U.S. 757 (1983) ........ 11

*Westar Energy, Inc. v. Lake*, 552 F.3d 1215 (10th Cir. 2009) .......... 4

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......... 13

*Wudi Indus. (Shanghai) Co. v. Wong*, 70 F.4th 183 (4th Cir. 2023) .......... 5

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184 (9th Cir. 2000) .......... 8

**Statutes**

15 U.S.C. §26 .......... 12, 13

28 U.S.C. §1292 .......... 4, 5

28 U.S.C. §2072(b) .......... 13

Clayton Act of 1914, ch. 323, 38 Stat. 730 .......... 14

Fed. R. Civ. P. 65(c) .......... 5, 8, 12, 13, 14

**Other Authorities**

NBCLA, *NewsConference: California Attorney General Rob Bonta* (YouTube, Sept. 1, 2026), https://tinyurl.com/bdea9k9c .......... 2

## INTRODUCTION

The states try to recast Paramount Skydance Corporation's motion for bond as an effort to "extract $1.88 billion … to underwrite the costs of … private contracts it entered willfully[.]" Dkt.213 ("Opp.") at 1. Nothing could be further from the truth. Paramount entered an agreement to acquire Warner Bros. Discovery in February 2026, with months of lead time before it would start to incur $6.97 million in daily ticking fees. Paramount held up its end of the bargain. It has received the go-ahead from the United States and regulatory bodies representing 67 other jurisdictions—with approval from antitrust authorities globally as well as from foreign direct investment authorities and media regulation bodies—and is prepared to close the transaction well before any ticking fees would be triggered. But at the eleventh hour, after dragging their investigations out for many months without providing feedback on any areas of competitive concern, and just days before final regulatory approvals from the European Commission were secured, plaintiff states filed suit seeking to stymie the transaction while immunizing themselves from economic accountability if Paramount prevails. This lawsuit alone acts as the but-for cause of at least $1.88 billion in irreversible damages to Hollywood's longest-operating movie studio—a serious injury at a time when studios are already being squeezed by streaming megaliths like Netflix and Amazon and other big tech companies who have entered the competition. The Clayton Act and the Federal Rules oblige the states to bear the financial risk created by this delay.

Paramount has no "regret" and remains confident in the legality of the transaction. *Contra* Opp.1. That is why Paramount seeks efficient review of the transaction's merits and agreed to enter the No-Close Order (the "Order") to facilitate a prompt trial—an order that California's Attorney General in eight separate television appearances has rightly described as "the equivalent of a preliminary injunction." Now, Paramount simply asks that Plaintiffs honor what the Clayton Act requires: A bond that will compensate Paramount for the damage it will suffer if the injunction proves improvidently granted, *i.e.*, if Paramount ultimately prevails in the litigation and was therefore wrongly prevented from consummating the merger now, as it is prepared to do. With little to say about the Clayton Act's mandatory bond requirement, the states respond with a grab

bag of meritless arguments about waiver, estoppel, and inapposite caselaw. Those arguments cannot withstand even minimal scrutiny. The Court should grant the motion.

## ARGUMENT

### I. This Court Has Authority To Require Plaintiffs To Post Bond.

#### A. The No-Close Order Is an Injunction.

The states cannot credibly deny that the Order enjoins Paramount from consummating its acquisition of Warner Bros. The Ninth Circuit defines an "injunction" as a "'decree' that 'commands or prohibits conduct.'" Mot.5 (quoting *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996)). The Order does precisely that: It forbids Paramount from closing the transaction, on pain of contempt, until the Court has an opportunity to review the antitrust claims. Mot.5-6. The states neither dispute that the judicially entered order prohibits the merger from closing nor deny that Paramount could be held in contempt for violating it. Those features make the Order an injunction under settled Ninth Circuit precedent, regardless of the label affixed to that document, *see* Mot.5 (quoting *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1165 (9th Cir. 2012)), or the fact that it was entered by the consent of the parties, *see, e.g.*, *Gates*, 98 F.3d at 467-68 (treating a consent decree as an "injunction" under Rule 65 even though it was entered "by the court pursuant to an agreement of the parties"). Indeed, Attorney General Bonta has repeatedly touted it as "the equivalent of a preliminary injunction" in the numerous television appearances he has made to celebrate his role in halting a landmark global merger that antitrust regulators around the world have unanimously cleared. *See, e.g.*, NBCLA, *NewsConference: California Attorney General Rob Bonta*, at 3:00-3:15 (YouTube, Sept. 1, 2026), https://tinyurl.com/bdea9k9c. The states' attempt to obfuscate that plain reality is meritless.

