STANLEY E. WOODWARD, JR. (DC Bar #997320)
Associate Attorney General
G. CHARLES BELLER (DC Bar #1645076)
Deputy Assistant Attorney General
JARED T. BOND (CA Bar #336262)
Acting Deputy Director of Civil Enforcement
JOHNATHON HUSTON (DC Bar #90019278)
Counsel to the Assistant Attorney General
DANIEL HAAR (MD Bar member)
Section Chief, Appellate Section
NICKOLAI LEVIN (DC Bar #490881)
Assistant Chief, Appellate Section
SHANA WALLACE (CA Bar #241432)
Trial Attorney, Appellate Section
United States Department of Justice
Antitrust Division

950 Pennsylvania Ave., NW
Washington, DC 20530-0001
Telephone: (202) 999-5025
Fax: (202) 514-0536
Email: Shana.Wallace@usdoj.gov

CRAIG L. MISSAKIAN (CABN 125202)
United States Attorney
450 Golden Gate Ave. Box 36055
San Francisco, California 94102

*Attorneys for United States of America*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

STATE OF CALIFORNIA, ET AL.,

*Plaintiffs,*

v.

PARAMOUNT SKYDANCE CORP., and WARNER BROS. DISCOVERY, INC.,

*Defendants.*

CASE NO. 4:26-cv-07116-AMO

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

DATE: September 24, 2026
TIME: 10:00am
JUDGE: Honorable Araceli Martínez-Olguín

WRITERS GUILD OF AMERICA, WEST, INC., ET AL.,

*Plaintiffs,*

v.

PARAMOUNT SKYDANCE CORP., and WARNER BROS. DISCOVERY, INC.,

*Defendants.*

CASE NO. 4:26-cv-07212-AMO

# TABLE OF CONTENTS

INTEREST OF THE UNITED STATES .......... 1

BACKGROUND .......... 3

DISCUSSION .......... 5

PLAINTIFFS MUST POST A "PROPER BOND" BEFORE A PRELIMINARY INJUNCTION MAY ISSUE UNDER 15 U.S.C. § 26 .......... 5

A. The Plain Text and History of 15 U.S.C. § 26 Require Posting of a Proper Bond .......... 5

B. The States Provide No Legitimate Reason for Reading the Bond Requirement Out of the Statute .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aeolian Co. v. Fischer*,
29 F.2d 679 (2d Cir. 1928) .......... 7

*Bostock v. Clayton County*,
590 U.S. 644 (2020) .......... 5

*California v. American Stores Co.*,
495 U.S. 271 (1990) .......... 1

*Central Bank of Denver v. First Interstate Bank of Denver*,
511 U.S. 164 (1994) .......... 10

*City of Newton v. Levis*,
79 F. 715 (8th Cir. 1897) .......... 8

*Continental Oil Co. v. Frontier Refiningery Co.*,
338 F.2d 780 (10th Cir. 1964) .......... 10

*Donnelly Garment Co. v. International Ladies' Garment Workers' Union*,
55 F. Supp. 572 (W.D. Mo. 1944) .......... 7

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) .......... 7

*Georgia v. Pennsylvania Railroad Co.*,
324 U.S. 439 (1945) .......... 1

*H.E. Fletcher Co. v. Rock of Ages Corp.*,
326 F.2d 13 (2d Cir. 1963) .......... 6

*In re Nexstar-TEGNA*,
2026 WL 1049295 .......... 10

*Legal Tender Cases*,
79 U.S. 457 (1870) .......... 8

*Lieberman v. FTC*,
771 F.2d 32 (2d Cir. 1985) .......... 2

*Loughrin v. United States*,
573 U.S. 352 (2014) .......... 9

*Love v. Fendall's Trs.*,
15 F. Cas. 993 (C.C.D.C. 1801) .......... 7

*Massie v. Buck*,
128 F. 27 (5th Cir. 1904) .......... 8

*Mattox v. FTC*,
752 F.2d 116 (5th Cir. 1985) .......... 2

*Muskegon Piston Ring Co. v. Gulf & Western Industries, Inc.*,
328 F.2d 830 (6th Cir. 1964) ........ 6

