MATTHEW A. SELIGMAN (SBN 288980)
GRAYHAWK LAW, P.C.
3015 Main Street, Suite 330
Santa Monica, CA 90405
Telephone: (310) 571-5993
matthew@grayhawklaw.com
*Counsel for Proposed Amici Curiae*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>PARAMOUNT SKYDANCE CORP., and WARNER BROS. DISCOVERY, INC.,<br>*Defendants*. | Case No. 4:26-cv-07116-AMO<br><br>MOTION FOR LEAVE TO FILE AMICUS BRIEF AND TO SET BRIEFING SCHEDULE<br><br>Judge: Hon. Araceli Martínez-Olguín |

The League of United Latin American Citizens ("LULAC"), the Reverend Dr. Boise Kimber, President of the National Baptist Convention, and Reverend Dr. Xavier Thompson, Senior Pastor of Southern Missionary Baptist Church in Los Angeles, Saint Paul Baptist Church in Pacoima, and Calvary Baptist Church of Pacoima,[1] move for leave to file an amicus brief in opposition to the parties' proposed consent decree, ECF No. 244. In order to ensure this Court has sufficient opportunity to consider the important issues raised by the proposed consent decree, amici ask that the Court defer entry of the decree and keep the no-close order, ECF No. 170, in place until the Court has considered amici's proposed briefing and resolved the joint motion, ECF No. 243. Amici request the Court set a deadline of October 8, 2026, for their brief and October 15, 2026, for responses. In the alternative, amici are ready to proceed on any alternative schedule the Court orders. Because the parties filed the decree on September 21, 2026, and request immediate entry of an order, amici ask for expedited consideration of this motion.

Counsel for proposed amici sought the parties' consent to the requested relief. Paramount declined to consent. Counsel for the Plaintiff States took no position. As of filing, Warner Bros. Discovery had not responded. *See* Seligman Decl. ¶ 3.

[1] Affiliations provided for identification purposes only.

## ARGUMENT

The parties urge this Court to enter an order approving an intricate, hastily constructed consent decree in a case concerning a transaction that they agree is of immense national importance. This Court must exercise its independent judgment to determine whether the decree is fair, reasonable, equitable, and consistent with law and public policy. *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990); *United States v. Oregon*, 913 F.2d 576, 580–81 (9th Cir. 1990). The proposed consent decree raises grave doubts whether the parties' settlement adequately addresses the harms alleged in the Plaintiff States' complaint. This transaction would combine two major film studios and the ownership of CBS News and CNN. Its significance to the vitality of free media and free press reaches beyond prices and film counts. Accordingly, the Court should have the benefit of civil-society perspectives. *See United States v. Google Inc.*, No. 3:12-cv-04177-SI, ECF No. 12 (N.D. Cal. Aug. 28, 2012) (granting request to file amicus brief on consent decree between government and private party).

### I. Amici's Proposed Brief Would Assist the Court

Amici's proposed brief would examine whether the decree's remedies adequately address the loss of competition in the markets identified in the complaint. The brief would connect these concerns to the decree's specific terms and the governing approval standard, assisting the Court in evaluating the adequacy of the proposed relief.

LULAC would bring a distinct institutional and community perspective to that inquiry. Founded in 1929, it advocates for the economic, political, and cultural rights of Latinos throughout the United States. Its interest in this transaction predates the proposed settlement: in an August 23, 2026, letter to Attorney General Bonta, LULAC supported the challenge to the merger and raised concerns about its effects on Latino storytellers, journalists, production workers, small businesses, and audiences. The letter specifically connected the loss of competing studios to fewer potential buyers and distributors for independent projects and fewer choices for audiences. *See* LULAC Letter to Attorney General Bonta (Aug. 23, 2026), at 1–3, *available at* https://noparamountconcessions.com/research/lulac-open-letter-bonta.pdf.

Reverend Dr. Boise Kimber, joining in his personal capacity, is President of the National

Baptist Convention, USA, Inc. As a religious leader whose ministry includes advocacy for social justice, Dr. Kimber would bring a distinct perspective on the importance of independent news programming and cultural expression to Black communities. His interest concerns whether the proposed decree adequately addresses the loss of competition alleged in the complaint, including the resulting risks to the range of voices, viewpoints, and experiences reflected in news and entertainment, and the threats to Black small businesses and workers.

Reverend Dr. Xavier L. Thompson, joining in his personal capacity, serves as Senior Pastor of Southern Missionary Baptist Church in Los Angeles, Saint Paul Baptist Church in Pacoima, and Calvary Baptist Church of Pacoima. His pastoral leadership would bring a local perspective on the importance of independent news sources and programming to the communities he serves. His proposed participation would address whether the decree adequately protects against the diminished programming quality, variety, and range of viewpoints alleged in the complaint. He is deeply concerned that reduced competition in film and television production could diminish employment for Black and Latino writers, performers, production workers, and other members of the communities he serves, and will harm Black and Latino small businesses.

