Jessica J. González (SBN 251376)
FREE PRESS
1401 21st Street #11439
Sacramento, CA 95811
(310) 809-2577
jgonzalez@freepress.net

Brendan Benedict (*pro hac vice* pending)
BENEDICT LAW GROUP PLLC
515 Madison Avenue, 31st Floor
New York, NY 10022
(212) 287-9501
brendan@benedictlawgroup.com

*Counsel for Proposed* Amici Curiae *Committee for the First Amendment, Free Press, Freedom of the Press Foundation, Future Film Coalition, and International Documentary Association*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

STATE OF CALIFORNIA, *et al.*,

*Plaintiffs*,

v.

PARAMOUNT SKYDANCE CORP. and WARNER BROS. DISCOVERY, INC.,

*Defendants*.

Case No. 4:26-cv-07116-AMO

**LR 7-11 ADMINISTRATIVE MOTION TO SET SCHEDULE FOR *AMICUS* BRIEFING ON PROPOSED CONSENT DECREE**

Hon. Araceli Martínez-Olguín

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Under Civil Local Rule 7-11, the Committee for the First Amendment, Free Press, Freedom of the Press Foundation, the Future Film Coalition, and the International Documentary Association (collectively, "Proposed *Amici*") respectfully request leave to file, and that the Court then grant, this administrative motion. This motion seeks to set a briefing schedule by which the Proposed *Amici* may later seek leave to file *amicus* briefs concerning the pending Joint Motion to Enter Consent Decree and Dissolve Stipulation and Order Not to Close dated September 21, 2026 (ECF No. 243) ("Joint Motion"). Given the fast-moving nature of the proceedings, *amici* respectfully request an opportunity to be heard before the disposition of the Joint Motion and propose a schedule that will give them time to consolidate the number of proposed *amicus* briefs and contemplated issues to be raised, subject to the Court's instructions on timing.

The administrative motion is timely because this Court has no deadline for *amicus* briefs or administrative motions seeking to set them. The proposed scheduling order is submitted three days after the Joint Motion was filed and as soon as was practicable before the Court's September 24 hearing. As explained in the Declaration of Brendan Benedict, given the Proposed *Amici*'s desire to file an administrative motion seeking this relief prior to the Court's first hearing on the Joint Motion, the Proposed *Amici* could not obtain the merging parties' consent to the schedule before filing despite their efforts to. Plaintiff States take no position.

## LEGAL STANDARD

This Court has "exercised great liberality in permitting amicus briefs." *California ex rel. Becerra v. U.S. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019) (citation modified). "The Federal Rules of Civil Procedure do not address requests to participate as amici, so district courts rely on Federal Rule of Appellate Procedure 29 . . . when considering such requests." *Merritt v. Barclays PLC*, No. 2:23-cv-09217-MEMF-KS, 2026 LX 43832, at *8 (C.D. Cal. Feb. 19, 2026) (citation modified). Under that standard, an *amicus* brief aids courts when "the amicus has

unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide" and it addresses "legal issues that have potential ramifications beyond the parties directly involved". *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (citation modified).

## ARGUMENT

This motion proceeds in three parts. *First*, the Proposed *Amici* identify themselves and their interests. Because there is no party adverse to the Joint Motion, their perspective on the proposed consent decree will be particularly helpful. *Second*, the proposed consent decree raises serious potential constitutional and competition questions. *Third*, the proposed schedule matches the standard schedule that district courts enter to permit *amicus* participation.

### I. The Proposed *Amici* Will Be Helpful.

The Proposed *Amici* are members of the Block the Merger coalition, which has collected over 200,000 signatures from professionals and consumers opposed to the Paramount Skydance—Warner Brothers Discovery merger[1]; organized protests and roundtables around the country; and educated the public on the ramifications of consolidation and coordination on film, television news, television production, streaming, cable, and archival footage.

**The Committee for the First Amendment**, relaunched October 1, 2025, is a rapidly-growing coalition of 3,500+ artists, storytellers, and entertainment industry leaders and workers—from legacy film and television to digital creators, comedians, editors, stagehands, makeup artists, writers, showrunners, musicians, actors, producers and more. Its mission is to organize the entertainment industry to fight assaults on the First Amendment and be a pillar of democracy.

---

[1] *See* No Concessions Petition, https://noparamountconcessions.com/#petition (112,252 signers) (last accessed Sept. 23, 2026); Free Press, *A View from the Field: Mobilizing Against Merger Mania* (May 13, 2026), https://tinyurl.com/3cvw7h2t (171,000 signers).

**Free Press** is a non-profit, non-partisan media policy organization working to ensure that the people have a voice in the decisions that shape our media system. With 1.4 million members across the country, Free Press promotes public policies that protect free speech and promote a diversity of voices. Since its founding in 2003, Free Press has opposed media consolidation because it results in less news, less competition, less viewpoint diversity, fewer jobs and higher prices.

**Freedom of the Press Foundation** is a nonprofit organization dedicated to promoting and defending press freedom and public interest journalism. It believes the merger should not proceed because credible journalists at the *Wall Street Journal*[2] and elsewhere have reported that it results from improper dealmaking between Larry Ellison and the Trump administration to alter news coverage to the President's liking in exchange for federal regulatory approval.

