Jessica J. González (SBN 251376)
FREE PRESS
1401 21st Street #11439
Sacramento, CA 95811
(310) 809-2577
jgonzalez@freepress.net

Brendan Benedict (*pro hac vice*)
BENEDICT LAW GROUP PLLC
515 Madison Avenue, 31st Floor
New York, NY 10022
(212) 287-9501
brendan@benedictlawgroup.com

*Counsel for* Amici Curiae *Committee for the First Amendment, Free Press, Freedom of the Press Foundation, Future Film Coalition, and International Documentary Association*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>PARAMOUNT SKYDANCE CORP. and WARNER BROS. DISCOVERY, INC.,<br><br>*Defendants*. | Case No. 4:26-cv-07116-AMO<br><br>**DECLARATION OF BRENDAN BENEDICT IN SUPPORT OF LR 7-11 ADMINISTRATIVE MOTION TO SUBSTITUTE CORRECTED *AMICUS* BRIEF**<br><br>Hon. Araceli Martínez-Olguín |

I, Brendan Benedict, declare as follows:

1. I am a member of the Bars of New York and the District of Columbia and am admitted *pro hac vice* in this action, where I am counsel for *amici curiae* Committee for the First Amendment, Free Press, Freedom of the Press Foundation, Future Film Coalition, and International Documentary Association.
2. I was the principal drafter of the *amicus* brief filed at ECF No. 260 ("the *amicus* brief").
3. I did not use artificial intelligence ("AI") tools to draft any content in this brief. As a matter of firm policy, I do not permit my firm's attorneys to use AI tools to draft anything.
4. On September 26, 2026, I was re-reading the *amicus* brief and noticed that the brief's quotation of *Moody v. NetChoice, LLC*, 603 U.S. 707, 727 (2024) contained language that I did not recall being a verbatim quotation from that case. I checked the published decision to confirm that while the substantive language is a fair characterization of the case, the quoted passage did not exist.
5. I then conducted an investigation into my drafting and cite-checking process, including corresponding with each client that proposed material for the brief to learn whether AI was used in the preparation of any of the brief's content despite my instructions not to use AI tools to suggest language.
6. I concluded that the phantom quotation of *NetChoice* originated from non-AI human error, as represented to me and declared under penalty of perjury in the accompanying declaration of Seth Stern of the Freedom of the Press Foundation, who proposed that language for inclusion.
7. I cut and pasted that passage into the brief at a late stage after the principal manual cite-check and two automated cite-checks of the brief (using BriefCatch's RealityCheck tool and the quote-checking function of Lexis+) were completed.

8. In the course of making multiple edits to the brief and re-checking other citations before filing, I inadvertently failed to check the new *NetChoice* passage.

9. I included this language believing it to be accurate at the time of filing and take full responsibility for the error.

10. After discovering the error, I manually re-cite-checked the entire brief and used the RealityCheck tool from BriefCatch as a second check on the accuracy of quotations.

11. As a result of my investigation into this issue, I learned for the first time after filing that a single sentence in the brief proposed for inclusion by one of the *amici* was generated by ChatGPT in the first instance before being proposed to me, without it being disclosed to me as such before filing. It is this sentence on page 8, which does not quote or cite anything else:

> The first prong can encompass a wholly studio-developed, studio-financed, and studio-owned production merely because it is based on an original screenplay.

12. At the time of filing, I believed that this language is accurate, as I do now.

13. This use of AI was contrary to the controls established for this brief. Given my obligation under paragraph H.4 of the Court's Standing Order for Civil Cases, I advised the entire team in writing that they should not use AI for anything concerning the case, and I explained orally the Court's standing order and repeated my request that no one use AI to draft any proposed language.

14. As a result of these controls, at the time I filed the *amicus* brief, I did not believe that I needed to include the certification required under paragraph H.4 of the Court's Standing Order because I did not know or believe that any AI was used for any draft of any language.

15. Now that I am aware that this single sentence originated from ChatGPT in the first instance, and after removing the quotation marks from the language attributed to *NetChoice*, I have included the verification required under paragraph H.4 of the Court's Standing Order in the proposed corrected *amicus* brief.

16. To the best of my knowledge, and upon thorough review as described above, there are no other material errors in the corrected brief

17. The responsibility for the language incorrectly represented as a quotation is mine alone, and I take my obligation for accuracy before this Court—and all courts—extremely seriously. I apologize to the Court, my clients, and the parties for this error.

18. I emailed counsel of record for all parties at 7:42 pm PT on September 26 seeking consent for the motion with an exploding deadline of an hour. I understand that it may be difficult to reach clients for consent given the late hour on a weekend and the short turnaround time, but concluded that I should correct the misstatement as soon as possible. Therefore, I concluded that a conference or negotiation on consent or a stipulation was not practicable under the circumstances, and that this motion is necessary to comply with my duty of candor to the tribunal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 27 in Washington, DC

Respectfully submitted,

*/s/ Brendan Benedict*