FILED

SEP 2 4 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

092426

Hon. Araceli Martínez-Olguín,

RE: Filing for relief on the docket of case no. 26-cv-7116

My name is Rich Talarico, long-time Paramount employee, writing because I am bringing crucial and unreported-to-the-court evidence related to the impending Paramount merger.

AGS and UNIONS failed to account for material-to-the-merger evidence outlining billions in wage theft. Paramount has stolen billions from writers, actors, directors and musicians. If this merger goes through, they will be able to steal from a whole new group of artists.

I also filed this wage-theft information to CA Dept of Justice via US MAIL on APRIL 20, 2026. (See attached). They did not incorporate this information into their merger case, nor did they investigate these well-founded claims. I have repeatedly notified the unions of the pertinence of this ongoing wage-theft (and other issues) as it relates to the merger.

Additionally, I emailed this information to the attorneys bringing the WGA Lawsuit on (July 22, 2026) (see attached). I did not hear back from these lawyers, nor did they appear to present this wage-theft information as part of their attempts to block the merger.

In April of 2026, I also sent letters detailing this wage theft to the FCC, US DOJ Antitrust Division, in the hopes that they would consider this theft before they approved the merger. I did not hear back from either department.

**CRUCIAL FACTORS:**

*YOUTUBE TRANSPARENCY REPORT*

We submitted to AGS and Unions You Tube's Transparency Report which confirms that YouTube has paid over $12Billion to studios since Content ID started and $3 Billion in 2024, alone, while paying no royalties to actors, writers, directors and musicians.

*FORMER YOUTUBE EMPLOYEE STATEMENT*

Initially, a former YouTube Employee (and WGA Member) alerted us to this systematic wage-theft when they confirmed that studios ARE profiting off of pirated content, despite studio claims that they are not. The unions have not responded to our presenting this YouTube witness, nor YouTube's transparency report. Enclosing a letter from our complaint from a YouTube Witness (a WGA member who formerly worked in the monetization systems at YouTube) who informed us that studios were secretly profiting on 3rd party/Pirated Uploads while paying no royalties to actors, writers, directors and musicians.

**NLRB**

FYI: I have open cases against WGA and SAG-AFTRA filed with the NLRB. The focus is Corporate Sponsored Piracy and violations to the Promotional Exemption of our contracts and other factors that cost members and the unions themselves hundreds of millions annually.

**CORPORATE SPONSORED PIRACY IN A NUTSHELL**

We have informed our unions about widespread misconduct by major television and film studios that we believe breaches the Minimum Basic Agreement ("MBA") and costs our members tens or hundreds of millions of dollars each year. In particular, we have seen evidence that studios are earning billions of dollars each year from pirated uploads of our work to platforms like YouTube and Instagram, but failing to pay any residuals to writers from this revenue, in direct violation of the MBA.

When an unauthorized individual uploads a pirated clip (or compilation of clips) of a television show or movie to YouTube or a similar platform, the platform offers studios a choice: either remove the unauthorized content, or run ads on the content and earn a percentage of the advertising revenue that YouTube receives. Earlier this year, YouTube published a report revealing that more than 90% of studios choose to monetize these unauthorized uploads rather than taking them down.1 The report also makes clear that this is an incredibly lucrative practice for studios: as of 2024, YouTube has paid studios more than $12 billion in ad revenue generated from pirated content, including $3 billion in 2024 alone. Other streaming platforms (like Instagram and TikTok) offer similarly lucrative deals to studios. Indeed, the shows and clips written by Guild members often generate more views in a matter of days on YouTube than they received during their initial exhibition on traditional television. Yet, despite their content generating billions of views and many billions of dollars for studios, writers are receiving checks for pennies on the dollar.

The studios' failure to pay writers residuals for these pirated-but-monetized clips is a clear violation of the MBA, which requires studios to pay writers residuals for all film and television content that is "used" on new media platforms (like YouTube and Instagram), regardless of whether the studios upload the content in the first place or simply adopt and monetize a third-party's upload of the same content.

**VIOLATIONS TO THE PROMOTIONAL EXEMPTION OF THE MBA**

Studios are also using other methods to steal wages like Violating the Promotional Exemption of our Contracts explained in our letters to unions and CA DOJ. Please See Our Website EndingCorporatePiracy.com

We (Writers and Actors) have consistently received conflicting responses and silence from the unions. WGAW Board Member Adam Conover told us that Corporate Sponsored Piracy needs legal action, yet my requests to meet with the union and board have been denied.Writers and Actors from these shows, sent letters (see attached) to SAG-AFTRA and WGA West and WGA East on 12/02/25, and Tom Fontana, President of WGA E, wrote back immediately, thanking me

declaring "Turns out everything we thought to be true, was true." Wrote back to Mr. Fontana multiple times (see attached). Neither he nor the other unions have gotten back to us. Sean Astin (SAG-AFTRA Pres.) wrote to one of our signatories last fall acknowledging the wage theft, but has not replied to multiple follow up letters despite his saying he would look into it.

**CLOSING**

It's crucial that the court understand and react to the ongoing illegal wage-theft and granting the merger will be granting Paramount permission to conduct this illegal activity on a whole new group of artists. I need to express that I relied to my detriment on the unions and AG's bringing these issues to the court. I only found out last night that the CA DOJ did not include this information and I hope that you will consider this information, I would have sent it sooner if I thought it was necessary. I was told today my only options were in-person submission or by FedEx. I am having someone deliver this letter in-person today.

