UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE STATE OF CALIFORNIA, et al.,

Plaintiffs,

v.

PARAMOUNT SKYDANCE CORPORATION, et al.,

Defendants.

Case No. 26-cv-07116-AMO

**ORDER GRANTING JOINT MOTION TO ENTER CONSENT DECREE**

Re: Dkt. No. 243

This Order assumes familiarity with the facts and procedural history of this antitrust case brought by twelve state Attorneys General challenging the proposed merger between two major media corporations. Before the Court is a joint motion to enter a consent decree. The motion additionally requests that the Court dissolve the stipulation and order not to close. The Court **GRANTS** the joint motion for the following reasons.

It is well-settled that the Court may approve a consent decree if it determines that "it is fair, reasonable and equitable and does not violate the law or public policy." *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1165 (9th Cir. 2012). The Court must independently scrutinize the proposed consent decree's terms, and "eschew any rubber stamp approval." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995). Indeed, "a federal court is more than a recorder of contracts from whom parties can purchase injunctions; it is an organ of government constituted to make judicial decisions." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). "However, a consent decree need not impose all the obligations authorized by law." *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (citing *Local 93*, 478 U.S. at 522-23). "Rather, the court's approval is nothing more than an amalgam of delicate balancing, gross approximations and rough

justice. The court need only be satisfied that the decree represents a reasonable factual and legal determination." *Oregon*, 913 F.2d at 581 (internal quotation marks & citations omitted).

Here, the Court finds the proposed consent decree represents a reasonable factual and legal resolution of the dispute. The parties' proposed consent decree falls within the scope of the case made by the pleadings. Plaintiffs advance three U.S. markets for antitrust purposes: (1) distribution of wide-release theatrical films, (2) distribution of top-grossing theatrical films, and (3) licensing of basic cable channels to distributors. *See* Compl. ¶ 36. The parties' proposed production, distribution, and funding of films, including particular provisions for "tentpole" and "independent" films, ostensibly addresses potential harms to the first two markets by requiring certain minimum thresholds of investment and release of domestic films. And the parties' proposed requirements for continued, separate negotiations of distribution for the two entities' basic cable holdings addresses concerns related to the third market. The proposed consent decree imposes these requirements and includes important backstops requiring divestment of studios and/or cable channels in case of the combined entity's failure to comply with the proposed consent decree's terms. Further, the proposed consent decree imposes these requirements on film distribution and basic cable negotiations in the midst of a rapidly-changing marketplace. The Court therefore finds that the proposed consent decree reflects a settlement between the parties that is a fair, reasonable, and good faith approach to address the competitive harms alleged in the Complaint, and does not violate the law or public policy.[1]

Further, the Court finds the proposed settlement agreement reflects a procedurally sound resolution. The parties reached their agreement following highly contested, however brief, litigation, and they reached their agreement following what they report to have been several rounds of in-depth negotiations. Importantly, the participation of twelve state attorneys general

---

[1] Though amici aver that the "News Editorial Independence Board" risks violating the First Amendment by embroiling the Plaintiff States and/or the Court in enforcement of press standards, Dkt. Nos. 259 & 60, the Court disagrees. The proposed consent decree governs the News Editorial Independence Board's creation and structure, not its speech, which is substantively different than several of the cases regarding compelled speech cited by amici. *See* Dkt. No. 260 at 8 (citing *NRA of Am. v. Vullo*, 602 U.S. 175, 189 (2024); *Moody v. NetChoice, LLC*, 603 U.S. 707, 727 (2024)). Accordingly, the Court does not find that the News Editorial Independence Board provision renders the proposed consent decree contrary to law.

United States District Court
Northern District of California

supports a finding of fairness. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, Case No. 17-cv-02911-JSC, 2019 WL 343472, at *5 (N.D. Cal. Jan. 28, 2019) (recognizing that a government agency's participation in seeking a consent decree "weighs in favor of approving the settlement"); *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) ("[C]ourts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment."). Particularly recognizing that these government officials assent to the consent decree and recognizing, as Defendants have repeated throughout the case, that antitrust regulators across the globe have cleared the transaction before now, the Court concludes the proposed consent decree was the product of procedural fairness.

Amici express dismay at many of the proposed consent decree's provisions. *See* Dkt. Nos. 259 & 260.[2] However, a proposed consent decree like this one represents a negotiated settlement that does not fully remediate an alleged violation or even necessarily resolve the ultimate factual and legal issues of a case. As the Supreme Court has described,

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . . [T]he parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

*United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971); *see also Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting same).

Here, the Court recognizes that this proposed consent decree reflects a compromise of the claims short of full adjudication – compromise that may leave some dissatisfaction for both sides and the public but a compromise that saves the risk, time, and expense of litigating through trial. The potential for greater investment in "documentaries and other nonfiction works, films by and

[2] The Court GRANTS the motion to amend/correct the amicus brief. Dkt. No. 261.

about Black and Latino communities, or other distinctive projects that might have been greenlit by one of two independently competing studios," Dkt. No. 259 at 5, and the concerns regarding news editorial independence, Dkt. No. 260 at 7-9, represent just some of the meaningful grounds for disappointment with the proposed consent decree. *See also* Dkt. No. 255 at 5 (letter from Sen. Cory A. Booker quoting a state Attorney General's statement that they were "deeply disappointed" they did not secure certain remedies in the proposed consent decree). But these hopes and desires for the proposed consent decree to reach farther – to achieve more – do not rise to the level of legal violations upon which the Court can reject the parties' negotiated resolution. "Unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." *Randolph*, 736 F.2d at 529.

For the foregoing reasons, the Court **GRANTS** the parties' joint motion. The Court **DISSOLVES** the parties' stipulation and the Court's Order Not to Close, Dkt. No. 170, effective upon entry of this Order. In accordance with the parties' joint request, the Court will issue the consent decree as judgment and as a standalone docket entry.

**IT IS SO ORDERED.**

Dated: September 30, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**