The states offer three responses. First, they insist that the Order is not an injunction within the meaning of Rule 65 or the Clayton Act and therefore is ineligible for a bond. Opp.4-6. Second, the states claim that the Order was not "wrongfully" or "improvidently" issued—and for that reason cannot support a bond—because Paramount consented to its entry. Opp.4-5. Third, they

claim that Paramount waived any argument to the contrary or should be estopped from making one. Opp.6-7. Those arguments fail at every turn as they contradict settled law.

1. The states argue that the Order cannot be an injunction, and is therefore ineligible for bond, because it arose from a joint stipulation by the parties rather than a contested proceeding. *See* Opp.4-5. But the premise of that argument is patently incorrect. The Ninth Circuit has held that a consent decree entered by an agreement of the parties was nevertheless an "injunction" under Rule 65. *Gates*, 98 F.3d at 467-68. And the rule is no different for the Clayton Act. *See Sullivan v. DB Invest., Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc) (treating a court-approved stipulation not to engage in certain conduct as an injunction under the Clayton Act). Indeed, the Supreme Court has affirmed that a court-approved order that commands or forbids conduct (as here) and is punishable by contempt (as here) qualifies as an injunction regardless "whether the decree has been entered after litigation or by consent." *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (explaining that consent decrees are still injunctions subject to modification); *see Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 75-76 (1967) (defining an injunction under Rule 65). Consistent with those straightforward principles, district courts in the Ninth Circuit and across the country have required bond even in cases where the preliminary injunction was entered by consent. *See, e.g.*, *Life Flight Net., LLC v. Metro Aviation, Inc.*, 2017 WL 192706, at *1-2 (D. Or. Jan. 17, 2017); *Am. Dairy Queen Corp. v. UAM, LLC*, 2024 WL 4876151, at *1-2 (W.D. Tex. Nov. 22, 2024).

None of the cases cited by the states (Opp.5) supports the proposition that stipulated orders cannot qualify as injunctions. To start, *Audi of America, Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 481 F.Supp.3d 370 (M.D. Pa. 2020), is of no help to Plaintiffs. That case involved a judicially approved settlement agreement that the defendant "**SHALL** forever quit its interest" in certain property. *Id.* at 373 (emphasis in original). There, the parties never disputed that the agreed-upon order was an injunction—they merely disputed whether it was a *preliminary* injunction or a *final* injunction in the form of a consent decree, with the court concluding the latter. *See id.* at 373-74. The Supreme Court's decision in *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478

U.S. 501, 522-23 (1986), is even more far afield. That case only addressed whether a particular consent decree that settled a case violated Title VII. *Id.* at 519-24. As for this District's decision in *New Education Development Systems, Inc. v. Boitano*, 573 F.Supp. 594 (N.D. Cal. 1983), that dispute involved a "private stipulation" rather than "an order of the Court." *Id.* at 596. The Order here, by contrast, contains a *court-ordered* instruction not to close the proposed transaction. Finally, the decision in *Marietta Memorial Hospital v. West Virginia Health Care Authority*, 2016 WL 7363052, at *10 n.6 (S.D. W.Va. Dec. 19, 2016), treated an agreed-upon order as a de facto injunction, *see id.* (explaining that the preliminary injunction merely "extends the effect of [an] order to which both parties agreed")—yet again proving Paramount's point. None of these cases gets around *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103 (9th Cir. 2025), which held that a stipulated order like this one is effectively a preliminary injunction. *See* Mot.6-7.

The states' cursory response to *Las Vegas Sun* and the accompanying Ninth Circuit precedent that Paramount cites, *see* Mot.5-7, is entirely unpersuasive. The states dismiss those cases as irrelevant because they "address[] whether an order qualifie[s] as an injunction amenable to appellate jurisdiction under 28 U.S.C. §1292(a)(1)." Opp.6.[1] But "injunction" is a longstanding legal term of art that carries the same meaning, whether for purposes of 28 U.S.C. §1292 or under Rule 65 and the Clayton Act. *Cf. FDA v. R.J. Reynolds Vapor Co.*, 606 U.S. 226, 232-35 (2025). And *Las Vegas Sun* concluded that appellate jurisdiction was proper precisely because the order *below* denied what, in effect, was a motion to dissolve a preliminary injunction. 147 F.4th at 1112-13. Sensibly—and in contrast to the states' unreasoned attempt to give "injunction" varied meanings—courts have rejected as having "no merit" the idea that an order can qualify as an injunction for purposes of §1292 yet not be an injunction under Rule 65. *In re Criminal Contempt Proceedings Against Gerald Crawford*, 329 F.3d 131, 136-37 (2d Cir. 2003); *see also Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222-24, 1230 (10th Cir. 2009) (holding that an order was an "injunction" under §1292, and therefore "must comply" with Rule 65); *Wudi Indus. (Shanghai)*