*New York v. Meta Platforms Inc.*,
66 F.4th 288 (D.C. Cir. 2023) ........ 1

*Russell v. Farley*,
105 U.S. 433 (1882) ........ 7

*Tasty Baking Co. v. Ralston Purina, Inc.*,
653 F. Supp. 1250 (E.D. Pa. 1987) ........ 7

*Texas Industries, Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ........ 9

*United States v. Borden Co.*,
347 U.S. 514 (1954) ........ 2

*U.S. Steel Corp. v. Multistate Tax Commission*,
434 U.S. 452 (1978) ........ 3

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ........ 10

*William Filene's Sons Co. v. Fashion Originators' Guild of America*,
14 F. Supp. 353 (D. Mass. 1936) ........ 7

*Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm,* LLC,
2021 WL 4948151 (M.D. Fla. Oct. 18, 2021) ........ 7

**U.S. Constitution**

Art. I, Section 8 ........ 3

Art. I, Section 10 ........ 3

**Statutes**

15 U.S.C. § 15 ........ 1, 2

15 U.S.C. § 15a ........ 1

15 U.S.C. § 15c ........ 1

15 U.S.C. § 15f ........ 3

15 U.S.C. § 18 ........ 1, 5

15 U.S.C. § 18a ........ 2

15 U.S.C. § 18a(e) ........ 2, 4

15 U.S.C. § 18a(f) ........ 5

15 U.S.C. § 18a(h) .......... 2
15 U.S.C. § 21 .......... 1
15 U.S.C. § 25 .......... 1, 8
15 U.S.C. § 26 .......... passim
15 U.S.C. §§ 41-58 .......... 1
15 U.S.C. § 53(b) .......... 5
15 U.S.C. § 4304 .......... 6
28 U.S.C. § 517 .......... 1

**Rules**

Federal Rule of Civil Procedure 65 .......... 4, 5, 10

**Other Authorities**

Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .......... 8
*Bouvier's Law Dictionary*, vol. 2 (1914) .......... 8
*Century Dictionary and Cyclopedia*, 10 vols. (1899) .......... 8
Dan B. Dobbs & Caprice L. Robert, *Law of Remedies: Damages, Equity, Restitution* (3d ed. 2018) .......... 6
Henry Campbell Black, *A Law Dictionary* (2d ed. 1910; 3d ed. 1933) .......... 8
James A. H. Murray, *A New English Dictionary on Historical Principles,* vol. VIII, O, P. (Oxford: at the Clarendon Press 1909) .......... 8
Minority Views to House Report 15657, H.R. Rep. No. 63-627, pt. 2 (1914) .......... 6
Samuel L. Bray, *The Purpose of the Preliminary Injunction*, 78 VAND. L. REV. 809 (2025) .......... 6
Senate Report No. 698, 63d Cong., 2d Sess. 42 (1914) .......... 6

**INTEREST OF THE UNITED STATES**

The United States respectfully submits this statement under 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the U.S. Department of Justice to attend to the interests of the United States in any case pending in a federal court. The United States enforces the federal antitrust laws and has a strong interest in their correct application, including the application of Section 16 of the Clayton Act, 15 U.S.C. § 26, which covers the ability of a private "person" to seek injunctive relief for a violation of the antitrust laws, including Section 7 of the Clayton Act, 15 U.S.C. § 18. Plaintiff States and unions brought suit under Section 16 here. *See* Compl., Dkt. No. 1 ¶ 15; *see also Georgia v. Pa. R.R. Co.*, 324 U.S. 439, 447 (1945) (a State, appearing as *parens patriae*, qualified as a "person" who can sue for an injunction under § 16). The plain text of Section 16 requires "the execution of proper bond against damages for an injunction improvidently granted" before "a preliminary injunction may issue," among other conditions. 15 U.S.C. § 26.

In particular, Congress provided for complementary antitrust enforcement by the federal government and private parties—but made clear that it was not a system of equals. Congress granted the United States Department of Justice ("DOJ") broad equitable authority "to prevent and restrain" antitrust violations, holding that courts "shall proceed, as soon as may be, to the hearing and determination of the case," and may "make such temporary restraining order or prohibition as shall be deemed just in the premises." 15 U.S.C. § 25 (Clayton Act), § 4 (Sherman Act); *see also id.* § 15a (the United States may recover treble damages for injuries in its business or property). Congress likewise granted the Federal Trade Commission ("FTC") broad enforcement authority under the Federal Trade Commission Act of 1914, 15 U.S.C. §§ 41-58, and under the Clayton Act, *e.g.*, 15 U.S.C. § 21.