This Court has previously granted precisely the relief that amici request here. In *United States v. Google Inc.*, No. 3:12-cv-04177-SI, ECF No. 9 (N.D. Cal. Aug. 21, 2012), Consumer Watchdog sought leave to file an amicus brief raising concerns with a proposed stipulated order between the Federal Trade Commission and Google regarding the latter's privacy practices. The Court granted the motion and provided approximately three weeks for the amicus to file the brief. *Id.* Dkt. 12. There, as here, the parties filed their proposed order without meaningful briefing to advise the Court about the adequacy of its terms. There, as here, the Court would benefit from adversarial briefing in order to exercise its independent judgment in determining whether the proposed consent decree is fair, reasonable, and lawful.

**II. The Proposed Consent Decree Is Unfair, Inequitable, and Inconsistent With Law and Public Policy**

Amici will argue that the proposed consent decree fails adequately to address the serious harms the Plaintiff States alleged the transaction poses. The Plaintiff States' complaint alleged

antitrust harms in three markets: wide-release theatrical films, anticipated top-grossing theatrical films, and basic cable channels licensing to distributors. Compl., ECF No. 1 ¶ 36. In the theatrical film markets, the States alleged that the merger would increase distributors' bargaining leverage over theaters, reduce output of creative and distinctive films, and facilitate coordination among remaining distributors, resulting in higher prices, lower quality, and diminished audience choice. Compl. ¶ 74. In the basic cable market, the States alleged both increased prices and diminished investment in programming, resulting in reduced quality, less variety, and fewer viewpoints. *Id.* ¶¶ 90–94. Those concerns take on particular significance in a transaction that would bring CNN and CBS's news programming under common ownership. *See id.* ¶ 35.

First, with respect to theatrical films, the proposed decree appears to substitute temporary quantitative requirements for the qualitative competition the transaction would permanently eliminate. The Plaintiff States alleged that Paramount and Warner Bros. "compete fiercely to create and disseminate new, different, and innovative film and television content," that this competition promotes investment in "new, creative, and distinctive theatrical films," and that the transaction threatens the "breadth of voices and viewpoints that reach the public." Compl. ¶¶ 2, 4, 7. Yet the decree permits that competition to disappear and instead requires the combined company to satisfy temporary minimum release and spending requirements. *See* Joint Mot. 3. Moreover, those temporary requirements measure how many films are released and how much money is spent; they do not preserve competition over which films get made. A merged studio could satisfy them while reducing investment in documentaries, films by and about Black and Latino communities, or other distinctive projects that might have been greenlit by the independently competing studios. The transaction, by contrast, permanently eliminates an independent competitor and center of decision-making about which stories, filmmakers, and viewpoints receive financing and distribution. The joint motion does not explain how temporary quantitative requirements adequately remedy that permanent competitive harm.

Second, the proposed decree appears still less responsive to the threatened loss of competition in news programming. The Plaintiff States alleged that reduced competition among basic-cable programmers would cause not merely higher prices, but diminished investment in

programming, leaving consumers with "less original programming, fewer series, and access to less variety and fewer viewpoints." Compl. ¶¶ 91–94. Those concerns are especially consequential here because the transaction places two major national news organizations under common ownership. Yet the decree's apparent answer is a "News Editorial Independence Board" charged with establishing "guiding editorial and journalism principles for the combined entity's news channels." Joint Mot. 3. Editorial oversight, however, is not competition. And the Board itself has a striking independence problem: all five members of the purportedly independent Board are appointed by the merged company's own board of directors. Thus, the decree replaces competition between independently controlled news organizations with oversight by individuals selected by the very corporate entity whose editorial influence they are charged with monitoring.

The durability of those commitments also warrants scrutiny. Section VIII.C excuses nonperformance when events beyond the parties' control—including strikes, labor disruptions, and even recessions—prevent compliance. That provision is one of numerous terms in the proposed consent decree that risk ongoing administration by this Court to ensure compliance with unclear requirements, potentially giving rise to years of collateral litigation.

**III. The Compressed Schedule Warrants a Brief Extension**

The parties filed the joint motion and proposed decree on September 21, 2026, and seek immediate entry as a final judgment with dissolution of the no-close order upon entry. ECF No. 243 at 1, 5. On September 22, 2026, the Court set a hearing for September 24, 2026, to "address certain outstanding questions regarding the factual and legal underpinnings of the parties' proposed consent decree, as well as the implementation of the proposed consent decree." ECF No. 245, at 1. That procedural status presents the grave risk that the Court may enter judgment without the opportunity to consider important perspectives beyond those of the parties.

Amici request prompt consideration despite the ordinary notice and timing requirements, which the September 21 filing makes impossible to satisfy. *See* Civ. L.R. 6-1(b), 6-3, 7-2, 7-11; Standing Order § B (Aug. 26, 2026). The supporting declaration supplies the relevant facts and the parties' actual positions and the effect on the schedule. The requested order would preserve the existing no-close constraint through the Court's resolution of the joint motion.

Dated: September 23, 2026

Respectfully submitted,

Matthew A. Seligman (SBN 288980)

/s/ Matthew A. Seligman

Grayhawk Law, P.C.
3015 Main Street, Suite 330
Santa Monica, CA 90405
(310) 571-5993
matthew@grayhawklaw.com

*Counsel for Proposed Amici Curiae*