**Future Film Coalition** ("**FFC**") is a growing national coalition of more than 650 members, including filmmakers, producers, film workers, distributors, sales agents, festivals, independent movie theaters, film organizations, and industry groups nationwide. Its members operate across the full film and media supply chain and are predominantly small businesses and independent contractors embedded in local economies and communities across the United States. FFC and its members have a direct interest in this transaction because they depend on meaningful competition among studios, distributors, and platforms to finance, acquire, license, distribute, and exhibit their work.

Since 1982, the **International Documentary Association** ("**IDA**") has supported nonfiction filmmaking and filmmakers through its major program areas: filmmaker services, advocacy, convening and publishing. IDA is dedicated to the vision of a world where documentary creators

[2] *See* Annie Linskey, Emily Glazer & Jessica Toonkel, *How A $45 Million Donation Brought Larry Ellison Deeper Into Trump's Circle*, Wall Street Journal, *available at*: https://shorturl.at/QLXvK (June 23, 2026 9:00 pm ET).

flourish. Through its work, IDA connects audiences with the best of the form, provides resources, creates community, and defends the rights and freedoms of documentary makers around the globe.

## II. The Proposed Consent Decree Presents Serious and Complicated Questions.

*First*, the nature of a *parens patriae* action raises serious questions about whether and to what extent the entry of the proposed consent decree will extinguish potential claims from citizens of the Plaintiff States concerning the merger. Plaintiff States' basis for seeking a Clayton Act injunction is their *parens* authority. (*See* ECF No. 1 ¶ 15.) The general rule is that "[w]hen a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment." *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1470 (10th Cir. 1993). "If the claims are for injuries to interests which all citizens hold in common, and for which the State has already recovered," those claims "are barred by the consent decree." *Id.* To be sure, claims to enforce private rights—such as damages under the Clayton Act—may not be released where a State has not sought them. *See In re Exxon Valdez*, 270 F.3d 1215, 1228 (9th Cir. 2001). But the question remains whether private parties in the Plaintiff States can seek to unwind the transaction or seek divestitures after entry of the consent decree.

Relatedly, the proposed penalty payments for breach of the Annual Film Release Commitment stipulates payments to certain special interest groups and nonparties that do not include the Proposed *Amici*. (*See* ECF No. 244 § III.A.10.) But representation by the Plaintiff States may not be adequate where they negotiate relief that trades off among competing interest groups in this way. *Cf. Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856-59 (1999); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 438-40 (S.D.N.Y. 2019); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 537-39 (S.D.N.Y. 2018).

*Second*, the Proposed *Amici* have concerns that many provisions of the proposed consent decree do not resolve the antitrust claims or introduce First Amendment problems. The Annual Film Release Commitment appears to allow the merging parties to together make fewer films than they

made separately last year. (*See* ECF No. 244 § III.A.1.) The carriage negotiation commitment may be commercially unworkable. (*See id.* § III.B.1.) The proposed editorial oversight board poses free speech problems if the Court must superintend its implementation. (*See id.* § III.D.) And the overbroad force majeure clause may render most commitments illusory anyway. (*See id.* § VIII.C.) All these issues are complex and merit additional study.

## III. The Proposed Schedule Is the Standard Schedule.

As to scheduling, district courts follow the FRAP 29 deadline, which "requires that a motion for leave to file an amicus brief—and the proposed amicus brief itself—be filed 'no later than 7 days after the principal brief of the party being supported is filed.'" *Merritt*, 2026 LX 43832, at *8 (quoting FRAP 29(a)(6)). Under Civil Local Rule 7-3(a), an opposition brief to a motion is due 14 days "after the motion was filed." Were the Joint Motion filed on September 21 to have an opposition, that opposition brief would be due October 5. And borrowing the *amicus* deadline from FRAP 29, a motion for leave to file an *amicus* brief opposing the Joint Motion would be due 7 days after that opposition. Because October 12 is a legal holiday, the ordinary deadline to seek leave to file an *amicus* brief opposing the Joint Motion would be October 13. *See* FRCP 6(a)(1)(C).

The Proposed *Amici* appreciate that the Court has moved incredibly quickly in this complex dispute to resolve issues before the merging parties' self-imposed ticking fee deadline. But there is presently no hearing set on requiring a bond to secure against the ticking fee. Nor is there any pending motion to shorten the time to consider the Joint Motion. Accordingly, Proposed *Amici* believe that the default schedule for *amicus* participation is appropriate. But Proposed *Amici* are ready to coordinate their filings on any schedule that the Court enters that would give them adequate time to prepare to be heard before a ruling on the Joint Motion.

## CONCLUSION

The Court should grant the Proposed *Amici* leave to file this administrative motion, grant this motion, and enter the proposed scheduling order.

Dated: September 24, 2026

Respectfully submitted,

*/s/ Jessica J. González*

Jessica J. González
FREE PRESS
1401 21st Street #11439
Sacramento, CA 95811
(310) 809-2577
jgonzalez@freepress.net

Brendan Benedict (*pro hac vice* pending)
BENEDICT LAW GROUP PLLC
515 Madison Avenue, 31st Floor
New York, NY 10022
(212) 287-9501
brendan@benedictlawgroup.com

*Counsel for Proposed* Amici Curiae *Committee for the First Amendment, Free Press, Freedom of the Press Foundation, Future Film Coalition, and International Documentary Association*