To comply with your 10-page limit: kindly read the letters we sent to the unions and more crucial information please visit endingcorporatepiracy.com I will also email more files to your clerk if you wish to see them. Paramount is committing a crime and we need you to know about this.

Very Respectfully,

Rich Talarico
WGA Show Captain
WGA Strike Captain
SAG-AFTRA Member since 1995

*PS - WRITERS AND ACTORS FROM THESE SHOWS HAVE SIGNED OUR GRIEVANCE LETTERS AT ENDINGCORPORATESPONSOREDPIRACY.COM*

2 Broke Girls
7th Heaven
Ally McBeal
American Dad!
American Horror Story
Arrested Development
The Bernie Mac Show
The Big Bang Theory
The Bold and the Beautiful
Brooklyn Nine-Nine
Bratz
Castle
Charmed
The Chase

Cheers
Chicago Fire
The Chris Rock Show The Closer
The Colbert Report
Comedy Central Roasts Community
Conan
The Cosby Show
Crazy Ex-Girlfriend
Criminal Minds
CSI: Crime Scene Investigation
CSI: Miami
CSI: NY
Curb Your Enthusiasm
Curious George
The Daily Show
Days of Our Lives
Degrassi: The Next Generation Doug
The Drew Carey Show
Drunk History
Early Edition
Elementary
The Ellen DeGeneres Show
Emily in Paris
ER
Euphoria
Everybody Hates Chris
Everybody Loves Raymond
Family Guy
The Facts of Life
The Fairly OddParents
FBI: Most Wanted
Fear the Walking Dead
Fire Country
The Floor
Franklin & Bash
Frasier
Freaks and Geeks
The Gilded Age
General Hospital
George of the Jungle
Gilmore Girls
The Goldbergs
Grey's Anatomy
Hawaii Five-O
High Fidelity (Movie)
Hot in Cleveland
In Living Color

It's Always Sunny in Philadelphia
Jimmy Kimmel Live!
Judging Amy
Key & Peele
King of the Hill
The Larry Sanders Show
Last Comic Standing
Last Man Standing
Las Vegas
The Late Late Show with James Corden
The Late Show with Stephen Colbert
The Late Show with David Letterman
Late Night with Conan O'Brien
Lost
The Love Boat
MADtv
Narcos
Major Crimes
The Marvelous Mrs. Maisel
Melrose Place
The Mentalist
The Middle
The Mindy Project
Modern Family
Monk
Mr. Show
Murphy Brown
NCIS
NCIS: New Orleans
New Amsterdam
New Girl
Newhart
New Looney Tunes
Night Court
The Office
One Piece
The Orville
Ozark
Parks and Recreation
Perfect Strangers
The Pitt
Pokemon
Psych
Raising Hope
Reno 911!
Review
Robot Chicken

Saturday Night Live
Scorpion
Shameless
The Simpsons
Spongebob Squarepants
Star Trek: The Next Generation
Studio 60 on the Sunset Strip
Supernatural
Superstore
This is Us
The Tonight Show (Johnny Carson, Jay Leno, Conan O'Brien, Jimmy Fallon)
Tracker
True Grit
Valerie
Veep
Wednesday
What About Joan?
Who is America?
Whose Line Is It Anyway?
Will & Grace
Wizards of Waverly Place
The Wonder Years
Workaholics
The X-Files
Young Sheldon Zoey 101

February 23, 2026

NLRB,

I am writing to you based on my prior experience at YouTube, where I served as a product manager focused on creator monetization, particularly for what we termed the “enterprise” category. This included major creators like Jake Paul, large music labels such as Sony Music Entertainment, and big production companies likeParamount Global (Formerly Viacom).

In YouTube's early days, the platform faced heavy piracy issues and was sued by numerous copyright owners. To address this and position YouTube as a partner to major copyright holders, the company developed several anti-piracy measures, with ContentID being the most significant.

ContentID is a highly advanced technology. It allows major copyright owners to upload their material, from which the system extracts a "digital fingerprint." ContentID then scans all YouTube videos. When a match is found between a video and a digital fingerprint, the video is flagged as containing pirated material. The rightful copyright owner is then given three choices:

1. Block -- completely take down the infringing video.
2. Track -- The video remains up and the copyright holder can track analytics
3. Claim and Monetize -- The video remains up, with but all monetization is routed to the proper copyright owner

To my recollection, option three was the choice overwhelmingly favored by copyright owners.

As an example, if a random YouTube user named “KeyPeeleFan100” pirates and uploads  the famous “Racist Zombies” sketch, ContentID would quickly flag this video as infringing. Paramount, the sketch's copyright holder, would access a ContentID user dashboard that highlights all infringing uploads. Paramount could then choose to (1) take down the video (Block), (2) leave it as-is and track analytics (Track), or (3) leave the video up while routing all generated revenue toward Paramount (Claim and Monetize).

In practice, most major copyright owners would set automated rules for infringing content in ContentID, for example “Claim and monetize any infringing content over 30 seconds”. The original uploader would then have the option to dispute any “claim and monetization” as being incorrect, and those would be manually reviewed by the copyright owners on the dashboard. The dashboard made it easy for major copyright owners to track the money generated from these infringing videos and, due to its power, ContentID was only available for major copyright holders.

I am available to answer any further questions you may have.

Warmly,

Prof. Harsha Rao
California State University, Northridge
Writers Guild of America member
Harsha.Rao@csun.edu