---

[1] The states also distinguish those cases on the basis that they do not discuss bonds or otherwise explain how a stipulated order could "'wrongfully' or 'improvidently' enjoin a party." Opp.6. That is a red herring. Paramount relies on those cases to establish that the Order is an injunction within the meaning of Rule 65 and the Clayton Act. *See* Mot.5-7.

*Co. v. Wong*, 70 F.4th 183, 189-91 (4th Cir. 2023) (conclusion that an order was a preliminary injunction under Rule 65 found "strong support" from caselaw interpreting §1292).

2. As an alternative, the states insist that Paramount cannot establish that the Order was entered "wrongfully" or "improvidently"—as the law requires to *collect* on a bond—because Paramount entered it voluntarily. Opp.4-5. That argument misunderstands the Clayton Act and Rule 65, conflicts with binding precedent, and raises issues that cannot be decided now.

Plaintiffs' argument that an injunction cannot be wrongful where it was entered by consent is too clever by half. It is well established that an injunction is "improvidently" granted under the Clayton Act if the plaintiff to whose benefit the order inures does not prevail *at trial*. In *H.E. Fletcher Co. v. Rock of Ages Corp.*, 326 F.2d 13 (2d Cir. 1963), Judge Friendly explained that an injunction under §16 of the Clayton Act had been "improvidently issued" because the movant had not proven its arguments on the merits or demonstrated irreparable harm. *Id.* at 17-18. Bond under the Clayton Act provides compensation if, "*in the end*[,] it was determined that [the defendant] was within its rights" in engaging in the enjoined conduct. *Id.* at 16-17 (emphasis added).

Likewise, a defendant "has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). That inquiry does not ask whether the court abused its discretion in *issuing* the injunction. *Id.* at 1036 n.4; *see also Sionix Corp. v. Moorehead*, 299 F.Supp.2d 1082, 1086 (S.D. Cal. 2003) ("A finding that a party was wrongfully enjoined does not imply the court erred in issuing the injunction."). Rather, it asks—retrospectively, once the merits have been resolved—whether the defendant was entitled to engage in the enjoined conduct. Thus, even if a court acted lawfully in entering a preliminary injunction, the defendant may nonetheless have been "wrongfully enjoined" if it ultimately prevails in the case. *Nintendo*, 16 F.3d at 1036. Hence, courts have required bonds as a security against a wrongful injunction even when the preliminary injunction was entered by consent. *See, e.g.*, *RLM Commc'ns, Inc. v. Tuschen*, 2014 WL 1921087 (E.D.N.C. May 14, 2014).

Fundamentally, the states' attempt to litigate the wrongfulness of the injunction is both misplaced and premature. Courts measure wrongfulness "in hindsight" after the ultimate merits determination is made. *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054-56 (2d Cir. 1990); *see Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 242 n.9 (3d Cir. 2003) (explaining that "the ultimate determination whether a party was wrongfully enjoined and can recover on the injunction bond generally must wait until 'after a trial and final judgment on the merits'"). Paramount is not demanding a present entitlement to $1.88 billion—it is asking that the Court order Plaintiffs to set that amount aside so that, if Paramount prevails, it can bring an action to recover from that amount. Because "[t]he entire concept of [being] 'wrongfully enjoined' envisions a look back from the ultimate conclusion of the case," *Nat'l Collegiate Athletics Ass'n v. Governor of N.J.*, 939 F.3d 597, 605 (3d Cir. 2019), Plaintiffs' claim that a consensual order forecloses such an argument down the road fails.