But private persons cannot sue under these provisions, and must rely on separate authorities, *see* 15 U.S.C. § 15 (private persons may bring treble damages claims); 15 U.S.C. § 15c (States can sue *parens patriae* for treble damages for Sherman Act violations); 15 U.S.C. § 26 (injunctive relief for Sherman Act and Clayton Act violations), which are subject to additional limitations and defenses that do not apply to the United States. *See*, *e.g.*, *California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (States and other private parties "must have standing" to seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26); *New York v. Meta Platforms Inc.*, 66 F.4th 288, 298-99 (D.C. Cir. 2023)

(holding that "a §16 State *parens patriae* suit is a private action" subject to laches).

As the Supreme Court explained in *United States v. Borden Co.*, "[t]he private-injunction action, like the treble-damage action under § 4 of the Act [15 U.S.C. § 15], supplements Government enforcement of the antitrust laws; *but it is the Attorney General and the United States district attorneys who are primarily charged by Congress with the duty of protecting the public interest under these laws*." 347 U.S. 514, 518 (1954) (emphasis added). "The Government seeks its injunctive remedies on behalf of the general public; the private plaintiff, though his remedy is made available pursuant to public policy as determined by Congress, may be expected to exercise it only when his personal interest will be served." *Id.*

The primacy of the federal government is particularly acute with respect to federal merger policy. In 1976, Congress provided the DOJ and the FTC with a novel suspensory pre-consummation merger control regime under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"). 15 U.S.C. § 18a. The HSR Act vested the federal antitrust enforcers for the first time with the power to seek confidential information in transactions above certain monetary thresholds and to request additional information prior to closing to evaluate the competitive effects of a transaction. 15 U.S.C. § 18a(e).

By contrast, States have no statutory role under the HSR Act. Section 7A(h) expressly prohibits pre-merger information sharing with the "public," except by consent of the merging parties. 15 U.S.C. § 18a(h). Courts construing Section 7A(h) have uniformly agreed that state attorneys general are part of the "public" for the purposes of disclosure. *See, e.g.*, *Lieberman v. FTC*, 771 F.2d 32, 40 (2d Cir. 1985) (holding that "Section 7A(h) . . . plays an important limiting role in a comprehensive regulatory scheme that offers no place for state law enforcement efforts," as it is "doubt[ful] if Congress would have intended to have the staffs of fifty state attorneys general sitting as oversight committees reacting to [Federal Trade] Commission or Justice Department decisions whether to block large-scale mergers of national or international significance"); *Mattox v. FTC*, 752 F.2d 116, 122 (5th Cir. 1985) (explaining that "[b]ecause HSR only covers transactions likely to affect the entire national economy, Congress may have wanted to centralize regulation of such mergers in the FTC and the Justice Department," while "[d]isclosure to state attorneys general would tend to balkanize that needed centrality"). States are to be provided notice after the "Attorney General of the United States has brought an action under the antitrust

laws," but still may only be provided access to "any investigative files" "to the extent permitted by law," 15 U.S.C. § 15f, meaning that even after litigation starts, states cannot access nonpublic information in DOJ's possession without defendants' consent.

Congress adopted this carefully calibrated antitrust enforcement scheme making the DOJ and FTC the primary enforcers against the background of several important constitutional limitations on State authority, including the Dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3, the Compact Clause, U.S. Const. art. I, § 10, cl. 3, and bedrock federalism principles. Through the bond requirement and other limitations on State and private party enforcement of the Sherman Act, courts have been able to avoid constitutional tensions that might otherwise be present. *Cf. U.S. Steel Corp. v. Multistate Tax Comm'n*, 434 U.S. 452, 471 (1978) (federal power cannot be usurped by multistate agreements).

This Statement addresses the correct interpretation of the bond requirement when States and other private persons seek a preliminary injunction under 15 U.S.C. § 26. The United States takes no position on whether the Stipulation and Order Not to Close (Dkt. No. 169) is, in fact, a preliminary injunction, or whether defendants waived their right to request a bond in this matter—which the parties contest. Dkt. Nos. 204, 213, 220.