3. Finally, the states argue that Paramount either waived its opportunity to argue that the Order is an injunction or is estopped from taking that position. Opp.6-7. Plaintiffs ignore that Ninth Circuit precedent entitles a litigant to request a court to modify an injunction to require bond even though it did not request bond in the first instance, *see Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 883 (9th Cir. 2003), as Paramount has done here. And Plaintiffs are entirely silent about the Order's clause that expressly preserved Paramount's "claims, defenses, arguments, or positions in this action," Dkt.170 at 2, a silence that is fatal to their waiver and estoppel arguments. As for the arguments Plaintiffs do raise, each is meritless.

**Waiver**. The states assert that Paramount "waived its right to argue that the stipulation is a preliminary injunction" because the company's lawyers "repeatedly said" during the Order's negotiation that it "was not an injunction." Opp.6-7. That mischaracterizes the record and misunderstands the law. For starters, the negotiation history is irrelevant because the Order expressly preserved Paramount's "claims, defenses, arguments, or positions in this action." Dkt.170 at 2. That includes the "arguments" and "positions" that Paramount advances here in support of the bond request. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 560 (9th Cir.

2016). In all events, the negotiation record undermines Plaintiffs' position. The emails Plaintiffs cite show that Paramount hesitated to label the Order an injunction because the company did not want to concede "that the requirements for a PI have been met" or otherwise prejudice its ability to defend the transaction, Dkt.213-5 at 7, essentially deferring judicial resolution of the issues as in *Las Vegas Sun*. Paramount agreed that the stipulated order would, however, "provide all the same protections" as a preliminary injunction because it restrained defendants from closing the transaction. Dkt.213-5 at 4-7. And as evinced by Attorney General Bonta's numerous public appearances and interviews, *see supra*, p.2, it is apparent that Plaintiffs shared that understanding until it served their purposes to contend otherwise.[2]

Plaintiffs cherry-pick email excerpts but notably omit the actual draft proposal the states had circulated in those emails, which entirely undercuts their waiver argument here. *See* Decl. of Jeffrey L. Kessler In Support of the Reply, ¶2 ("Kessler Decl."). Plaintiffs' proposed draft included language that extended the stipulated injunction until after the merits determination, waived the right to appeal the stipulated injunction, and limited the preservation of rights to the post-judgment appeal. *See* Kessler Decl., Ex.A. The removal of those provisions from the final draft demonstrates that *both* parties understood the Order to permit Paramount to seek modifications of the Order during the pendency of this case.

**<u>Judicial Estoppel</u>**. Plaintiffs next argue that Paramount is judicially estopped from requesting a bond because it is purportedly taking a "clearly inconsistent" litigation position "to gain [an] unfair advantage." Opp.7. The Ninth Circuit uses a three-part test to identify when judicial estoppel applies: (1) the party's current legal position must be "clearly inconsistent" with an earlier position; (2) it must have "succeeded in persuading the district court to accept the earlier position"; and (3) it must "[d]erive an unfair advantage if not estopped." *United Nat'l Ins. v. Spectrum Worldwide*, 555 F.3d 772, 779 (9th Cir. 2009). The states advance a conclusory, three-sentence argument why estoppel applies. Opp.7. That cursory treatment is difficult to square with the gravity of the accusation, which charges Paramount with attempting to perpetrate a "fraud on

[2] The WGA insisted that the Order include "so ordered" by "Judge Martinez-Olguin," Dkt.213-5 at 2—a wholly unnecessary addition if the Order did not invoke the court's imprimatur.

the court." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000). As a result of their failure to "analyze … [the estoppel] factors," the issue "is inadequately briefed and thus waived." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1146 (10th Cir. 2017); *see, e.g.*, *ThermoLife Int'l LLC v. BPI Sports LLC*, 2021 WL 661981, at *3 (D. Ariz. Feb. 19, 2021).

In all events, none of the three criteria are met here. Paramount has not taken "clearly inconsistent" litigation positions. Then, as now, Paramount maintains that the states cannot meet the elements necessary to obtain a preliminary injunction. Then, as now, Paramount concedes that the Order forbids the transaction from closing. There is no inconsistency. On the contrary, Paramount seeks a bond *because* the Order prevents it from closing. Nor did Paramount "succeed" in convincing this Court to "accept" the position that the Order is not a preliminary injunction. At no point has this Court considered or decided that issue, which provides yet another reason why estoppel does not apply. *See Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997). Finally, there is no "unfair advantage"—let alone any prejudice—resulting from the purported shift in Paramount's position. Indeed, despite the repeated outcries of prejudice, Plaintiffs never identify what that prejudice or advantage is. Plaintiffs do not specify the prejudice because *there is none*: absent the Order, Plaintiffs would have had to litigate to obtain injunctive relief and been subject to the same Clayton Act and Rule 65(c) bond requirements had they prevailed. *See Randle v. Crawford*, 604 F.3d 1047, 1054 (9th Cir. 2010) (refusing to apply judicial estoppel when the party "failed to show" an "unfair detriment"). For all those reasons, judicial estoppel does not apply.