## BACKGROUND

On December 5, 2025, Warner Bros. Discovery ("WBD") and Netflix, Inc. ("Netflix") announced that they had reached a definitive merger agreement by which Netflix would acquire the studio and streaming business of WBD, leaving WBD's linear networks in a company to be spun off. Netflix Press Release, *Netflix to Acquire Warner Bros. Following the Separation of Discovery Global*, https://perma.cc/UR9P-E8AA (Dec. 5, 2025). Three days later, on December 8, 2025, Paramount Skydance Corp. ("Paramount") announced that it had launched a competing all-cash tender offer to acquire WBD in its entirety and filed a notification under the HSR Act the same day. Paramount Press Release, *Paramount Launch All-Cash Tender Offer to Acquire Warner Bros. Discovery for $30 Per Share*, https://perma.cc/963A-UC2R (Dec. 8, 2025). Shortly thereafter, the DOJ issued Paramount a request for additional information, known as a "Second Request," which required the submission of additional documents, data, and responses to written interrogatories.

On February 9, 2026, before reaching a definitive agreement to acquire WBD,

Paramount certified that it had substantially complied with the Second Request, which triggered an additional 10-day waiting period under the HSR Act. 15 U.S.C. § 18a(e). On February 27, 2026, Paramount reached a definitive agreement to acquire the entirety of WBD (collectively the "Defendants") for $31 per share, for a transaction value of approximately $110 billion. Compl., Dkt. No. 1 ¶ 34.

Notwithstanding the expiration of the HSR waiting period in February 2026, the DOJ continued its investigation into the Paramount/WBD transaction to determine whether it violated federal antitrust law. Plaintiff State Attorney General offices ("States") participated in the DOJ's investigation by virtue of the Defendants' voluntary waivers of confidentiality, including the Plaintiff States of California, Colorado, Massachusetts, Oregon, and Washington. This allowed the DOJ and States to share information with each other and for the States to attend the DOJ's depositions of company executives. Off. of Pub. Affairs, Dep't of Justice, *Statement of the Department of Justice Antitrust Division on the Closing of Its Investigation of the Merger of Paramount Skydance and Warner Bros.*, https://perma.cc/G7EW-BA85 (June 12, 2026).

On June 12, 2026, the DOJ issued a closing statement to explain the rationale for concluding its investigation based on an evaluation of the likely competitive effects of the transaction. *Id.* Over the course of the investigation, the DOJ and the Plaintiff States "received from the [Defendants] over two million documents from over 80 custodians, substantial productions of data, as well as extensive documents, data, and advocacy from third parties across the media and entertainment ecosystem." *Id.* After thorough review of these materials, and based on extensive expertise reviewing similar transactions in the media and entertainment industry, the DOJ concluded "that the transaction is not likely to result in harm to competition or American consumers, including with respect to: (1) streaming video on demand ('SVOD'); (2) linear television; and (3) studio development, production, or distribution of films for theatrical release." *Id.*

One month later, on July 13, 2026, the State Plaintiffs filed a complaint in the Northern District of California to enjoin the transaction under Section 16 of the Clayton Act and moved for a temporary restraining order ("TRO") the same day. Dkt. Nos. 1, 27. In granting the TRO, the Court waived "the security requirement under Federal Rule of Civil Procedure 65(c) and Local Civil Rule 65-1,"

explaining that "Plaintiffs have demonstrated that Plaintiff States bring suit to enforce important *public* interests," and setting a briefing schedule for a preliminary injunction. Dkt. No. 141 at 9 (emphasis added). The Court did not discuss the bond requirement in Section 16 of the Clayton Act.

On July 23, 2026, the parties agreed to a joint stipulation not to close the transaction "until the earlier of (1) five days after the merits determination in these matters, or (2) June 1, 2027." Dkt. No. 169. The Court granted the Stipulation and Order not to close the same day. Dkt. No. 170. On August 17, 2026, the Defendants moved to modify the Stipulation and Order to require the Plaintiffs to post bond. Dkt. No. 204. The Defendants argued that the issuance of the Stipulation and Order was effectively a preliminary injunction and that the Plaintiffs should be required to post bond under Section 16 of the Clayton Act and Federal Rule of Civil Procedure 65(c). *Id*. at 2-3, 10-16.