**Equitable Estoppel**. The states fare no better with respect to equitable estoppel—a doctrine that "focuses primarily" on situations where, unlike here, the defendant has taken actions to fraudulently "prevent[] a plaintiff from filing suit." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). Plaintiffs cannot overcome that dispositive threshold obstacle. Moreover, equitable estoppel applies if (1) Paramount had "knowledge of the true facts"; (2) Paramount had an "intent to induce reliance"; (3) Plaintiffs were "ignoran[t] of the true facts"; and (4) there was "detrimental reliance" as a result. *Id.* at 813. The states yet again do not mention

these factors—let alone explain how they are satisfied on this record. This estoppel argument, like the one before it, is therefore waived. *See supra*, p.8 (collecting cases). It is also meritless. Paramount never misrepresented or concealed any facts with the intent to induce any detrimental reliance. At most, the states accuse Paramount of changing its litigating position. *But see supra*, p.6-7. That alone makes equitable estoppel inapplicable, *see Est. of Amaro*, 653 F.3d at 813, not to mention the states' failure to establish detrimental reliance or a deceptive intent.

**B. The Court Has Authority to Modify the Injunction to Require A Bond.**

The states insist that even if the Order is an injunction, the Court cannot modify it unless Paramount shows "a significant change in facts or law" to warrant such modification, which they claim Paramount fails to do. Opp.7. That is wrong on both fronts. *See* Mot.7-9.

1. *Las Vegas Sun* obviates the need for Paramount to show changed circumstances to secure modification of the Order. *See* Mot.7-8. In an attempt to avoid that precedent, the states identify various irrelevant distinctions between this case and that one. True, the defendant there had completed "years of discovery" and "reasonably wait[ed]" before seeking modification. Opp.9. But that had nothing to do with the court's reasoning. Instead, as the Ninth Circuit explained, the stipulated injunction reserved the parties' rights and arguments (as here) and deferred judicial resolution of the disputed issues (as here). Showing changed circumstances is only necessary to establish why an "already-resolved issue should be revisited." *Las Vegas Sun*, 147 F.4th at 1113 n.2. As in *Las Vegas Sun*, Paramount is not seeking to revisit an already-resolved or litigated issue, but to raise a claim not yet evaluated by the Court. The states' complaint that "no court in this case has made a final merits determination on the lawfulness of Paramount's proposed merger" has it exactly backwards. Opp.10. That is precisely why this case is on all fours with *Las Vegas Sun*, which permitted modification before final judgment. Oddly, the states claim that *Las Vegas Sun* is distinguishable because there the "defendants sought to dissolve the stipulated injunction," rather than modify it. Opp.9-10. But if a party can dissolve a stipulated injunction without changed circumstances, surely it can seek a modification.

2. Nonetheless, the states urge this Court to impose a "heavy burden" on Paramount to show changed circumstances. Opp.8. Apart from failing to convincingly distinguish *Las Vegas Sun*, the states rely on irrelevant cases that involve modifications sought *after final judgment* under Rule 60(b). Opp.8. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992) (explaining that "a consent decree is a final judgment" and reviewing the movant's request to modify a consent decree under Rule 60(b)); *United States v. Asarco Inc.*, 430 F.3d 972, 976, 977-80 (9th Cir. 2005) (seeking modification of a consent decree under Rule 60(b)); *United States v. Baroid Corp.*, 130 F.Supp.2d 101, 102 (D.D.C. 2001) (considering a motion to "modify the Final Judgment"); *Sharp v. Weston*, 233 F.3d 1166, 1169-70 (9th Cir. 2000) (seeking modification of an institutional-reform injunction that was entered after a jury trial). These cases have no relevance to the appropriate standard for modifications to preliminary injunctions under Rule 54(b). "[A] preliminary injunction is not a 'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)," *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000), and the Rule 54(b) standard that *does* apply to preliminary injunction modifications is "less rigid," *Persistence Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626, 627 (N.D. Cal. 2001); *see City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885-89 (9th Cir. 2001).