## <u>DISCUSSION</u>

### PLAINTIFFS MUST POST A "PROPER BOND" BEFORE A PRELIMINARY INJUNCTION MAY ISSUE UNDER 15 U.S.C. § 26

#### A. The Plain Text and History of 15 U.S.C. § 26 Require Posting of a Proper Bond

The DOJ and the FTC are the primary enforcers of Section 7 of the Clayton Act, 15 U.S.C. § 18, and can obtain a preliminary injunction in a merger case without posting a bond. *See* 15 U.S.C. §§ 18a(f), 25, 53(b). But the same is not true for private parties or States suing *parens patriae*, who must obtain preliminary injunctive relief under 15 U.S.C. § 26 as "persons." *See* p. 1, *supra*. Section 16 of the Clayton Act provides:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, **and upon the execution of proper bond against damages for an injunction improvidently granted** and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue . . . .

15 U.S.C. § 26 (emphasis added).

The plain text of the statute is clear. And, as the Supreme Court explained, "when the meaning of a statute's terms is plain, [this Court's] job is at an end." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 674

(2020). It is unsurprising, then, that the mandatory nature of the bond requirement in 15 U.S.C. § 26 was by legislative design. Congress recognized the risk of permitting private litigants to obtain equitable relief. While debating the Clayton Act, a Congressional report reflected this very apprehension, worrying that "[t]he provision giving to any individual the right to enjoin any threatened loss or damage . . . is a very serious one," and that although "[t]he beginning of an investigation by the Government on any complaint that a concern has violated the antitrust law, almost immediately to some extent affects his credit," that is "not so serious[] as an injunction, and perhaps receivership, which might be brought by any individual." Minority Views to H.R. 15657, H.R. Rep. No. 63-627, pt. 2 (1914). The Senate Report accompanying the Clayton Act likewise emphasized the bond requirement, noting that "Section 16 provides that no restraining order or interlocutory order of injunction shall issue except on the giving of bond by the applicant." S. Rep. No. 698, 63d Cong., 2d Sess. 42, at 50 (1914).

Requiring a bond upon issuance of preliminary equitable relief was particularly important because while Section 16 of the Clayton Act provides a cause of action for injured private plaintiffs against violators, Section 16 does *not* otherwise allow a winning defendant to recoup damages wrongly suffered during the pendency of the litigation.[1] Thus, the required "bond does not merely provide security for payment; it provides for compensation that otherwise is not available." Dan B. Dobbs & Caprice L. Robert, Law of Remedies: Damages, Equity, Restitution 203 (3d ed. 2018). The bond requirement forces parties "to have skin in the game," Samuel L. Bray, *The Purpose of the Preliminary Injunction*, 78 VAND. L. REV. 809, 822 (2025), and also provides a measure of protection to defendants who were ultimately found to be wrongly enjoined.

Courts have thus recognized that a plaintiff must execute a "proper bond" before a preliminary injunction may issue under Section 16. *See, e.g.*, *Muskegon Piston Ring Co. v. Gulf & W. Indus., Inc.,* 328 F.2d 830, 831 (6th Cir. 1964) (requiring a bond upon issuance of a preliminary injunction under Section 16); *H.E. Fletcher Co. v. Rock of Ages Corp*., 326 F.2d 13, 16-18 (2d Cir. 1963) (approving of "the bond, specifically required by the statute, 15 U.S.C. § 26," and holding that "the temporary injunction was improvidently issued," but directing the district court that "it may limit defendant to

[1] A defendant may only recover costs and attorneys' fees if an action is found to be "frivolous, unreasonable, without foundation, or in bad faith." 15 U.S.C. § 4304.