3. But even if changed circumstances were required, they exist here. Mot.8-9. At the time of the stipulation, it was uncertain whether and to what extent Paramount would incur financial harm from the Order because the Court had not fixed a trial date and regulatory conditions independently prevented closing. Both contingencies have since been resolved, with the Order the sole obstacle to closing, thereby ensuring over *a billion dollars* in damages. The states cite Paramount's awareness that the states intended to seek trial in April 2027 as proof that Paramount could foresee suffering injuries from litigation delays, Opp.9, but they cite no authority for the meritless argument that changed circumstances must be unforeseen to support modification of a preliminary injunction. *See A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) (courts have "wide discretion" to modify preliminary injunctions based on "new facts"). On the contrary, the Ninth Circuit treats novel financial harm as a changed circumstance that suffices

to modify a preliminary injunction to require bond. *See In re Comm. Mortg. Co.*, 397 F.App'x 300, 304 (9th Cir. 2010). Nor is it dispositive that Paramount "knew it may have to pay" ticking fees. Opp.8. Paramount agreed to the ticking fee confident in the legality of the transaction and that it could obtain the necessary regulatory approval and meet the conditions for closing well before the ticking fees started to accrue. *See* Decl. of Ian Nussbaum in Support of Paramount's Reply, ¶¶4-5 ("Nussbaum Decl."). That is exactly what happened: since the Order was entered, the closing conditions have been met and this litigation, brought at the eleventh hour seeking to block the deal based on specious antitrust allegations, is now the sole obstacle to closing the transaction and avoiding nearly $2 billion in fees that otherwise would not be incurred. *See* Dkt.204-2, ¶¶2-10.

## II. Paramount Is Legally Entitled To A Bond.

### A. The Clayton Act Makes Bond A Condition Precedent To An Injunction.

Paramount's bond motion explained in detail how the Clayton Act's "[s]tatutory text, context, and precedent all confirm that courts *must* require the plaintiffs to provide a bond in order to receive preliminary relief." Mot.10-14. The states have no answer to these arguments.

Instead, they cite a Tenth Circuit per curiam decision, which did not involve a merger challenge, that held that §16 is "*not* a mandate to require a bond in every anti-trust case in which an injunction is issued." *Cont'l Oil Co. v. Frontier Refin. Co.*, 338 F.2d 780, 783 (10th Cir. 1964) (per curiam). That decision, however, did not embrace plaintiffs' view that the states should be off the hook for damages: it rested on the mistaken assumption that a bond was unnecessary because the plaintiff had "considerable assets" and could provide "damages if [the defendant] does suffer damages by reason of the injunction." *Id.* The Supreme Court has since made clear that "[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." *W.R. Grace & Co. v. Loc. Union 759*, 461 U.S. 757, 770 n.14 (1983). *Continental Oil* lacks any remaining persuasive value and cannot be squared with the Congress' explicit mandate in the Clayton Act's text that a bond is mandatory. *See* Mot.10-14; *Robinson v. Benbow*, 298 F. 561, 572 (4th Cir. 1924) (bond is "required by the express terms

of the Clayton Act"); *Rock of Ages Corp.*, 326 F.2d at 16 (bond is "specifically required by the statute").

**B. Rule 65(c) Independently Requires Security.**

The states do not dispute that Rule 65 requires bond as a condition for issuance of a preliminary injunction except "in narrow circumstances." Mot.14. The states do not attempt to show that those narrow circumstances exist; instead, their sole argument is that this suit "implicates 'important public interests.'" Opp.10. But the states do not and cannot dispute that when a party brings suit under §16 of the Clayton Act, it acts in its private capacity rather than as an enforcer of the public interest, a role that rests only with the federal government. *See* Mot.15-16. That sets this case apart from public-interest bond cases. That is all the more true when, as here, the United States—which, unlike the states, is expressly exempted from the bond requirement—has already determined that the challenged transaction advances the public interest. *Id.* The states "fail[ed] to respond to this argument and therefore concede it through silence," *Namisnak v. Uber Techs., Inc.*, 444 F.Supp.3d 1136, 1146 (N.D. Cal. 2020) (quoting another source).