recovery of damages on the injunction bond"); *Aeolian Co. v. Fischer*, 29 F.2d 679, 683 (2d Cir. 1928) (15 U.S.C. § 26 "requires a bond against damages in the event that the injunction will be granted"); *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm,* LLC, No. 8:19-cv-1895-CEH-CPT, 2021 WL 4948151, at *19 (M.D. Fla. Oct. 18, 2021) ("[s]uch a bond is mandated by the Clayton Act, which conditions the award of a preliminary injunction 'upon the execution of a proper bond,' 15 U.S.C. § 26"); *Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F. Supp. 1250, 1276 (E.D. Pa. 1987) ("even if defendants should ultimately prevail, there is no reason (and defendants make no argument) that the bond required by 15 U.S.C. § 26 would not adequately reimburse them for any harm suffered under a hold-separate order"); *Donnelly Garment Co. v. Int'l Ladies' G.W. Union*, 55 F. Supp. 572, 577, 580 (W.D. Mo. 1944) (reviewing previous issuance of a "bond which complied with the provisions of the Clayton Act"); *WM. Filene's Sons Co. v. Fashion Originators' Guild of Am.*, 14 F. Supp. 353, 357 (D. Mass. 1936) ("By the express terms of the statute (15 U.S.C.A. § 26), such an injunction may not issue except upon the execution of a proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate.").

Indeed, this type of protective measure is common. Since a preliminary injunction may be granted before a plaintiff has made a full showing on the merits, "generally the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully." *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J. concurring, in part and concurring in the judgment). In other words, "[t]he bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction." *Id.*

Congress's decision to require a bond under Section 16 follows a long history of injunction bonds being used in federal court prior to 1914. Indeed, "federal courts have granted injunctions upon a bond since at least 1801." Bray, 78 VAND. L. REV. at 861 n. 310 (citing *Love v. Fendall's Trs.*, 15 F. Cas., 993 (C.C.D.C. 1801), and *Russell v. Farley*, 105 U.S. 433, 436-43 (1882)). Against this historical backdrop of injunction bonds being required in federal court, Congress elected to explicitly require them here.

Moreover, a "proper bond" must be more than merely nominal. Not only is an adequate bond

necessary for a wrongly enjoined defendant to obtain damages, as well as to distinguish between merger enforcement by the federal government and private persons, but contemporaneous dictionaries reflected that "proper" means "that which is fit, suitable, adapted, and correct." Henry Campbell Black, *A Law Dictionary* (2d ed. 1910; 3d ed. [retitled Black's Law Dictionary] 1933); *see also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* at 422 (2012) (citing Henry Campbell Black, *A Law Dictionary* (2d ed. 1910)).[2] Court decisions of that era similarly employed the word "proper" to mean something that is "appropriate and plainly adapted." *Legal Tender Cases*, 79 U.S. 457, 480 (1870); *see also Massie v. Buck*, 128 F. 27, 32 (5th Cir. 1904) (referring to a proper bond as a bond that "fully protect[s] against any loss by reason of the injunction"); *City of Newton v. Levis*, 79 F. 715, 718 (8th Cir. 1897) (referring to a proper bond as a bond that indemnifies the opposing party for the "inconvenience and loss" that results from a preliminary injunction).

Therefore, the plain meaning of the statute and the contemporaneous use of "proper bond" in dictionaries and federal court decisions makes it clear the amount of the bond must be fit, suitable, adapted, and correct to compensate the defendant for "damages for an injunction improvidently granted." 15 U.S.C. § 26.

### B. The States Provide No Legitimate Reason for Reading the Bond Requirement Out of the Statute

In addition to arguing against any bond requirement at all, Plaintiff States argue that if Section 16 does require one, the requirement applies only if the court determines that a preliminary injunction was "improvidently granted," and—even then—it provides only for a nominal amount. Dkt. No. 213 at 4. None of that is correct. That reading, if followed, would have the effect of both nullifying the plain text of the statute (leading to separation-of-power concerns) and disregarding Congress's enforcement scheme by elevating States to a status akin to the federal government. *Compare* 15 U.S.C. § 25 (not

[2] Other contemporaneous dictionaries provide for similar definitions: *Bouvier's Law Dictionary*, vol. 2, 2750 (1914) ("proper" means "[t]hat which is essential, suitable, adapted, and correct"); *Century Dictionary and Cyclopedia*, 10 vols., 4776, def. 3 (1899) ("proper" means "[f]it; suitable; appropriate"); James A. H. Murray, *A New English Dictionary on Historical Principles*, vol. VII. O, P., 1470, def. 9 (Oxford: at the Clarendon Press 1909) ("proper" means "[a]dapted to some purpose or requirement expressed or implied; fit, apt, suitable; fitting, befitting; *esp*. appropriate to the circumstances or conditions; what it should be, or what is required; such as one ought to do, have, use, etc.; right.").

requiring a bond for federal enforcers), *with* 15 U.S.C. § 26 (requiring a bond for private parties).