The states assert that the protection of competition is "vital to the public interest" and thus sufficient to dispense with the bond requirement. Opp.10. That cannot be right because it would render §16's mandatory bond requirement inapplicable in every §16 case. Plaintiffs fail to identify any limiting principle that would prevent their "public interest" exception from swallowing §16 and Rule 65(c) whole. Indeed, the public interest argument is particularly troubling as a basis to dispense with bond here, where the states' public interest claim is the minority view among the 50 states, and contrary to the explicit determination of regulators representing 68 jurisdictions around the world. It also contradicts the balance devised by Congress: private parties may sue to enforce the antitrust laws but they must post bond to do so. *See* 15 U.S.C. §26.

There is no free-floating public-interest exception to Rule 65(c), even setting §16 aside. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011), recognized that district courts retain discretion to waive bond in cases where the injunction would not realistically harm the defendant. *Id*. The other cases on which the states rely involve cases where (unlike here) either the defendants

would not suffer irreparable financial harm from the injunction, or the plaintiffs were indigent and could not afford bond. *See* Opp.10-11. Every injunction that is issued includes a public-interest finding. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). If that were enough to waive bond, the requirement would exist in name only. The court should not expand the narrow "public interest" exception further.

## III. The Court Should Set Bond At $1.88 Billion.

### A. Bond Exists to Provide a Make-Whole Remedy for an Erroneous Injunction.

The states do not dispute that the Clayton Act's text and historical backdrop require bond in an amount adequate to remedy damages from an improvidently issued injunction. Mot.16-18.

Instead, they argue that §16 should be interpreted no "different[ly] … than Rule 65(c)," which allows courts to impose nominal bonds. Opp.12. That position suffers from a host of problems. First, it ignores the statutory text. The Clayton Act conditions preliminary relief "upon the execution of proper bond against damages" from an improvident injunction, 15 U.S.C. §26, whereas Rule 65(c) requires security "in an amount that the court considers proper" to "pay the costs and damages sustained by" a wrongful injunction, Fed. R. Civ. P. 65(c). Although the language is similar, Rule 65(c) vests more discretion with the district court to dispense with bond. The Federal Rules view the security requirement through the lens of "an amount *the court* considers proper"—which, in some cases, might be zero. The Clayton Act, by contrast, makes preliminary relief contingent "upon" the "execution of proper bond." It makes no sense to say that a bond is "execut[ed]" if the Court waives the bond requirement altogether. Moreover, to the extent Rule 65(c) has been interpreted inconsistently with its plain text, it would throw good after bad to take similar interpretive license with §16. The Federal Rules were promulgated by the Supreme Court, not enacted by Congress. Importing into §16 any discretion Rule 65(c) may confer to dispense with security would thus raise serious concerns under the Rules Enabling Act by abridging an express substantive right Congress created: the right to a bond securing damages from an improvidently granted injunction. *See* 28 U.S.C. §2072(b).

Although the states invoke statutory history to support their position, that actually cuts in Paramount's favor. Rule 65(c) derived from Section 18—not §16—of the Clayton Act. Opp.12. Section 18 was later repealed because Rule 65(c) made it redundant. *Buddy Sys. v. Exer-Genie*, 545 F.2d 1164, 1168 n.8 (9th Cir. 1976); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 n.13 (1974). Section 18 explicitly excepted from its provisions "section 16" of the Clayton Act, *see* Clayton Act of 1914, ch. 323, §18, 38 Stat. 730, 738, thus providing further support for Paramount's position that §16 should not be treated as interchangeable with Rule 65(c).

**B. The Make-Whole Remedy is, at Minimum, $1.88 Billion.**

The Supreme Court has warned that "the cost of enjoining a merger before consummation is staggering." *California v. Am. Stores Co.*, 492 U.S. 1301, 1307 (1989) (O'Connor, J., in chambers). That is unquestionably true here. Paramount provided unrebutted evidence that, but-for the Order, it may suffer $1.88 billion in damages. Critically, the states never dispute that evidence or otherwise contest that Paramount will suffer financial injury as a result of the Order, both from the ticking fee *and* the incremental financing costs—a financial harm that the states outright ignore. *See* Dkt.204-2 at 2-3. Nor do they deny that Paramount would close this transaction by September 30, 2026, but-for the stipulated injunction. *See id*. For purposes of this motion, then, the states have conceded that Paramount provided evidence to establish $1.88 billion in potential damages.