To start, Section 16's language is clear: "a preliminary injunction may issue" to "[a]ny person," "upon the execution of proper bond against damages for an injunction improvidently granted" (among other conditions). 15 U.S.C. § 26. To avoid the most natural meaning and construction of this text, Plaintiffs urge the court to read in unwritten exceptions for State plaintiffs, as well as additional conditions, such as a simultaneous appraisal of whether the injunction is improvident. The court should decline this invitation. Simply ignoring the statutory requirement that the bond be "proper" would, of course, violate the "cardinal principle" that an interpreter "must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (citation omitted). Moreover, the Supreme Court has explained that, in contrast to the more flexible language of the antitrust statutes' substantive prohibitions, "the remedial provisions defined in the antitrust laws"—including "in the antimerger field"—"are detailed and specific." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 644-46 (1981). "There is nothing in the statute itself, in its legislative history, or in the overall regulatory scheme to suggest that Congress intended courts to have the power to alter or supplement the remedies enacted." *Id.*

Plaintiff States' position that the bond instead be conditioned upon a contemporaneous finding by the Court that it was "improvidently granting" a preliminary injunction fares no better. Plaintiffs claim that the phrase "improvidently granted" in this context substantively alters the legal test for whether a bond is required. Instead, it rather plainly explains why a proper bond must be posted, i.e., it must be posted to secure against damages for an injunction improvidently granted. In drafting the sentence, Congress presumed that every preliminary injunction could be improvidently granted. Plaintiffs are asking the court to issue a preliminary injunction while simultaneously finding that it was "improvidently" doing so. The legal elements for issuance of a preliminary injunction do not merge with the bond requirement.

Finally, the States' demand that only a nominal bond be required would, functionally, place private "person[s]" covered under Section 16 in essentially the exact same position as the federal government under Section 15. Had Congress wished to require nominal damages in Section 16, it would have vested the court with equitable discretion ("courts at common law routinely awarded nominal

damages") or listed nominal damages explicitly in the statute. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021); *see also Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 176-77 (1994) (deploying the "Congress knows how to say canon" by finding that when Congress shows it knows how to use a particular legal term of art elsewhere in the statute, courts presume that omission of such a term in another portion of the statute is intentional). It did neither. Plaintiffs' suggestion that the court may, after finding financial harm will occur, summarily reduce the amount of the bond to a "nominal" amount likewise has no basis in the statute.

Plaintiffs' cited cases do not demand a different outcome. Rather, Plaintiffs point to cases in which courts either did not consider Section 16 at all—which is the provision pursuant to which Plaintiff States seek to enjoin the present transaction, *In re Nexstar-TEGNA*, 2026 WL 1049295 at *28 (only considering Federal Rule of Civil Procedure 65), or in which a court imposed extratextual requirements such as proof of the creditworthiness of a private plaintiff, *Cont'l Oil Co. v. Frontier Refin. Co.*, 338 F.2d 780, 782-83 (10th Cir. 1964) (declining to require a bond because "[t]he evidence shows that [plaintiff] is a corporation with considerable assets and that it is able to respond in damages if [defendant] does suffer damages by reason of the injunction"). None of these cases provides a legitimate basis to disregard Section 16's plain text requiring private persons to post a "proper bond" before a preliminary injunction may issue.

## CONCLUSION

States and private parties must post a proper bond before a preliminary injunction may issue under Section 16 of the Clayton Act.

Dated: September 15, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

CRAIG H. MISSAKIAN
United States Attorney

G. CHARLES BELLER
Deputy Assistant Attorney General

JARED T. BOND
Acting Deputy Director of Civil Enforcement

JOHNATHON HUSTON
Counsel to the Assistant Attorney General

*/s/ Shana Wallace*
DANIEL E. HAAR
NICKOLAI G. LEVIN
SHANA WALLACE

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Ave., NW
Washington, DC 20530-0001
Telephone: (202) 999-5025
Fax: (202) 514-0536
Email: Shana.Wallace@usdoj.gov

*Attorneys for United States of America*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Shana Wallace, am the ECF user whose identification and password are being used to file the Statement of Interest of the United States of America. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

*/s/ Shana Wallace*