Those concessions alone suffice to distinguish *In re Nexstar-TEGNA Merger Litigation*, 2026 WL 1049295 (E.D. Cal. Apr. 17, 2026). Although it is true the *Nexstar* defendants "sought a $150 million bond" to offset "significant operational, financial, and competitive harm," Opp.11, the court rejected that request because (unlike here) the defendants provided "no evidence" of the financial harm that they would suffer if enjoined, *Nexstar-TEGNA*, 2026 WL 1049295, at *28.

As for the bond examples that Paramount provided in its motion, *see* Mot.19, the states miss the point. Those cases illustrate that sizable bonds are appropriate when (as here) the anticipated harm to the defendant is commensurately large. Sizable bonds (even before adjusting for inflation) have also been ordered in Clayton Act cases even where the plaintiff was ostensibly

acting in the public interest by seeking to enjoin allegedly anticompetitive mergers. *See, e.g.*, *In re Microsoft Corp. Antitrust Litig.*, 240 F.Supp.2d 460 (mem.) (D. Md. 2003) ($25 million bond), *aff'd in part & vacated in part by* 336 F.3d 517 (4th Cir. 2003); *Grumman Corp. v. LTV Corp.*, 527 F.Supp. 86, 106 (E.D.N.Y. 1981) ($5 million bond); *Pargas, Inc. v. Empire Gas Corp.*, 423 F.Supp. 199, 243-49 (D. Md. 1976) ($1 million bond). Courts have also ordered sizable bonds in other corporate merger and acquisition disputes, including *Burlington Indus., Inc. v. Edelman*, 666 F.Supp. 799 (M.D.N.C. 1987), where the court required a $500 million bond—which equals approximately $1.5 billion in inflation-adjusted dollars. *See also In re Xerox Corp. Consol. Shareholder Litig.*, 76 N.Y.S.3d 759, 775 (N.Y. Sup. Ct. 2018) ($150 million bond), *rev'd on other grounds by* 86 N.Y.S.3d 28 (N.Y. Sup. Ct., App. Div. 2018). The purpose of bonds sufficient to compensate for damages is to "deter rash applications for interlocutory orders" by parties with nothing to lose by interfering with mergers blessed by regulators. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210-11 (3d Cir. 1990).

Equally misplaced is the states' assertion that requiring a meaningful bond will encourage merging parties to "craft financial commitments … to burden [or prevent] state or private antitrust enforcement." Opp.12. Ticking fees like the one Paramount faces are extraordinarily rare, in part because they are extraordinarily expensive. It would be incredibly risky to add such fees solely to deter private litigation; if the merging parties ultimately lose the antitrust litigation, the payor of the ticking fee would be left with an enormous bill and no merger. And there is no contention that this is such a case. Here, Paramount added the ticking fee in a highly competitive bidding war with Netflix, confident that its transaction is legal under established U.S. and foreign antitrust laws and would clear the relevant regulatory hurdles well before those fees started accruing. Nussbaum Decl. ¶¶4-5. And that is exactly what happened.

Because Paramount has established $1.88 billion in damages it will potentially suffer as a direct result of being wrongfully enjoined, the Court should grant the motion.

Dated: September 8, 2026

Respectfully submitted,

Marguerite Sullivan (*pro hac vice*)
Anna Rathbun (SBN 273787)
Christopher J. Brown (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
marguerite.sullivan@lw.com
anna.rathbun@lw.com
christopher.brown@lw.com

Jeffrey L. Kessler (*pro hac vice*)
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jeffrey.kessler@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
Matthew R. DalSanto (SBN 282458)
**WINSTON TAYLOR LLP**
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone: (415) 591-1469
Facsimile: (415) 591-1400
jeanifer.parsigian@winstontaylor.com
matthew.dalsanto@winstontaylor.com

*<u>/s/ Danielle R. Sassoon</u>*

Danielle R. Sassoon (*pro hac vice*)
Philip Hammersley (*pro hac vice*)
**CLEMENT & MURPHY, PLLC**
706 Duke Street
Alexandria, VA 22314
Telephone: (202) 742-8900
danielle.sassoon@clementmurphy.com
philip.hammersley@clementmurphy.com

Conor A. Reidy (*pro hac vice*)
Kevin B. Goldstein (*pro hac vice*)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 558-7542
Facsimile: (312) 558-5700
conor.reidy@winstontaylor.com
kevin.goldstein@winstontaylor.com

Matthew R. Huppert (*pro hac vice*)
**WINSTON TAYLOR LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5004
Facsimile: (202) 282-5100
matt.huppert@winstontaylor.com

*Attorneys for Defendant Paramount Skydance Corporation*